## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 2:25-cv-14047-DMM

GEM Products, LLC,
                    Plaintiff,

v.

Rupp Marine, Inc.,
                    Defendant.

_____

Rupp Marine, Inc.,
                    Counterclaimant,               **Oral Argument Requested**

v.

GEM Products, LLC,
                    Counterclaim-Defendant.

_____/

### RUPP MARINE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
### WITH INCORPORATED MEMORANDUM OF LAW

Defendant Rupp Marine, Inc. ("Rupp Marine") respectfully moves, pursuant to Federal Rule of Civil Procedure 12(c) for Judgment on the Pleadings on Counts I, II, III, and IV of the Complaint (ECF No. 1) filed by Plaintiff GEM Products, LLC ("GEM Products"), and on Counterclaim IV of the Counterclaims (ECF No. 12) filed by Rupp Marine.  In so doing, the Court should hold that all claims of U.S. Patent No. '778 are invalid under, at least, 35 U.S.C. § 112(a) and dismiss Counts I–IV of the Complaint with prejudice, as explained in greater detail in the incorporated memorandum of law.

# TABLE OF CONTENTS

Table of Authorities.................................................................................................. ii

Request for Oral Argument................................................................................... iv

Summary of the Argument ..................................................................................... 1

Statement of the Facts ............................................................................................ 2

Legal Standards........................................................................................................ 4

Arguments ................................................................................................................. 5

A.    Judgment on the Pleadings Should Be Granted For Rupp Marine and Counts I–IV of the Complaint Should Be Dismissed Because the Complaint Fails to Establish Either Direct Infringement or Contributory Infringement .................................................. 5

    1.    GEM Products' Allegations of *Direct* Infringement in Counts I–IV of the Complaint Should Be Dismissed *With Prejudice* Because the Accused Products Cannot Meet Each and Every Limitation of the Asserted Patent Claims ....... 5

    2.    GEM Products' Allegations of Contributory Infringement in Counts I–IV of the Complaint Should Be Dismissed Because the Accused Products Cannot Contributorily Infringe Any Claims of the Asserted Patents.......................... 8

        a.    Counts I–IV Should Be Dismissed For Failing to Sufficiently Allege Contributory Infringement.............................................................. 8

        b.    Counts I–IV Should Be Dismissed With Prejudice Because the Pleadings Establish That the "Accused Products" Are Staple Articles of Commerce That Cannot Infringe Under § 271(c)............................... 8

B.    Judgment Should Be Entered for Rupp Marine on Count II of the Complaint, Rupp Marine's Eleventh Affirmative Defense, and Counterclaim Count IV Because the '778 Patent is Invalid as a Matter of Law Under, at Least, 35 U.S.C. § 112, ¶ 1, For Adding "New Matter" During Prosecution.......................................................................10

C.    Judgment Should Be Entered for Rupp Marine on Counts III–IV of the Complaint, Rupp Marine's Twelfth and Thirteenth Affirmative Defenses, and Counterclaim Counts VI and VIII Because the '226 and '566 Patents Are Invalid Under, at Least, 35 U.S.C. § 103 Due to Their Filing Dates.......................................................................14

D.    The Complaint Further Constitutes an Improper "Shotgun Pleading," and Counts I–IV Should Also Be Dismissed as Including Multiple, Independent Claims Within Each Count.................................................................................................................18

Conclusion................................................................................................................20

## TABLE OF AUTHORITIES

Cases:

*Aatrix Software, Inv. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ..........11

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334 (Fed. Cir. 2016) ....................10

*Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354 (Fed. Cir. 2014) ....................12

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) ....................11

*Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355 (Fed. Cir. 2016) ........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 4

*Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97 (5th Cir. 1974) ..................................10

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
    No. 15-cv-05469, 2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016) .............. 6

*Boca Raton Reg'l Hosp., Inc. v. Celtic Ins. Co.*,
    Case No. 19-80650-CIV-SINGHAL/REINHART, 2020 U.S. Dist. LEXIS 21612
    (S.D. Fla. Feb. 6, 2020) ........................................................................................19

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ................................ 11, 13

*Cramer v. Florida*, 117 F.3d 1258 (11th Cir. 1997) ..........................................................19

*Cunningham v. Dist. Atty's Office for Excambia Cnty*, 529 F.3d 1237 (11th Cir. 2010) ......... 4

*DSS Tech. Mgmt. v. Apple Inc.*, 885 F.3d 1367 (Fed. Cir. 2018) ......................................14

*Glob. Tech. LED, LLC v. Every Watt Matters, LLC*,
    No. 15-cv-61933, 2016 U.S. Dist. LEXIS 12111 (S.D. Fla. May 19, 2016) .............. 6

*Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007) ............................................10

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998) ................................ 4

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003) ................................................................10

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) ............................................................ 4

*ICN Photonics, Ltd. v. Cynosure, Inc.*, 73 Fed. Appx. 425 (Fed. Cir. 2003) ......................11

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .............................................................................. 8

*In re Chu*, 66 F.3d 292 (Fed. Cir. 1995) ........................................................................16

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962 (11th Cir. 2014) ............... 4

Cases—continued:

*Isaias v. Martin County*,
    Case No. 2:18-CV-14171 ROSENBERG/MAYNARD, 2018 U.S. Dist. LEXIS
    120000 (S.D. Fla. July 17, 2018) ...................................................................... 18-19

*Jackson v. Bank of America*, 898 F.3d 1348 (11th Cir. 2018) .............................................19

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004) ....................... 8

*Lexington Luminance LLC v. Amazon.com Inc.*, 601 Fed. Appx. 963 (Fed. Cir. 2015) .......10

*L.S. v. Peterson*,
    No. 18-cv-61577, 2018 U.S. Dist. LEXIS 210273 (S.D. Fla. Dec. 13, 2018) ...........19

*Lyda v. CBS Corp.*, 838 F.3d 1331 (Fed. Cir. 2016) ......................................................10

*Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998) ................................. 6

*Miami Herald Pub. Co. v. Ferre*, 636 F. Supp. 970 (S.D. Fla. 1985) .................................. 4

*Muhammad v. Muhammad*, 654 Fed. Appx. 455 (11th Cir. 2016).....................................18

*Nalco Co. v. Chem Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) ......................................... 8

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008)......................16-17

*Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325 (Fed. Cir. 2008)................................. 9

*Schering Corp. v. Amgen Inc.*, 222 F.3d 1347 (Fed. Cir. 2000) .........................................11

*Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260 (D. Mass. 2016) ........... 6

*TeleSign Corp. v. Twilio, Inc.*,
    No. CV 16-2106, 2016 U.S. Dist. LEXIS 123516 (C.D. Cal. Aug. 3, 2016).............. 6

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) .........................................18

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009)............................. 9

*VPR Brands, LP v. HQDTech USA LLC*,
    No. 21-cv 21678, 2021 U.S. Dist. LEXIS 207912 (S.D. Fla. Oct. 21, 2021)............. 6

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) ................................................. 4

*Wausau Underwriters Ins. Co. v. Danfoss, LLC*,
    No. 2:14-CV-14420, 2015 WL 9094201 (S.D. Fla. Dec. 16, 2015) ........................19

*Weiland v. Palm Beach Cnty. Sherriff's Office*, 792 F.3d 1313 (11th Cir. 2015) .............. 18-19

*WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) ..........................6-7

Statutes:

Patent Act, 35 U.S.C. § 101, *et seq.*
    35 U.S.C. § 101 ............................................................................................10
    35 U.S.C. § 102(b) ....................................................................................15-17
    35 U.S.C. § 103 .......................................................................................1-2, 14
    35 U.S.C. § 112 ...........................................................................10-11, 13, 16
    35 U.S.C. § 112, ¶ 1 (2006 ed., pre-AIA) ...........................1-2, 10-11, 14
    35 U.S.C. § 120 ............................................................................................16
    35 U.S.C. § 121 ............................................................................................12
    35 U.S.C. § 271(a) .............................................................................1-2, 18-19
    35 U.S.C. § 271(c) .........................................................................1-2, 8-9, 18-19

Rules:

Federal Rules of Civil Procedure
    8 ..............................................................................................................5, 18
    10 ............................................................................................................5, 18
    12(b)(6) ................................................................................................10-11
    12(c) .................................................................................................1, 4, 10

Regulations:

37 C.F.R. § 1.53(b) ...............................................................................................12

Other Sources:

Manual of Patent Examination Procedure
    § 201.06 ........................................................................................................12
    § 201.08 (7th ed., July 1998) ...................................................................16

**<u>Request for Oral Argument</u>**

Rupp Marine, Inc. respectfully requests oral argument on the Motion. Because the issues regarding the invalidity of the '778, '226, and '566 patents address issues of patent law and procedure, issues of law rather than fact, it is believed that oral argument would assist the Court in addressing those issues at this stage, so as to minimize the issues going forward. Similarly, the Court may benefit from oral argument and discussion on the specific issues regarding direct infringement versus contributory infringement to aid the Court in its review of the arguments that the Court can render judgment for Rupp Marine, Inc., and dismiss *with prejudice*, Counts I–IV of the Complaint.

Defendant Rupp Marine, Inc. ("Rupp Marine") respectfully moves, pursuant to Federal Rule of Civil Procedure 12(c) for Judgment on the Pleadings dismissing Counts I–IV of the Complaint (ECF No. 1) filed by Plaintiff GEM Products, LLC ("GEM Products"), and further moves for Judgment on the Pleadings on Counterclaims IV, VI, and VIII of the Counterclaims (ECF No. 12) filed by Rupp Marine that U.S. Patent No. 9,392,778 (the "'778 patent") is invalid as a matter of law for violating the written description requirement of 35 U.S.C. § 112, ¶ 1 (2006 ed., pre-AIA), and that U.S. Patent Nos. 9,717,226 (the "'266 patent) and 11,589,566 (the "'566 patent) are invalid under, at least, 35 U.S.C. § 103.

### Summary of the Argument

Though GEM Products has accused Rupp Marine of both direct infringement and contributory infringement, under 35 U.S.C. §§ 271(a) and (c), respectively, **the Complaint fails to identify even a single infringing product**. Rather, the Complaint haphazardly accuses Rupp Marine's (1) "Outrigger with Pulley Clusters," (2) "Outrigger with Pulley Option," (3) "Rupp's Outrigger with Pulley Option," and (4) "Rupp's Pulley Upgrade" as the "Accused Products" yet does not identify any such product that contains sufficient elements to meet *each and every limitation* of the asserted patents—because no such "products" exist. Rather, Rupp Marine sells outriggers for fishing boats which come standard with eyelets, and it also sells pulleys and pulley clusters which can replace the eyelets, as well as upgraded rollers for use on certain lengths of Rupp Marine's "Top Gun" lightweight outriggers. *See* ECF No. 1-5. None of those "products" include elements that can meet "each and every limitation" of the asserted patents and, therefore, none of those products can infringe any claim of any of the asserted patents.

The Complaint frivolously asserts that U.S. Patent No. 8,656,632 (the "'632 patent"), the '778 patent, the '226 patent and the '566 patent (collectively, the "Asserted Patents") are infringed by outriggers containing pulleys. *See* ECF No. 1 (Count I–IV). Problematically, however, each of the Asserted Patents requires *more than* an outrigger and a pulley/cord management unit.

1

Implicitly conceding that Rupp Marine does not *directly* infringe—despite maintaining allegations that Rupp Marine *does* directly infringe—the Complaint asserts that Rupp Marine's "Accused Products" are actually only "components" or a "material **part of** a combination" that allegedly infringes, and so GEM Products' claims are based on the speculation that Rupp Marine's products "are specially designed, intended, and marketed *to be arranged on the outrigger* so that" an allegedly infringing system could be created.  *See* ECF No. 1, ¶¶ 15–18, 24–27, 33–36, 42–45 (emphasis added); ECF Nos. 1-6, 1-7 (claim charts).  To support the speculation in these facially deficient allegations, GEM Products relies on "Rigging Instructions" that (1) predate the asserted patents, (2) show how an outrigger could be rigged using **eyelets**, not pulleys, and (3) specifically show that using more than one outrigger cord is optional.  GEM Products has no viable claim for direct infringement or contributory infringement.   Accordingly, judgment should be entered for Rupp Marine on Counts I–IV of the Complaint and those claims should be dismissed.

Further, the '778, '226, and '566 patents should be found invalid on the pleadings.  The '778 patent is invalid as a matter of law for violating the written description requirement of 35 U.S.C. § 112, ¶ 1 (2006 ed., pre-AIA).  During prosecution of the '778 patent, the applicant amended the claims to add subject matter that, when reviewed by the Patent Office, was held to constitute "new matter" that was not present in the original application from which the '778 patent was a division.  By adding "new matter" into each of the independent claims of the '778 patent during prosecution, each of the claims of the '778 patent is invalid as a matter of law.  And because that subject matter was included with the '226 and '566 patents when filed, they are invalid as obvious, under 35 U.S.C. § 103, based on the '632 patent and products in the market.  Accordingly, judgment should be entered for Rupp Marine on its Counterclaim Counts IV, VI, and VIII, for invalidity of the '778, '226, and '566 patents.

## Statement of the Facts

GEM Products alleges that Rupp Marine directly and/or contributorily infringes the '632, '778, '226, and '566 patents, under 35 U.S.C. §§ 271(a) and (c),  based on the sales of

Rupp Marine's (1) "Outrigger with Pulley Clusters," (2) "Outrigger with Pulley Option," (3) "Rupp's Outrigger with Pulley Option," and (4) "Rupp's Pulley Upgrade" (collectively, the "Accused Products").  ECF No. 1 ¶ 9, Counts I–IV; *see also* ECF Nos. 1-5 – 1-7.  Those products constitute different types of pulleys, and outriggers that can have those pulleys on them, in place of the eyelets that would normally be present.  *See* ECF No. 1-5.  The "Accused Products," however, do not include, at least, pulley cords, retention devices, fishing lines, pivot units to separately attach to a boat, etc.  ECF Nos. 1-5 – 1-7.  As addressed in the Complaint, the "Accused Products" are merely "a material **part of a combination or apparatus** for use in practicing the claimed invention(s)" of the Asserted Patents.  ECF No. 12, ¶¶ 15–18, 24–27, 33–36, 42–45 (emphasis added).

The '632 patent was filed by Craig Mercier on March 18, 2010, and first issued on February 25, 2014, but a reexamination request was filed on September 23, 2015, and, after reexamination, a modified '632 patent reissued on August 23, 2016.  ECF No. 12, ¶¶ 7–12, 35–52; ECF No. 12-5 ('632 patent).  During the reexamination, Mercier attempted to avoid the prior art objections by modifying the claim language to add that the "cord management units"/"pulleys" maintained "cord passages" "in fixed angular orientation relative to the outrigger structure."  Upon examination by the panel of three (3) patent examiners, this was determined to **not be supported** by the original disclosure of the '632 patent.  ECF No. 12, ¶¶ 42–45; ECF No. 12-4, pages 27–31, 71–85, 89–95.  Upon that finding by the examiners, Mercier conceded the point by withdrawing that subject matter and proposing alternate claim language, which allowed the '632 patent to be reissued.  ECF No. 12, ¶¶ 45–48; ECF No. 12-4, pages 3–9, 27–31, 44–54.

At the same time the '632 patent was being reexamined, Mercier was still prosecuting the '778 patent.  *See* ECF No. 12 ¶¶ 50–59.  During the prosecution of the '778 patent, Mercier amended the claim language to avoid rejections based on the prior art by adding claim language, including, "retaining said cord management positions such that the cord passages extend at fixed angular orientations relative to the outrigger structure," which allowed the '778

3

patent to issue.  ECF No. 12, ¶¶ 22–34.  The '226 and '566 patents were filed thereafter, including claim language that the "cord management units"/"pulleys" maintained "cord passages" "in fixed angular orientation relative to the outrigger structure."  ECF No. 12, ¶¶ 60–83.

## Legal Standards

A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss.  *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  "Judgment on the pleadings is proper when no issues of fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts."  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted).  The moving party bears the burden of proving they are entitled to dismissal.  *See Hawthorne*, 140 F.3d at 1370.  Accordingly, well pleaded allegations within the complaint are accepted as true and are construed in favor of the non-moving party.  *See Cunningham v. Dist. Atty's Office for Excambia Cnty*, 529 F.3d 1237, 1255 (11th Cir. 2010); *Miami Herald Pub. Co. v. Ferre*, 636 F. Supp. 970, 974 (S.D. Fla. 1985).  Legal conclusions, however, are not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007).  In addressing a motion under Rule 12(c), a court may consider attachments to the pleadings that are central to the issues raised in the action and whose authenticity is not in question.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## Arguments

A. **Judgment on the Pleadings Should Be Granted For Rupp Marine and Counts I–IV of the Complaint Should Be Dismissed Because the Complaint Fails to Establish Either Direct Infringement or Contributory Infringement.**

1. **GEM Products' Allegations of *Direct* Infringement in Counts I–IV of the Complaint Should Be Dismissed *With Prejudice* Because the Accused Products Cannot Meet Each and Every Limitation of the Asserted Patent Claims.**

It was frivolous and improper for GEM Products to have included allegations and claims that Rupp Marine's products **directly** infringe any claim of any of the asserted patents; and yet the Complaint includes such allegations.[1]  *See, e.g.*, ECF No. 1, ¶ 14 ("the Accused Products cause Rupp Marine to **directly and/or** indirectly infringe at least claims 1–11, and 15–17 of GEM Products' '632 Patent, literally and/or under the Doctrine of Equivalents.") (emphasis added, citing ECF No. 1-6, claim charts); *id.* ¶ 23 (same, regarding the '778 patent) (citing ECF No. 1-6); *id.* at ¶ 32 (same, regarding the '226 patent) (citing ECF No. 1-6); *id.* at ¶ 41 (same, regarding the '566 patent) (citing ECF Nos. 1-6, 1-7).  There is no factual basis in the Complaint, because none exists, to allege that the "Accused Products" **directly** infringe any claim of any of the asserted patents.  This is confirmed by the exhibits attached to the complaint, which *show* that the "Accused Products" lack all of the required elements to meet the limitations of the claims.

Moreover, even the claim charts implicitly concede that there is no direct infringement, as each claim chart alleges that the products are "intended to be used," etc. in a manner that allegedly infringes, rather than the products are *themselves* infringing.  *See, e.g.*, ECF No. 1, ¶¶ 15–18, 24–27, 33–36, 42–45 (admitting that each "Accused Product" is "a material **part of** a combination or apparatus" that allegedly infringes each of the Asserted Patents) (emphasis added); ECF No. 1-6 at 2–3 ("It is well known that outrigger is **intended** to be used with multiple outrigger cords . . ."; "Pulley Clusters are specifically **intended**, designed and

---

[1] Further, by including claims for *both* direct infringement *and* contributory infringement within each count, the Complaint constitutes an improper "shotgun" pleading in violation of Rules 8 and 10, Fed. R. Civ. P. and longstanding Eleventh Circuit Precedent. *Infra*, Sec. D.

marketed to be used with multiple outrigger cords . . ."; "it is **intended** that the outrigger cords (3) extend through respective cord passages of at least two Pulley Clusters (1a and 1b) . . ."; "Rupp's Pulley Clusters are specifically **intended**, designed and marketed for the outrigger cords (3) to extend through respective passages of at least two Pulley Clusters (1a and 1b) . . .") (emphasis added); *id.* at 3 ("the outrigger cords (3) **necessarily have** outrigger clips (5) that have a point . . ."; "Pulley Clusters (1) are specifically **intended**, designed and marketed to be used with outrigger cords (3) that respectively have outrigger clips (5) . . .") (emphasis added); ECF No. 1-7 (addressing the "Pully Upgrades" and "Outriggers with Pully Option").

"If even one limitation is missing or not met as claimed, there is no literal infringement." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). "[A]n allegation of direct patent infringement is insufficient under *Twombly* and *Iqbal* if it 'simply recit[es] some of the elements of a representative claim and then describe[es] generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements.'" *VPR Brands, LP v. HQDTech USA LLC*, No. 21-cv 21678, 2021 U.S. Dist. LEXIS 207912, *14 (S.D. Fla. Oct. 21, 2021) (Bloom, J.) (alterations in original) (quoting *Glob. Tech. LED, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933, 2016 U.S. Dist. LEXIS 12111, *7 (S.D. Fla. May 19, 2016) (Bloom, J.) (quoting *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469, 2016 U.S. Dist. LEXIS 60211, *7-8 (N.D. Cal. Mar. 9, 2016))). "[I]n applying *Twombly* and *Iqbal* . . ., [Plaintiffs] must allege that [Defendants'] product practices all the elements of at least one of the claims of the subject patent." *Ibid.* (quoting *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016) (alterations in original) (citing *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106, 2016 U.S. Dist. LEXIS 123516, *6 (C.D. Cal. Aug. 3, 2016)).

According to the Complaint, the "Accused Products" consist of two different types of "pulleys", as well as outriggers with those pulleys attached. ECF No. 1, ¶ 9; ECF No. 1-5. The Asserted Patents, however, also require, at least, "a plurality of outrigger cords," and "a

plurality of outrigger clips" or "retention devices" coupled to the outrigger cords—elements which do not exist in the "Accused Products." *See, e.g.*, ECF No. 1-1 ('632 patent) at 11:55–12:9 (claim 1 includes "a plurality of outrigger cords" and "a plurality of retention devices, each of said retention devices coupled to one of said outrigger cords"); at 12:39–63 (claim 9, same); at 13:26–14:24 (claim 16, same); ECF No. 1-2 ('778 patent) at 11:66–12:23 (claim 1 includes "establishing a plurality of outrigger cords" and "establishing a plurality of retention devices, each of said retention devices coupled to one of said outrigger cords"); at 13:4–30 (claim 12, same); at 13:38–14:20 (claim 15, same); ECF No. 1-3 ('226 patent) at 12:8–35 (claim 1 includes "a plurality of outrigger cords" and "a plurality of retention devices each coupled to one of said outrigger cords"); at 13:15–44 (claim 12, same); at 14:7–38 (claim 17, same); ECF No. 1-4 ('566 patent) at 12:7–67 (claim 1 requires "a plurality of outrigger cords", "a pivot unit attached to said surface vessel", "a plurality of lines," and "the outrigger cords each having coupled thereto at least one retention device"); at 13:34–14:27 (claim 9, same); at 14:42–16:12 (claim 14, same).

The Complaint provides no evidence or argument that the Accused Products *include* these additional elements; rather, it simply suggests that a user *would add* those additional elements when using the Accused Products: outriggers with pulleys. *See* ECF Nos. 1-6, 1-7 (claim charts). As a matter of law, the Accused Products cannot *directly infringe* any claim of the Asserted Patents. *See WMS Gaming*, 184 F.3d at 1350 ("If even one limitation is missing or not met as claimed, there is no literal infringement."). Accordingly, the claims of *direct* infringement should be dismissed *with prejudice*, because the Accused Products themselves do not include all necessary elements to create an allegedly infringing system.

2. **GEM Products' Allegations of Contributory Infringement in Counts I–IV of the Complaint Should Be Dismissed Because the Accused Products Cannot Contributorily Infringe Any Claims of the Asserted Patents.**

    a. **Counts I–IV Should Be Dismissed For Failing to Sufficiently Allege Contributory Infringement.**

The claims for *contributory infringement* should be dismissed because the Complaint does not identify any actual infringement; rather, it merely suggests that an infringing system *could be* created if a user was to combine the Accused Products with other products and then arrange them in an allegedly infringing manner. *See, e.g.*, ECF Nos. 1-6, 1-7. The Complaint does not identify any user that has actually done that, or provide more than GEM Products' speculation that a user would do so. "'It is axiomatic that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement."'" *Nalco Co. v. Chem Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004))).

Without more than mere speculation, the Complaint's conclusory recitation of the elements of contributory infringement is insufficient. GEM Products' claim charts demonstrate that the theory is based on nothing more than speculation that a user *might* combine the Accused Products with rigging instructions showing *possible* ways to rig an outrigger—using eyelets instead of pulleys—and then purchase the other specifically required components to ultimately create an infringing system. ECF Nos. 1-6, 1-7. That is not enough.

    b. **Counts I–IV Should Be Dismissed With Prejudice Because the Pleadings Establish That the "Accused Products" Are Staple Articles of Commerce That Cannot Infringe Under § 271(c).**

The claims for *contributory infringement* should also be dismissed because the only "Accused Products" identified are clearly staple articles of commerce that cannot possibly infringe under 35 U.S.C. § 271(c). *See, e.g.*, ECF No. 1, ¶ 9 (identifying "Accused Products"); ECF No. 1-5 (showing Rupp Marine's products); ECF Nos. 1-6 and 1-7 (claim charts relying on inferences based on a 2008 rigging diagram); ECF No. 12, ¶¶ 129–139 (showing myriad ways

of rigging outriggers that do not meet the required "a plurality of retention devices" and retention devices attached to each "outrigger cord").  The patent laws provide that whoever sells an apparatus for use in practicing a patented invention, "knowing it to be 'especially made or especially adapted for use in an infringement of such patents, and *not* a staple article or commodity of commerce *suitable for substantial non-infringing use*, shall be liable as a contributory infringer.'"  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009) (quoting 35 U.S.C. § 271(c)) (emphasis in original).  "Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention."  *Ibid.* (citing *Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008)).  As approved by the Federal Circuit, "non-infringing uses are substantial when they are not unusual, far fetched, illusory, impractical, occasional, aberrant, or experimental."  *Ibid.* (collecting cases).

Here, the pleadings demonstrate that the "Accused Products" are **not** "especially made or especially adapted for use in an infringement of [the asserted] patents," but rather that the products **are** "staple article[s] or commodity[ies] of commerce," that are "suitable for substantial non-infringing use"—even under GEM Products' infringement theory—and, therefore, cannot infringe under § 271(c).  *See Vita-Mix*, 581 F.3d at 1327; *see also* 35 U.S.C. § 271(c).  As is clear from the prosecution histories of the Asserted Patents, and the reexamination of the '632 patent, the "heart" of the patented inventions *cannot be* having a pulley on an outrigger— that was long known in the art and practiced long before the Asserted Patents were filed. *Compare* ECF No. 12, ¶¶ 88–96 (prior art) *with id.*, ¶¶ 7–81 (prosecution histories, including discussions and identification of prior art by the Patent Office).

Because the pleadings demonstrate that the "Accused Products" are merely staple articles of commerce that **are not** "especially made or especially adapted for use in an infringement of [the asserted] patents," they cannot infringe under § 271(c) as a matter of law.  *See Vita-Mix*, 581 F.3d at 1327.  Accordingly, the Court should dismiss Counts I–IV *with prejudice*

because amendment would be futile and merely serve to multiply the costs of this frivolous action.

**B.**   **Judgment Should Be Entered for Rupp Marine on Count II of the Complaint, Rupp Marine's Eleventh Affirmative Defense, and Counterclaim Count IV Because the '778 Patent is Invalid as a Matter of Law Under, at Least, 35 U.S.C. § 112, ¶ 1, For Adding "New Matter" During Prosecution.**

The '778 patent is invalid as a matter of law for, at least, adding subject matter to the claims of the patents during prosecution in violation of the requirements of 35 U.S.C. § 112. Whether a patent is invalid as indefinite under § 112 is a question of law based on the understanding of the claims of the patent. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("Indefiniteness is a question of law that we review de novo, subject to a determination of underlying facts.") (internal citation omitted). This determination can be made at the pleadings stage when it does not require anything more than a review of the patent claim(s) at issue. While the Court must accept, on a Rule 12(c) motion, the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *see Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), that duty "does not require [the Court] to ignore specific factual details of the pleading in favor of general or conclusory allegations," *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Ibid.*

Therefore, when only the patent and its proper interpretation is at issue, the Court can determine the invalidity of the claim based on the pleadings at the Rule 12 stage. *See, e.g.*, *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 n.3, 1341 (Fed. Cir. 2016) (noting in its review of the district court's Rule 12(b)(6) holding that the "system" claims asserted were actually method claims and therefore not indefinite under *IPXL* while dismissing the claims for failing to satisfy the *Iqbal/ Twombly* pleading standard); *Lexington Luminance LLC v. Amazon.com Inc.*, 601 Fed. Appx. 963, 967-69 (Fed. Cir. 2015) (analyzing indefiniteness under § 112 on the pleadings based on the pleadings and attached patent and vacating the invalidity judgment for

substantive reasons).  This is similar to the Court's authority to determine claims invalid as patent ineligible under § 101 at the pleadings stage, because there are no factual allegations to consider, only the text of the patent claims in light of the specification.  *See Aatrix Software, Inv. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.").

Each independent claim of the '778 patent, and therefore every claim of the '778 patent, includes subject matter that has been determined by the U.S. Patent Office to have not been disclosed or possessed by the inventor, Mercier, at the time that the original specification was filed with the Patent Office.  Section 112 of the Patent Act sets forth the written description requirement.  35 U.S.C. § 112, ¶ 1 (2006 ed., pre-AIA) ("The specification shall contain a written description of the invention . . . .").  "One of the roles of the written description requirement is to ensure that patent claims are not amended to claim subject matter different from what was described in the patent application on the date of its filing." *ICN Photonics, Ltd. v. Cynosure, Inc.*, 73 Fed. Appx. 425, 429 (Fed. Cir. 2003) (citing *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003)).  When claims are amended during prosecution, the written description requirement probits the introduction of "new matter" into the claims, i.e., matter that is not supported by the patent application as originally filed.  *Ibid.* (citing *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000)); *accord Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1255 (Fed. Cir. 2004) ("The written description requirement prevents applicants from using the amendment process to update their disclosure (claims or specifications) during their pendency before the patent office.").

Here, the claims of the '778 patent were amended years into prosecution to include subject matter that the Patent Office determined—in the context of original patent from which the '778 patent was a divisional—was not "supported" by the original application and therefore constituted "new matter."  The '778 patent is a division of application No. 12/726,695, which issued as the '632 patent.  ECF No. 12-2, page 1.  As a division of the '632 patent the

original specification is the same as that of the '632 patent.  *See* 35 U.S.C. § 121; *see also Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014) ("A divisional application is another type of continuing application and is intended for 'distinct invention[s], carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application.") (citing Manual of Patent Examination Procedure ("MPEP") § 201.06 and 37 C.F.R. § 1.53(b)).

The issued claims of the '778 patent include the claim limitation "said cord passages respectively guiding predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure, and **retaining said cord management positions such that the cord passages extend at fixed angular orientation relative to the outrigger structure**."  '778 patent, ECF No. 12-3 at 12:7–13 (claim 1) (emphasis added); *accord id.* at 13:12–20 (claim 12);[2] at 14:5–11 (claim 15).[3]  This subject matter, claiming a "fixed angular orientation [of the cord passages] relative to the outrigger structure," was not included in the original application of the '778 patent or in the '632 patent, from which the '778 patent is a division.  Rather, it was added on March 11, 2016, following a discussion between the applicant's representative and the patent examiner.  ECF No. 12-2 at 13–22.

Problematically for the patentee, however, at that same time the '632 patent was being reexamined by the Patent Office.  *See* ECF No. 12-4.  In connection with that reexamination, the applicant's representative attempted to amend the claims of the '632 patent to include the same "fixed angular orientation relative to the outrigger structure" subject matter.  ECF No. 12-4 at 32–41.  On June 20, 2016, the applicant's representative had a telephone interview

---

[2] "the cord passages each forming a guide groove receiving and guiding a predetermined one of said outrigger cords to maintain independent displacement thereof relative to the outrigger structure, and **retaining said cord management positions such that the cord passages extend at fixed angular orientations relative to the outrigger structure**." (emphasis added).

[3] "the cord passages each guiding a predetermined one of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure, and **retaining said rotatable pulley members such that the cord passages extend at fixed angular orientations relative to the outrigger structure**." (emphasis added).

with the three (3) reexamination examiners who were assessing the validity of the '632 patent. ECF No. 12-4 at 27–31.  In summarizing that interview, the panel of examiners specifically noted: "The examiners expressed concern that the newly added language to claim 1 regarding the fixed angular orientation relative to the outrigger structure was not supported by the dis-closure." ECF No. 12-4 at 31.  Consequently, the applicant *removed that subject matter* from the '632 patent in order for the '632 patent to be allowable.  ECF No. 12-4 32–40 (amendment of July 7, 2016).

Though the applicant withdrew that "new matter" from the claims of the '632 patent to obtain a narrowed set of claims following reexamination, the applicant **did not** amend the claims of the '778 patent to remove that "new matter."  Because each of the independent claims of the issued '778 patent contain the "fixed angular orientation relative to the outrigger structure" subject matter—subject matter that was determined to constitute "new matter" during the reexamination of the '632 patent—all claims of the '778 patent are invalid for vio-lating the written description requirement.  *See, e.g.*, *Chiron*, 363 F.3d at 1255 ("In this case, the Chiron scientists, by definition, could not have possession of, and disclose, the subject matter of the chimeric antibodies that did not even exist at the time of the 1984 application. Thus, axiomatically, Chiron cannot satisfy the written description requirement for the new matter appearing in the '561 patent, namely chimeric antibodies.").

Similar to *Chiron*, it is axiomatic that if the applicant did not support the "fixed angular orientation relative to the outrigger structure" subject matter in the original application of the '632 patent and, therefore, could not add it to the claims of the '632 patent during reexamina-tion, then the applicant cannot support the same subject matter in an application that is a division of the '632 patent.  *See* 363 F.3d at 1255.  As such, all claims of the '778 patent that contain the "fixed angular orientation relative to the outrigger structure" subject matter—that is all claims of the '778 patent—are necessarily invalid for violating the written description requirement of 35 U.S.C. § 112.  *See ibid.*

13

**C.**     **Judgment Should Be Entered for Rupp Marine on Counts III–IV of the Complaint, Rupp Marine's Twelfth and Thirteenth Affirmative Defenses, and Counterclaim Counts VI and VIII Because the '226 and '566 Patents Are Invalid Under, at Least, 35 U.S.C. § 103 Due to Their Filing Dates.**

1. The '226 and '566 patents also contain the "fixed angular orientation relative to the outrigger structure" subject matter.  Because that subject matter was in the '226 patent's application at the time it was filed (U.S. application No. 15/212,571, filed July 18, 2016), those patents are not facially invalid under 35 U.S.C. § 112, ¶ 1 (2006 ed., pre-AIA).  *Cf.*, *supra*, Section B.  However, the inclusion of that "new" subject matter in the '226 and '566 patents means that those patents are invalid under, at least, 35 U.S.C. § 103 as being obvious based on, *inter alia*, the '632 patent (issued February 25, 2014) in light of, at least, the Reel N Free outrigger pulleys that were publicly known and on sale since at least November 19, 2010 (as reflected on the Internet Archive's Wayback Machine).

A patent is invalid under 35 U.S.C. § 103 as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  *DSS Tech. Mgmt. v. Apple Inc.*, 885 F.3d 1367, 1374 (Fed. Cir. 2018).  "'[I]n appropriate circumstances, a patent can be obvious in light of a single prior art reference if it would have been obvious to modify that reference to arrive at the patented invention.'"  *Ibid.* (quoting *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016)) (citation omitted in original).  "[C]ommon sense and common knowledge" can also inform the obviousness inquiry.  *Ibid.* (citing *Arendi*, 832 F.3d at 1361).

Here, the '226 and '566 patents—filed as "continuation" applications based on the '632 patent, but claiming "new" subject that is not present in the '632 patent—are invalid as obvious, under 35 U.S.C. § 103, based on, at least, the '632 patent in light of prior art pulley products sold in the market, including, *inter alia*, the Reel N Free pulleys that bolt directly to outrigger collars.  Because the '226 and '566 patents disclose subject matter absent from the '632 patent, the '226 and '566 patents are not entitled to the benefit of an earlier filing date,

and so their earliest possible filing date in 2016, makes the '632 patent prior art under, at least, 35 U.S.C. § 102(b). The '632 patent also discloses *everything except* the "fixed angular orientation relative to the outrigger structure" subject matter claimed in the '226 and '566 patents. Since that additional subject matter was regularly used by others in the industry, a person of ordinary skill in the art would have been motivated to modify the '632 patent to include that additional subject matter, making the '226 and '566 patents invalid as obvious.

2. Each independent claim of the '226 and '566 patents include the "fixed angular orientation relative to the outrigger structure" subject matter. *See, e.g.*, ECF No. 1-3 at 12:22–25 (claim 1: "said at least one cord management unit retaining the cord passages thereof to extend **at fixed angular orientations relative to the outrigger structure**;") (emphasis added); *id.* at 13:31–34 (claim 12: "said at least one cord management unit retaining the cord passages thereof to extend **at fixed angular orientations relative to the outrigger structure**;") (emphasis added); *id.* at 14:20–23 (claim 17: "said pulley members respectively defining a plurality of cord passages transversely offset one from the other and extending **at fixed angular orientations relative to the outrigger structure**,") (emphasis added); ECF No. 1-4 at 12:56–60 ("wherein said housing and rotatable portions are configured to maintain the cord passages about a common axis **fixed in angle relative to said at least one outrigger structure** when said housing portion is mounted thereto by said releasable fastening portion") (emphasis added); *id.* at 14:15–21 ("wherein said housing and rotatable portions are configured to define on the at least one outrigger structure a cord management assembly relatively maintaining the cord passages about a common axis **fixed in angle relative to said at least one outrigger structure** when said housing portion is mounted thereto by said releasable fastening portion") (emphasis added); *id.* at 16:1–7 ("wherein said housing and rotatable portions are configured to define on said at least one outrigger structure a cord management assembly maintaining the cord passages about a common axis **fixed in angle relative to said at least one outrigger structure** when said housing portion is mounted thereto by said releasable fastening portion") (emphasis added).

3.  Because the '226 and '566 patents include subject matter that was not present in the '632 patent or the as-filed application for the '778 patent, *see supra*, Section B, the '226 patent and '566 patent are not entitled to the benefit of a filing date earlier than July 18, 2016, when the '226 patent was actually filed.  "In the absence of an interference or rejection which would require the PTO to make a determination of priority, [i.e., entitlement to the benefit of the filing date of an earlier patent application,] the PTO does not make such finding as a matter of course in prosecution," a point that the Patent Office specifically addresses in its manual of procedure.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (citing MPEP (7th ed., July 1998), at § 201.08).  A party is only entitled to the benefit of the filing date of an earlier patent or application if the later claims meet the requirements of 35 U.S.C. § 120.  *Id.* at 1306 ("'It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application **only if** the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112.'") (quoting *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995)).

The Patent Office has already specifically found that the '632 patent—and by extension the '778 patent, *see supra*, Section B—**does not** support the claim limitations in the '226 and '566 patents, specifically the "fixed angular orientation relative to the outrigger structure" subject matter.  ECF No. 12, ¶¶ 42–45; ECF No. 12-4, pages 27–31.  Further, Mercier then conceded the point by withdrawing that claim language and proposing language which did not include the "fixed angular orientation relative to the outrigger structure" subject matter.  ECF No. 12, ¶¶ 46–47; ECF No. 12-4, pages 44–54.  Accordingly, the '226 and '566 patents cannot—as a matter of law—be entitled to a filing date earlier than the July 18, 2016, filing date of the application that resulted in the '226 patent.  *See PowerOasis*, 522 F.3d at 1305–06.

4.  The '632 patent, as issued in 2014, is prior art under, at least, 35 U.S.C. § 102(b) (2006 ed., pre-AIA).  Moreover, *except for* the "fixed angular orientation relative to the outrigger structure" subject matter, the '632 patent discloses all other limtiations claimed in the '226 and '566 patents.  *See PowerOasis*, 522 F.3d at 1304 n.3 (discussing continuing applications

and the terminology "continuation", "divisional" and "continuation-in-part" being used merely for administrative convenience). While the '226 and '566 patents were incorrectly filed as "continuations" of the '632 patent, Mercier's filing of them as "continuations" is a concession that the '632 patent discloses all *other* limitations of the claims in the '226 and '566 patents—excluding the subject matter determined by the Patent Office as "new." *See ibid.*; *see also* ECF No. 12, ¶¶ 42–45; ECF No. 12-4, pages 27–31. But the Patent Office held that the "fixed angular orientation relative to the outrigger structure" subject matter **was not** contained in the '632 patent, ECF No. 12, ¶¶ 42–45; ECF No. 12-4, pages 27–31, and Mercier (the inventor) conceded that finding by removing it from the claims of the '632 patent during reexamination, ECF No. 12, ¶¶ 46–47; ECF No. 12-4, pages 44–54. Because the "fixed angular orientation relative to the outrigger structure" subject matter was not disclosed in the '632 patent, and was only added to the '778 patent during prosecution, *see supra*, Section B, that subject matter—included in the '226 and '566 patents—should be the only subject matter in those patents that is not disclosed by the '632 patent. Adding that subject matter, however, would have been obvious.

The Reel N Free pulleys fixedly coupled with a bolt to outrigger collars is also prior art under, at least, 35 U.S.C. § 102(b) (2006 ed., pre-AIA). *See* ECF No. 92; *see also* https://web.archive.org/web/20101119110449/http://www.reelnfree.com/ (Nov. 19, 2010, website capture, last visited Mar. 26, 2025) (printout provided as Exhibit A); https://web.archive.org/web/20131101000342/http://www.reelnfree.com/ (Nov. 1, 2013, website capture, last visited Mar. 26, 2025) (printout provided as Exhibit B).

5. The Reel N Free product and the Pipewelder Marine products (as well as the Rupp Marine accused Pulley Clusters), demonstrate that persons of skill in the art were motivated, prior to the filing of the '226 patent, to mount pulleys to an outrigger such that the pulleys were maintained in "fixed angular orientation relative to the outrigger structure." *See, e.g.*, ECF No. 12, ¶¶ 89–96; Exs. A–B. This is also shown by Mercier *adding that subject matter* to his original invention disclosed in the '632 patent; he was rejected from adding to the '632

patent during reexamination in June 2016, but still added it mid-prosecution to the '778 patent, *see supra*, Section B, and also added it to the claims of the '226 and '566 patents, *see supra*, page 15.

6. Here, a person of ordinary skill in the art would have been motivated by, at least, July 2016, to fixedly mount the prior art described in the '632 patent to an outrigger so that the "cord management units," or "pulleys," were maintained in a "fixed angular orientation relative to the outrigger structure," as multiple companies had been incorporating that manner of connection to mount pulleys more than a year prior to the filing of the '226 patent. Such companies include, at least, Reel N Free, Pipewelders Marine, and even Rupp Marine. *See* ECF No. 12, ¶¶ 92–96. Accordingly, the '226 and '566 patents are obvious in light of the '632 patent, and even more obvious in light of the '632 patent combined with the Reel N Free product that fixedly mounted pulleys to outriggers in, at least, 2010.

The Court should therefore grant judgment on the pleadings to Rupp Marine on Counterclaims VI and VIII, and hold that the '226 and '566 patents are invalid as obvious.

**D.    The Complaint Further Constitutes an Improper "Shotgun Pleading," and Counts I–IV Should Also Be Dismissed as Including Multiple, Independent Claims Within Each Count.**

Each of Counts I–IV alleges both *direct infringement*, a claim under 35 U.S.C. § 271(a), and *contributory infringement*, a claim under 35 U.S.C. § 271(c), violating Federal Rules of Civil Procedure 8 and 10 by including separate causes of action within a single count. "A complaint that fails to follow Rules 8 and 10 may be classified as a shotgun pleading." *Muhammad v. Muhammad*, 654 Fed. Appx. 455, 457 (11th Cir. 2016). "A shotgun pleading is one that fails 'to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Isaias v. Martin County*, Case No. 2:18-CV-14171 ROSENBERG/MAYNARD, 2018 U.S. Dist. LEXIS 120000, *7 (S.D. Fla. July 17, 2018) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Such pleadings "exact an

intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources." *Jackson v. Bank of America*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)).  As such, "[t]he Court has an obligation to *sua sponte* strike a shotgun pleading." *Boca Raton Reg'l Hosp., Inc. v. Celtic Ins. Co.*, Case No. 19-80650-CIV-SINGHAL/REINHART, 2020 U.S. Dist. LEXIS 21612, *28 (S.D. Fla. Feb. 6, 2020) (citing Jackson, 898 F.3d at 1357-58).

Each Count of the Complaint also commits the third most common type of shotgun pleading, "the sin of not separating into different counts each cause of action or claim for relief." *See Weiland*, 792 F.3d at 1320–23; *see also L.S. v. Peterson*, No. 18-cv-61577, 2018 U.S. Dist. LEXIS 210273, *7–8 (S.D. Fla. Dec. 13, 2018) (Bloom, J.) (incorporating two separate claims into one count is a "quintessential form of shotgun pleading" requiring dismissal). "Courts in the Southern District of Florida require separate counts when separate claims are pleaded, notwithstanding the fact that the claims arose from a single transaction." *Isais*, 2018 U.S. Dist. LEXIS 120000, at *9 (citing *Wausau Underwriters Ins. Co. v. Danfoss, LLC*, No. 2:14-CV-14420, 2015 WL 9094201, *12 (S.D. Fla. Dec. 16, 2015)).

Direct infringement, under § 271(a), requires the allegation that Rupp Marine *itself* makes, uses, sells, offers for sale, etc. a product that meets all limtiations of the Asserted Patents.  *See* 35 U.S.C. § 271(a); *see also supra*, Section A.1.  By contrast, contributory infringement, under § 271(c), requires allegations that Rupp Marine "offers to sell or sell[s] . . . **a component of a patented** machine, manufacture, combination, or composition . . . constituting **a material part** of the invention . . . ."  35 U.S.C. § 271(c); *see also supra*, Section A.2. Those two theories are incompatible when applied to the same "Accused Products".  Accordingly, Counts I–IV are improper "shotgun" claims that need to be dismissed so that they can be separately pleaded.[4]

---

[4] Alternatively, if the Court dismisses the direct infringement claims with prejudice, as addressed in Section A, the "shotgun pleading" problem will be resolved.

## CONCLUSION

For the reasons discussed above, Rupp Marine respectfully requests that the Court grant judgment on the pleadings to Rupp Marine, dismiss Counts I–IV and grant judgment on Counterclaims IV, VI, and VIII that the '778, '226, and '566 patents are invalid.

Respectfully submitted,

McHale & Slavin, P.A.

**Andrew D. Lockton**
Andrew D. Lockton, Esq. (Fla. Bar No. 115519)
Edward F. McHale, Esq. (Fla. Bar No. 190300)
2855 PGA Boulevard
Plam Beach Gardens, Florida 33410
(561) 625-6575
(561) 625-6572 fax
alockton@mchaleslavin.com
emchale@mchaleslavin.com
litigation@mchaleslavin.com

*Counsel for Defendant/Counterclaimant*
*Rupp Marine, Inc.*