IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:25-cv-14047-DMM

GEM Products, LLC,
    Plaintiff/Counterclaim-Defendant,

v.

Rupp Marine, Inc.,
    Defendant/Counterclaimant.
_____/

### RUPP MARINE, INC.'S OPPOSITION TO GEM PRODUCTS, LLC'S MOTION FOR SANCTIONS (DE 117)

Defendant Rupp Marine, Inc. ("Rupp") respectfully submits this Opposition to Plaintiff GEM Products, LLC's ("GEM") Motion for Sanctions (DE 117). As set forth herein, the filing of GEM's Motion was improper and sanctionable.

Without evidence, GEM's entire motion is an unsupportable and wholly incorrect assertion that Rupp's counsel misrepresented material facts to the Court and that Rupp has violated the Court's discovery orders. Those assertions are complete misrepresentations by GEM's counsel. At the time GEM's counsel filed the Motion it was clear that there was **no evidentiary basis** for the allegations in GEM's Motion, and in accusing Rupp and its counsel of making misrepresentations, GEM's counsel misrepresents testimony and affirmatively ignores Rupp's testimony directly addressing—and refuting—the exact points contained in GEM's Motion. GEM's Motion should be denied, and GEM's counsel should be sanctioned for filing a frivolous motion based on knowing misrepresentations to the Court—misrepresentations made following two (2) days of sworn testimony explaining to GEM's counsel exactly why the very arguments raised are without merit or evidentiary basis.

### Facts

During the discovery dispute hearing on July 3, 2025, GEM's counsel conceded that Rupp **does not** sell a product that is an outrigger having pulleys on it. Ex. A, Transcript of

1

July 3, 2025 Motion Hearing, at 6:1–7:6; *but see id.* at 9:6–10:13 (expressing GEM's belief that Rupp might sell "custom" products not listed in its catalog). GEM's counsel conceded that Rupp sells outriggers and that it separately sells pulleys. Ex. A at 7:4–6 ("So we do not allege that there is a specific product where Rupp right now is selling the outrigger with the pulley system directly attached."). GEM's asserted "theory" was that Rupp *previously* sold a product that constituted an outrigger with pulleys attached to it, but that Rupp stopped selling such a product so that its customers would have to separately purchase pulleys. *Id.* at 6:1–6 (". . . the theory of liability here in part is what [*sic*] Rupp Marine started selling outriggers with pulley clusters not attached to the outriggers so the purchasers would have to purchase the attached accused pulleys - - I'm sorry - - would have to purchase and attach the accused pulleys to the outriggers.").[1]

Viking Yacht Company and its subsidiary Palm Beach Towers have since independently confirmed that Rupp **never** sold a product that is an outrigger with pulleys attached to it. Testifying on behalf of Viking Yacht Company, Drew McDowell stated that Viking Yachts **does not buy pulleys** from Rupp. Rather, it buys outriggers that have eyebolts. Mr. McDowell testified that Palm Beach Towers buys outriggers and separately buys accessories for outriggers, including pulleys, from Rupp. Palm Beach Towers orders an outrigger, **and** it orders pulleys. Mr. McDowell testified that Rupp's outriggers come standard with eyebolts, but that Palm Beach Towers offers *its* customers the option to buy differing pulleys as separate products, which can then be attached to the outriggers for use in place of eyebolts.

Mr. McDowell also testified that, for decades, Palm Beach Towers has made special requests when an outrigger is intended to be installed on a boat that will be located at its Riviera Beach, Florida, facility, that Rupp assemble the outrigger before delivery.[2] He further explained that, as a general matter, if Palm Beach Towers has also ordered pulleys and/or

---

[1] Separately, testimony from the two (2) employees of Rupp's customer Palm Beach Towers has confirmed first, that Rupp has never sold such a product and, second, that GEM *was told before this action commenced* that Rupp never sold outriggers with pulleys attached to them.

[2] Due to the size of outriggers, only partial assembly can be accomplished before delivery.

other items in addition to a pair of outriggers, a request that the outrigger be assembled would likely include attaching the other items, including the separate pulleys, to the outriggers during such assembly. There is no fee for this service which Rupp has provided to Palm Beach Towers due to its close proximity to Rupp's facility. Further, Mr. McDowell testified that there is no paperwork—no purchase order, order confirmation, invoice, etc.—that indicates if outriggers were assembled at Palm Beach Towers' request or if any outriggers had pulleys attached. That is because all items are separately ordered by Palm Beach Towers and are listed separately on all paperwork.

    Between September 9–11, 2025, GEM's counsel deposed the principals of Rupp, and Rupp's Rule 30(b)(6) corporate representative. Each confirmed that pulleys are ordered and sold separately from outriggers and that there is no outrigger offered by Rupp that includes pulleys. If a customer wants to separately order pulleys, whether independent of ordering outriggers or at the same time as ordering outriggers, such customers are free to do so. Other than the above-described customer service which Rupp has long performed for Palm Beach Towers for certain deliveries in Palm Beach County, Florida, everyone else receives boxes containing disassembled outriggers (as is necessary for shipping outriggers), and any other separate items, including pulleys. Rupp provided documents showing, and testified, that when Palm Beach Towers orders outriggers and any accessories, each product—including any pulleys contained in the order—are separately identified and ordered by Palm Beach Towers in the Purchase Order sent to Rupp. Rupp creates an Order Confirmation to list each of the separate products ordered. Rupp creates a Packing Slip to check each product item contained in the order, which can also be used to confirm delivery of each such item. Rupp also creates an Invoice for each order that lists each product ordered, separately.

    GEM presented an "identical" draft of the Motion **before** GEM questioned the relevant Rupp witnesses. GEM's counsel then sat through two (2) days of testimony that included addressing that Rupp **does not** sell outriggers that have pulleys attached to them and **does not** have documents for such a product because it is not one offered by Rupp. Counsel

3

for the parties conferred on September 10, during a lunch break in the deposition of Rupp's Vice President that occurred shortly after he specifically addressed those points. Rupp's counsel advised that the testimony of Viking Yachts/Palm Beach Towers and Rupp, itself, specifically and directly contradicted the arguments in GEM's draft motion. On September 12, GEM's counsel filed GEM's motion (DE 113)—which was refiled September 19 (DE 117)—despite the fact that all evidence, including the testimony of Mr. McDowell and Rupp's principals, specifically contradicted GEM's argument, which misrepresented the testimony of Mr. McDowell and lacked any evidentiary support for its offensive accusations.

## Argument

GEM's Motion is legally and factually frivolous; GEM and its counsel should be sanctioned for filing it and for making knowing and intentional misrepresentations to the Court. Not only is the Motion without any basis in fact or law, but GEM filed the present Motion following **two (2) days of clear testimony directly refuting each and every point** contained in the Motion. The disingenuous nature of GEM's Motion is shown in the fact that it was drafted *before* GEM attempted to investigate the facts behind the Motions arguments. It was drafted based on GEM's assumptions and speculations about documents it never questioned Mr. McDowell about, and testimony GEM clearly failed to comprehend.[3] GEM never asked Mr. McDowell about those documents, other than to authenticate them as business records. GEM's Motion was filed, however, after those assumptions and speculation had been specifically disproved with documents and testimony provided by Rupp.

Mr. McDowell's testimony confirmed exactly what Rupp has been stating since the beginning of this case; he also contradicted nearly every one of GEM's "theories" in this case, including, specifically, GEM's "theory" about Rupp selling outriggers "with pulleys" attached. GEM's Motion is premised on the complete misrepresentation of Mr. McDowell's

---

[3] GEM now appears to argue that the Motion is based on GEM's *merits position*, attempting to redefine Rupp's separate products as a single product based on a legally (and grammatically) flawed analysis of what constitutes a "product". *See* DE 116.

testimony, misrepresentations made by GEM's counsel *after* counsel questioned Rupp and its Vice President about these matters and questioned Rupp about the Purchase Orders it receives from Palm Beach Towers.

GEM has always known these facts. Rupp's products are, and have always been, publicly available. Rupp's product catalog (attached as Exhibit B) and even its 2012 Price List (attached as Exhibit C) make clear that all of Rupp's products are separate. GEM's counsel conceded on July 3, 2025, that it understands that Rupp is "presently" selling separate products. *See, e.g.*, Ex. A at 6:1–6, 7:4–6. Now, the evidence has confirmed that Rupp has **always** sold separate products.

Discovery has borne out that GEM never investigated the facts before filing suit, including the allegations that Rupp was selling outriggers "with" pulleys on them. Discovery has also shown that GEM's entire case—both for the merits and for the discovery "disputes" manufactured by GEM—has been built on GEM's misrepresentations of facts to the Court. Now, with those issues looming, GEM recognizes that it cannot prove its case. But even though it acknowledges it cannot prove its case, it has misrepresented testimony to accuse Rupp and its counsel of "willfully misrepresenting" the facts and asks the Court to do what GEM cannot—establish the elements GEM is required to prove, as a "sanction" for fabricated misconduct. *See* DE 113 at 4–5. GEM's request is inappropriate, and its counsel's assertions in the Motion are sanctionable.

The Court should Order GEM and its counsel to Show Cause under Rule 11(c)(3) why ***GEM and its counsel*** should not be sanctioned under Rule 11. The Court should also award Rupp its fees for having to respond to GEM's frivolous Motion. GEM's Motion is improper, and GEM and its counsel should be sanctioned.

## CONCLUSION

For the reasons above, GEM's Motion should be denied, and GEM should be sanctioned for filing a frivolous motion built on misrepresentations to the Court. Rupp should also be awarded its fees under Rule 37 for having to respond to GEM's frivolous Motion.

    Respectfully submitted,

    McHale & Slavin, P.A.

    **Andrew D. Lockton**
    Andrew D. Lockton, Esq. (Fla. Bar No. 115519)
    Edward F. McHale, Esq. (Fla. Bar No. 190300)
    2855 PGA Boulevard
    Plam Beach Gardens, Florida 33410
    (561) 625-6575
    (561) 625-6572 fax
    alockton@mchaleslavin.com
    emchale@mchaleslavin.com
    litigation@mchaleslavin.com

    *Counsel for Rupp Marine, Inc.*