IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

GEM Products, LLC,
    Plaintiff/Counterclaim-Defendant,        Case No. 2:25-cv-14047-DMM

v.

Rupp Marine, Inc.,
    Defendant/Counterclaimant.
_____/

**OPPOSITION TO MOTION FOR SANCTIONS (DE 122)**

Defendant Rupp Marine, Inc. ("Rupp") respectfully submits this Opposition to Plaintiff GEM Products, LLC's ("GEM") Motion for Sanctions (DE 122).

GEM's Motion is less than candid regarding the nature of the documents which are the subject of its Motion in relation to the documents Rupp previously produced. It's feigned outcry of "severe prejudice" is unsupported by the Motion. Indeed, during an hour-long conferral, GEM's counsel could only relate that the "prejudice" was not knowing was prejudice there was. While GEM's earlier sanctions motion (DE 117) misrepresented testimony, this new Motion is disingenuous in wholly marginalizing what discovery Rupp earlier produced, what the deposition testimony addressed, or that the additional documents were found following the September 18th conferral and GEM's new articulation that day of what it was looking for. GEM's more specific articulation sought documents disclosing different, specific information, which led to new and different search. Critically, these new documents provide GEM nothing of added value. As part of Rupp's discovery responses (Ex. A),[1] it produced detailed engineering files showing all aspects of the Accused Products, including the Accused Pulleys which are simple mechanical devices, Ex. B (engineering files); Ex. C (specific pulley files from Ex. B), and produced physical samples of the actual pulleys, *see* Ex. D (images of Rupp's samples, GEM0007928–GEM0007953).

GEM's claimed "prejudice" based on somehow just learning about the actual design of Rupp's products, is a misrepresentation. First, GEM was required to know the complete structure

---

[1] GEM's Motion does not provide Rupp's actual responses to discovery. *See* DE 122-2.

of the Accused Pulleys *before filing* this action.  Second, **GEM concedes that in October of 2024 (before filing this action) its CEO was expressly told that Rupp's "pulley clusters" are sold with an articulating ball joint/stem**.  Ex. E at 14-16 (GEM's amended response no. 8);[2] Ex. F (Joe Glonek Deposition) at 8:11–13:14, 14:24–15:11, 20:12–22:25.

### 1. Rupp Did Not Violate Its Discovery Obligations.

GEM initially cast its request in an all-encompassing manner, requesting "all documents related to" broad topics.  Rupp undertook a good-faith search and provided detailed engineering drawing and schematics for its "Accused Products," including its "Accused Pulleys."  *See* Exs. A–C.  Those earlier-produced files (Exs. B–C) are the engineering and CAD files that Mr. Rupp understood as requested.  *See, e.g.*, Ex. H (S. Rupp deposition excepts) at 147:22-25, 176:17–177:25, 179:2–188:18.  Mr. Rupp believed all responsive documents were produced.  *See, e.g.*, *id.* at 186:11-20.  Review of the newly-produced documents reflect that they do not contain any new information material to the issues, and most relate only to individual components that are ultimately used by Rupp *when Rupp makes* the Accused Pulleys.  The detailed engineering documents produced at the outset of discovery (Exs. B–C) provided all relevant information about Rupp's products and were the only responsive documents that Rupp found based on Rupp's good-faith understanding of the broad, generalized request made, and defined by, GEM.  *See, e.g.*, *ibid.*

This accused "violation" reflects a normal part of the discovery process.  GEM requested "all documents related to" Rupp's design/concept/engineering/etc. of "outrigger pulley assemblies," as that term was defined by GEM.  Rupp searched and provided what it found as responsive to that request.  The documents Rupp provided were CAD design files/engineering files, showing exactly what products Rupp offered for sale and sold.  Exs. B–C.  But GEM believed something else must exist and, **for the first time on September 18, 2025**, following Mr. Rupp's deposition, GEM specifically recast its request as seeking information that would provide details that could

---

[2] This "amended" response was only provided to Rupp after Mr. Glonek of Palm Beach Towers refuted GEM's earlier interrogatory response and contradicted the deposition testimony of GEM's CEO/owner.  *See* Ex. G (original interrogatory response no. 8) at 12-13.

be necessary for quality control purposes: to understand tolerances, etc. That led to a *new search* by Rupp, based on a *new understanding* of what GEM sought. Most of the documents subsequently produced are not engineering documents for "outrigger pulley assemblies", some of them are for generic hardware (screws, bolts, nuts, pins, etc.), and some are drawings for stock parts or other products that Rupp incorporates in assembling its pulleys. While 3-D renderings were also found, similar images had already been produced, as well as actual products. *See* Exs. C–D. As explained in depositions, most of the components in Rupp's pulleys were pre-existing products from Rupp's inventory that were designed for other products but subsequently used with the "Accused Pulleys". Every component of Rupp's Accused Pulleys, however, was fully detailed in the engineering documents it had already produced. *See* Ex. C. Rupp believed it had produced everything responsive to GEM's request. *See, e.g.*, Ex. H at 186:11-20. But when GEM provided more clarity by recasting its request—which it did not do until September 18, 2025—Rupp conducted *a different search* and uncovered *different documents* that could address GEM's inquiry.[3]

GEM's Motion misstates that its August 6 letter made a specific request about dimensions of Rupp's products. As reflected in the attachments to the Motion, no such clarification was made and GEM believed a conferral was not necessary. Upon conferral, GEM recast the request and Rupp understood it differently, conducted a different search, and immediately produced the results of that search, whether relevant or not. That does not constitute a discovery violation.

2.  **GEM is Not Prejudiced By These New Documents.**

GEM was on full knowledge about Rupp's products and cannot be prejudiced by additional documents that are *less relevant* for its infringement claims than the documents previously

---

[3] Indeed, in response to a deficiency raised by Rupp that was also addressed during the conferral, *see* Ex. L (pre-conferral letter), on September 26, 2025, GEM produced late sales information for its own pulley products—unattached to outriggers—after it was uncovered during GEM's Rule 30(b)(6) deposition (on September 12, 2025, the last day of discovery) that GEM withheld those sales during discovery, *see* Ex. M (cover email from GEM). Rupp is not seeking sanctions for GEM's withholding of highly material information because Rupp wants to address this case on the merits and dispose of this matter. By contrast, GEM's repeated motions for sanctions seek only to re-write the facts, obstruct Rupp's preparation of expert reports, and vexatiously multiply this action with unneeded sideshows.

3

produced. GEM cannot genuinely argue "surprise" about the articulating ball joint/stem on Rupp's pulley clusters or the pivot connection in the "pulley upgrades"; it was required to investigate those products *before* filing this action. *See, e.g.*, *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1073-74 (Fed. Cir. 2002) ("As applied by this court, Rule 11 requires an attorney who files a patent infringement action to compare the accused device with the construed patent claims."). Rupp's products are, and have always been, publicly available and, since 2015, Rupp's pulley clusters have included an articulating ball joint/stem—as shown in Rupp's discovery production. During the deposition of Mr. Mercier, the inventor of the Asserted Patents, he acknowledged that the presence of that ball joint meant that Rupp's products were not the same as his invention. *See, e.g.*, Ex. I (Mercier deposition) at 47:7–23;[4] 69:16–75:1. Suggesting why there was no response to Rupp's 2017 correspondence that specifically addressed that feature. *See* Ex. J (correspondence to GEM with attachment).

      GEM's contrived prejudice is a further misrepresentation. GEM was specifically told about the articulating ball joint/stem at least as early as October 2024, including through Mr. Glonek's explanation that Rupp's pulleys come with that articulating ball joint/stem.[5] *See* Ex. F at 8:11–13:14, 14:24–15:11, 20:12–22:25; *see also* Ex. J (attaching Rupp's 2017 letter). Following Mr. Glonek's deposition, GEM amended its interrogatory responses to acknowledge that. Ex. E at 14-16 (response no. 8). Separately, Rupp produced myriad documents showing and detailing the articulating ball joint/stem so that GEM would have known about the physical structure of each of Rupp's products, Exs. A–C, and also produced requested samples of physical products for GEM to evaluate, Ex. D. Moreover, documents **produced by GEM** show that Rupp's pulley clusters include the articulating ball joint/stem and describe that feature. Ex. K (GEM0003802–

---

    [4] "Yeah, [Rupp] started to make a pulley that was real similar to mine, but didn't quite fit the bill, as I think back, because at first they had nothing. And then as years went by, they started to make something, but wasn't as good as mine, but it did something different. I think it was on a - - - it rocked side to side. It was like mine, but it tilted side to side. They started selling something similar to mine, but it wasn't the same."

    [5] Mr. Glonek testified he told GEM's CEO that he understood that the articulating stem was to avoid a patent issue, and GEM's CEO responded that he owns the patents. *See* Ex. F at 21:3-25.

4

GEM0003803: "Made from bright anodized aircraft aluminum and 316 stainless steel, Rupp pulley clusters are designed to replace any outrigger eye-bolt. **Made using Rupp's exclusive polyaxial design that allows the pulley to self-align, further reducing halyard line wear**.").

GEM addressed this feature of Rupp's products during nearly every deposition, and it is fully addressed in the report of GEM's technical expert, served Sept. 26, 2025, providing detailed opinions related to the articulating stem and the pivot connection of the "pulley upgrade".[6] The stem was specifically addressed and described by Drew McDowell and by Mr. Glonek, and it was discussed during GEM's deposition examination of Mr. Mercier. Further, GEM's director of intellectual property, Jason Sarnowski, testified that **in June or July of 2025** (during this action), he purchased Rupp's pully cluster products from one of Rupp's distributors and that those products included the polyaxial ball joint/stem.

This is not a discovery dispute. GEM's Motion is not about an alleged discovery violation. Instead, GEM's Motion is an attempt to re-open all discovery because GEM cannot meet its burdens and, like before (*see* DE 117), a request that the Court **change** the accused product into something it is not—to eliminate the polyaxial ball joint/stem that GEM admittedly knew about. *See* Ex. E at 14-16. Every asserted patent claim requires that the pulley housing be unable to move relative to the outrigger; Rupp's products move relative to the outrigger. GEM seeks to avoid the merits; its "litigation strategy" is to bully Rupp, claiming discovery violations at every stage and requesting sanctions to change Rupp's products. GEM does not want to litigate the *actual* Accused Products, because the Asserted Patents were only issued after specifically claiming a pulley unit that cannot move relative to the outrigger; a pulley that does not move in response to any tension/force from the halyard lines. Mercier, the inventor, knew that Rupp's products did not infringe. Now, GEM's Motion reflects *its awareness* that Rupp does not infringe.

## CONCLUSION

For the reasons above, GEM's Motion and the requested relief should be denied.

---

[6] GEM's expert has submitted his written opinion addressing all of the physical features of Rupp's Accused Pulleys, the only relevant aspect of the Accused Products.

Respectfully submitted,

McHale & Slavin, P.A.

**Andrew D. Lockton**
Andrew D. Lockton, Esq. (Fla. Bar No. 115519)
Edward F. McHale, Esq. (Fla. Bar No. 190300)
2855 PGA Boulevard
Plam Beach Gardens, Florida 33410
(561) 625-6575
(561) 625-6572 fax
alockton@mchaleslavin.com
emchale@mchaleslavin.com
litigation@mchaleslavin.com

*Counsel for Rupp Marine, Inc.*

6