**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

DEFENDANT'S
EXHIBIT

**G**

GEM Products, LLC,

      Plaintiff/Counter-Defendant,

      v.

Rupp Marine, Inc.

      Defendant/Counter-Plaintiff.

Case No. 2:25-cv-14047-DMM

## GEM PRODUCTS, LLC'S RESPONSES TO RUPP MARINE, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, and the Court's Local Rules, Plaintiff/Counter-Defendant, GEM Products, LLC ("GEM Products" or "GEM"), hereby serves its Responses to Defendant/Counter-Plaintiff, Rupp Marine, Inc.'s ("Rupp") First Set of Interrogatories ("Interrogatories").

## GENERAL OBJECTIONS

1.    GEM Products objects to the Interrogatories to the extent they seek information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or exemption. Nothing contained in these responses, nor in any future or supplemental response, is intended or may be construed as any waiver of the attorney-client privilege, the work product doctrine, or any other applicable immunity, privilege, law, or rule.

2.    GEM Products objects to the Interrogatories to the extent they seek information not in the possession, custody, or control of GEM Products.

3.    GEM Products objects to the Interrogatories to the extent they are disproportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' respective access to relevant information, the Parties' resources, the

1

importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

4.      GEM Products objects to the Interrogatories pursuant to Fed. R. Civ. P. 26(b)(2)(i), to the extent that they are redundant, duplicative, or cumulative, or would unreasonably require GEM Products to produce information that already is in the possession of, or otherwise equally obtainable or accessible by, Rupp.

5.      GEM Products objects to the Interrogatories pursuant to Fed. R. Civ. P. 26(b)(2)(i), to the extent that the information sought is more readily available and/or more appropriately obtainable through other means of discovery, including but not limited to, depositions, and to the extent that such information can be obtained in a manner that is more convenient, less burdensome, or less expensive.

6.      GEM Products objects to the Interrogatories pursuant to Fed. R. Civ. P. 26(b)(2)(iii), to the extent that responding to them would cause undue burden and/or expense to GEM Products.

7.      GEM Products objects to the Interrogatories to the extent they extend beyond the discovery rules allowed by the Federal Rules of Civil Procedure and/or the Court's Local Rules. GEM Products will comply with its discovery obligations required under the Federal Rules of Civil Procedure and the Court's Local Rules.

8.      GEM Products objects to the Requests to the extent that they seek legal conclusions, analyses, or opinions, or are more appropriately the subject of expert opinion, analysis, or discovery.

9.      GEM Products objects to Rupp's definition of the words "you," "your," or "yours" as meaning the entity to whom these Requests are directed, its present and former agents,

representatives, or other persons acting, or purporting to act, on its behalf, or for its benefit, to the extent it is vague, ambiguous, and confusing. Moreover, GEM Products objects to this definition in that those persons who are "purporting to act, on its behalf, or for its benefit," to the extent that such persons do not have authority to act on GEM Products' behalf or benefit, nor is GEM Products otherwise aware of such persons "purporting to act, on its behalf, or for its benefit." For purposes of its responses, GEM Products assumes that such Requests are directed to GEM Products, and no other entity, as only GEM Products is a named party in this lawsuit.

10.     GEM Products objects to Rupp's definition of "communication" as meaning "the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), to the extent that it is vague, ambiguous and confusing, and to the extent that it seeks to extend or modify the definition of "communication" beyond that of the Federal Rules of Civil Procedure.

11.     GEM Products objects to Rupp's definition of "Asserted Claims" as meaning and referring to the claims of the '632, '779, '226 and '566 Patents that GEM Products contends that Rupp directly infringes. GEM Products has not asserted in its First Amended Complaint that Rupp directly infringes any claims. Therefore, GEM Products does not contend that Rupp directly infringes any claims of the '632, '779, '226 and '566 Patents, and all Requests set forth herein using the definition of "Asserted Claims" will be interpreted by GEM Products to not include such claims.

12.     GEM Products objects to Instructions D-G to the extent they attempt to impose burdens and/or obligations on GEM Products that are outside of that permitted under the Federal Rules of Civil Procedure. GEM Products will comply with its obligations set forth in the Federal Rules of Civil Procedure.

13.     GEM Products objects to Instruction G to the extent that it is inconsistent with the Parties' agreement regarding the scope, content, and timing of privilege logs. GEM Products will comply with the Parties' agreement concerning privilege logs.

14.     By responding to any of the Interrogatories, GEM Products does not waive or intend to waive, but expressly reserves, all of its statements, reservations, and objections, both general and specific, set forth in these responses, even though GEM Products may in some instances disclose information over the statements, reservations, and/or objections contained herein.

15.     Each of GEM Products' responses to the Interrogatories is made subject to and without waiving, limiting, or intending to waive:

(a) Each of the above-stated general objections and reservations;

(b) The right to object on the grounds of competency, admissibility, privilege, relevancy, or materiality, or any other proper grounds, to the use of the documents or information, for any purpose, in whole or in part, in any subsequent step or proceeding in this action or any other action;

(c) The right to object on any and all grounds, at any time, to other discovery requests involving or relating to the subject matter of the present litigation; and

(d) The right at any time to revise, correct, and add to or clarify any of the responses herein.

16.     GEM Products' investigation is ongoing; therefore, GEM Products reserves the right to supplement its responses and document productions as appropriate.

17.     These General Objections are deemed to be continuing objections throughout the responses that follow, regardless if any are expressly referred to therein. Stating additional or other

specific objections in any of the following responses does not constitute a waiver, alteration, or limitation of these General Objections.

**RESPONSES**

**INTERROGATORY NO. 1:**     For each one of the Asserted Patents, state, with particularity, the nature and full extent of your investigation, prior to the filing of the Complaint in this action, for determining whether, and how, Rupp Marine infringed such patent.

**RESPONSE:** GEM Products objects to this interrogatory as seeking irrelevant information because it is not clear how GEM Products' investigations relate to any of the claims or defenses at issue in this lawsuit nor how such request could possibly reasonably lead to the discovery of admissible evidence. For this reason, GEM Products also objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. GEM Products further objects to this interrogatory as seeking privileged information because it plainly seeks and encompasses, for example, communications between GEM Products and its counsel in seeking a "particular[]" description of the "full extent" of GEM Products' investigation. GEM Products will not disclose such privileged or otherwise protected information.

Subject to the General and Specific Objections contained herein, GEM Products states that its pre-suit investigation included, but may not necessarily have been limited to, investigating and assessing Rupp's product(s), including Rupp Accused Product(s) physically available to GEM Products and how such Accused Products are intended to be used and are used, publicly available product catalogues, publicly available marketing materials and statements, publicly available webpages, and other publicly available sources of information, such as social media accounts, online video repositories, Rupp customer interviews, and consultation with patent counsel. GEM Products and its patent counsel further examined the scope of the claims of each of the Asserted Patents, analyzed the prosecution histories of each of the Asserted Patents, and compared to the

5

claims of the Asserted Patents against each of the Accused Products to which GEM Products was aware, thereby concluding which of the claims and which of Rupp's products cause Rupp to infringe. All communications and assessments done by or with GEM Products' counsel are subject to attorney/client privilege, work-product doctrine, or other privileges, doctrines and/or protections and will not be disclosed.

Upon concluding that Rupp infringes the claims of the Asserted Patents, GEM Products, through its counsel, initiated communications with Rupp on September 25, 2024, informing Rupp of its infringement and demanding that Rupp immediately cease and desist its infringing conduct. (See RUPP002371-RUPP002371). GEM Products further investigated and reviewed the history of correspondence between Rupp and Brian Gilchrist, as counsel for Mercier, to which GEM Products was first made aware with Mr. Slavin's October 1, 2024 letter to GEM's counsel, Joseph Lanser. (See RUPP002369-RUPP2370). Rupp has in its possession, custody and control all correspondence between Joseph Lanser, as counsel for GEM Products, and Michael Slavin, as counsel for Rupp, between September 2024 and February 2025.

**INTERROGATORY NO. 2:**          For your claim of induced infringement under 35 U.S.C. § 271(b), for each of the Asserted Patents, state, with specificity, the complete factual basis for each of the following elements:

       a.  How Rupp Marine actively encouraged infringement by others;

       b.  How Rupp Marine *knew* that the acts it induced would constitute patent infringement; and

       c.  That direct patent infringement was actually effected by the acts identified above.

**RESPONSE:** GEM Products objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks the "complete factual basis" for the

identified categories. Much of the "complete" factual basis for such elements is within Rupp's exclusive possession, custody, or control, or that of third parties, and is the subject of GEM Products' ongoing discovery efforts, including its upcoming depositions, to which Rupp has not yet fully complied. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only respond as to how it understands the disputed claim terms and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein, pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies the factual allegations and statements set forth in GEM Products' First Amended Complaint and Exhibits (ECF No. 43), including Paragraphs 1-8, and 30-141 of the First Amended Complaint and the Exhibits attached thereto, and its Amended Infringement Contentions, served on Rupp on July 18, 2025.

**INTERROGATORY NO. 3:**     For each of the Asserted Claims, state, with specificity, the complete factual basis for your allegation that Rupp Marine has knowledge that each of the Accused Products are especially made for use in the infringement of each such patent claim.

**RESPONSE:** GEM Products objects to this interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks the "complete factual basis" for the identified categories. Much of the "complete" factual basis for such elements is within Rupp's exclusive possession, custody, or control or that of third parties and is the subject of GEM Products' ongoing discovery efforts, including its upcoming depositions. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only respond as to how it understands the disputed claim terms

and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein, pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies the factual allegations and statements set forth in GEM Products' First Amended Complaint and Exhibits (ECF No. 43) and its Amended Infringement Contentions, served on Rupp on July 18, 2025. Moreover, Rupp knew that it infringed the claims of the Asserted Patents due to the allegations set forth in the correspondence between Rupp and Mercier and then Rupp and GEM Products (see RUPP00287-RUPP002375).

Moreover, Rupp specifically instructs and directs its customers and end users to remove the eyebolts on Rupp outriggers, and then install in the eyebolts' locations, Rupp's accused pulley products. Rupp also instructs end users how to then rig and use Rupp outriggers with attached pulleys that would knowingly cause such end users to directly infringe the claims of the Asserted Patents (see e.g., Rupp's Rigging Instructions and Rupp's Rigging Diagrams). Rupp is also well aware and knows that when Rupp's pulley products are attached or installed on an outrigger, that such outrigger with pulleys will necessarily be used with multiple halyard lines that respectively have retention devices (e.g., outrigger release clips, fiddle blocks and/or teaser rings) that respectively define a retention point for respectively advancing lines (e.g., cast fishing line, dredge line and/or teaser line), as this is well-known how outriggers are used and intended to be used, and it is also how Rupp instructs end users to rig and use such outriggers (see Rupp's Rigging Instructions and Rupp's Rigging Diagrams (see e.g. RUPP000025-RUPP000034 and Paragraphs 41-49 of First Amended Complaint). When Rupp offers to sell and sells outriggers and pulleys as separate items (i.e., without the pulleys attached to the outrigger by Rupp), Rupp knowingly does

not sell or publicly offer for sale outriggers with the pulleys attached to such outriggers in an assumption that it would avoid infringement of the claims of the Asserted Patents.

**INTERROGATORY NO. 4:**        State, with specificity, each and every reason leading to your decision to acquire the asserted patents.

**RESPONSE:** GEM Products objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks "each and every reason" GEM Products decided to acquire the Asserted Patents. GEM Products further objects to this interrogatory as seeking irrelevant information because it is not clear how GEM Products' motivations for acquiring the Asserted Patents relates to any claim or defense at issue in this lawsuit or how such a request could possibly be reasonably calculated to lead to the discovery of admissible evidence. Thus, GEM Products also objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case for this reason. GEM Products further objects to this interrogatory because it is not limited in temporal scope. GEM Products also objects to this interrogatory because it is broad enough to encompass information protected by the attorney-client privilege, work product doctrine, and/or other privilege or immunity. GEM Products will not disclose privileged or otherwise protected information.

Subject to the General and Specific Objections contained herein, GEM Products responds as follows: in early 2023, GEM Products assessed the scope of the Asserted Patents and determined that it is pertinent to its current and future business, including outrigger products. It was GEM Products' understanding that, at that time, Mercier was not monetizing the Asserted Patents, so GEM Products asked Mercier if he would be interested in selling his rights, title and interests in and to the Asserted Patents to GEM Products.

**INTERROGATORY NO. 5:**      Identify each investigator employed by you, or by your attorneys, to gather or ascertain evidence of potential infringement of any of the Asserted Patents, by Rupp Marine.

**RESPONSE:** GEM Products objects to this request as seeking irrelevant information because it is not clear how the identity of private investigators, if any, would relate to any claim or defense at issue in this lawsuit, or how such a request could possibly be reasonably calculated to lead to the discovery of admissible evidence. GEM Products further objects to this request because it is broad enough to encompass information protected by the attorney-client privilege, work product doctrine, and/or other privilege or immunity. GEM Products further objections to the use of the term "investigator" as it is vague, confusing and ambiguous. GEM Products understands the term "investigator" to mean an independent contractor or third-party, and not an employee of GEM Products or GEM Products' counsel.

Subject to the General and Specific Objections contained herein, GEM Products has no information responsive to this Interrogatory.

**INTERROGATORY NO. 6:**      Identify each investigator employed by you, or by your attorneys, to gather or ascertain evidence of potential infringement of any of the Asserted Patents, by anyone other than Rupp Marine.

**RESPONSE:** GEM Products objects to this request as seeking irrelevant information because it is not clear how the identity of private investigators, if any, would relate to any claim or defense at issue in this lawsuit, or how such a request could possibly be reasonably calculated to lead to the discovery of admissible evidence. GEM Products further objects to this request because it is broad enough to encompass information protected by the attorney-client privilege, work product doctrine, and/or other privilege or immunity. GEM Products further objections to the use of the

term "investigator" as it is vague, confusing and ambiguous. GEM Products understands the term "investigator" to mean an independent contractor or third-party, and not an employee of GEM Products or GEM Products' counsel.

Subject to the General and Specific Objections contained herein, GEM Products has no information responsive to this Interrogatory.

**INTERROGATORY NO. 7:**        For Paragraph 40 of the First Amended Complaint, state, with specificity, all facts known to you which support Your allegations in that paragraph, including, but not limited to, all facts supporting your allegation as to Rupp's knowledge, all facts supporting your allegations as to "well-known" information, all facts related to the "certain ways" that rigging can be done, all facts related to which of the "certain ways" would cause infringement, and all facts related to other ways of rigging which would not cause infringement.

**RESPONSE:** GEM Products objects to this request as premature and overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks information that is within Rupp's sole possession, custody, or control, or that of third parties, and which will be the subject of GEM Products' upcoming depositions. GEM Products further objects to this interrogatory as premature because it seeks information that will, at least in part, be the subject of GEM Products' forthcoming expert reports, which GEM Products will serve at the proper time according to the Court's Scheduling Order.

Subject to the General and Specific Objections contained herein GEM Products responds as follows: As evidenced by Rupp's own Rigging Instructions and Rigging Diagrams, as well as the videos referenced in GEM Products' First Amended Complaint and Amended Infringement Contentions, it is well known how to rig and use outriggers. It is also well known that outriggers that use multiple halyard lines are intended and designed to be used with, and necessarily have,

respective retention devices (e.g., outrigger release clips, teaser rings and/or fiddle blocks) attached to the halyard lines that respectively define retention points for respective lines (e.g., fishing lines, teaser lines or dredge lines), wherein movement of a halyard line necessarily controls and moves a retained line. This is well known and understood to those in the art.

Pursuant to FRCP 33(d), GEM Products also incorporates by reference and identifies the factual allegations GEM Products' First Amended Complaint and Exhibits (ECF 43); Amended Infringement Contentions, served on Rupp on July 18, 2025; Rupp's Answer and Affirmative Defenses and Counterclaims (ECF No. 46); and Rupp's Motion for Judgement on the Pleadings and GEM Products' Opposition (ECF Nos. 67 and 81); which set forth non-limiting examples of Rupp's knowledge of its products, how its products are used, how end users would understand their products, and how end users would rig and use an outrigger with multiple halyard lines.

**INTERROGATORY NO. 8:**          For paragraphs 61-63 of the First Amended Complaint, state, with specificity, all facts known to you which support the allegations in those paragraphs, including but not limited to, all facts related to Your allegation that before 2017 Rupp was selling outriggers with pulley clusters attached to the outriggers, all facts related to Your allegation that Rupp stopped selling pulley clusters attached to outriggers, all facts related to Your allegation that Rupp started selling outriggers and pulleys separately "so that purchasers would have to attach the Accused Pulleys to the outriggers," and all facts related to Your allegation that Rupp made a "decision to sell outriggers with pulley clusters not attached" as an attempt to avoid infringement.

**RESPONSE:** GEM Products objects to this request as premature and overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks information that is within Rupp's sole possession, custody, or control, or that of third parties, and which will be the subject of GEM Products' upcoming depositions.

Subject to the General and Specific Objections contained herein GEM Products states that it has obtained information from end users of Rupp's products and customers of Rupp's, for example employees of Viking Yachts or Palm Beach Towers, that led GEM Products to believe and conclude that Rupp was selling outriggers with pulleys attached to such outriggers prior to 2017, and that after Rupp became aware that its sale of outriggers with pulleys attached cause issues of infringement of the Asserted Patents, Rupp then decided to sell outriggers without the pulleys attached, but still within the same order with the intent and goal that the customer or end user would install the pulleys on the outrigger, in an effort to avoid infringement of the Asserted Patents. Furthermore, as part of GEM Products' pre-suit investigation, GEM Products reviewed publicly accessible sources of information such as social media accounts and online video repositories which showed Rupp's outriggers with pulleys attached. GEM Products states that its investigation is ongoing and it believes that additional documents and testimony will be obtained which corroborates this allegation.

**INTERROGATORY NO. 9:**    For Paragraph 64 of the First Amended Complaint, state, with specificity, all facts known to you which support the allegations in that paragraph, including, but not limited to, all facts related to third parties purchasing and using the Accused Products, all facts related to third parties using the Accused Products according to "Rupp's instructions, Rigging Instructions, Rigging Diagrams," all facts related to the "intended and designed purpose" of the Accused Products, and all facts related to direct infringement by third parties of each of the Asserted Patents, specifically including how each third party practices each of the method steps required by the claims of the '778 Patent.

**RESPONSE:** GEM Products objects to this request as premature and overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks information

that is within Rupp's sole possession, custody, or control, or that of third parties, and which will be the subject of GEM Products' upcoming depositions. GEM Products further objects to this interrogatory as premature because it seeks information that will, at least in part, be the subject of GEM Products' forthcoming expert reports, which GEM Products will serve at the proper time according to the Court's Scheduling Order. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only respond as to how it understands the disputed claim terms and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein GEM Products states that it has knowledge that Rupp has sold Accused Products, thus GEM Products knows that third-parties have used Rupp's Accused Products. Furthermore, GEM Products states that it has reviewed publicly accessible sources of information such as social media accounts and online video repositories which third-parties using Rupp's Accused Products. GEM Products states that its investigation is ongoing and it believes that additional documents and testimony will be obtained which corroborates this allegation. Furthermore, GEM Products states that the allegation contained in Paragraph 64 is permitted by law, which states that  intend that that GEM Products further states that, "when instructions are provided . .. it can be circumstantially inferred that the customer follows those instructions with respect to the accused device." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1361 (Fed. Cir. 2006).

Moreover, by purchasing and/or acquiring an outrigger with pulleys and/or pulleys that are installed on outriggers from Rupp, and such pulleys are installed on such outrigger, and then rigging and using such outrigger with pulleys as it is intended and designed to be used by Rupp,

end users necessarily perform each of the steps claimed in the claims of the '778 Patent. For example, and without limitation, referring to claim 1 of the '778 Patent, such end user would necessarily: (1) establish a plurality of outrigger cords; (2) establish a plurality of cord management positions longitudinally spaced one from the other along at least a portion of the outrigger structure; (3) define at each of said cord management positions within the portion of the outrigger structure a plurality of cord passages transversely offset one from the other, said cord passages respectively guiding predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure; (5) retain said cord management positions such that the cord passages extend at fixed angular orientations relative to the outrigger structure; (6) arrange said cord management positions along the portion of the outrigger structure with consecutive cord management positions within the portion of the outrigger structure respectively guiding a progressively decreasing number of outrigger cords; and, (7) establish a plurality of retention devices, each of said retention devices coupled to one of said outrigger cords to define a retention point for advancing a line longitudinally along the outrigger structure responsive to displacement of said one of said outrigger cords.

Each of these example steps would necessarily be performed by an end user, thus knowingly causing such end user to directly infringe the claims of the '778 Patent, based, in part, on Rupp's contributing to the infringement of such end user, or otherwise knowingly inducing such end user to infringe, by, for example, manufacturing and then selling, and/or offer for sale to end users pulleys for outriggers, and/or outriggers with pulleys, and providing instructions to end users how to install and/or use pulleys on outriggers, including, for example, Rupp's Rigging Instructions, Rigging Diagrams, and instructions for installing pulleys on outriggers, knowing that such end users would then directly infringe the claims of the Asserted Patents.

Pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies the factual allegations set forth in GEM Products' Amended Infringement Contentions and First Amended Complaint and Exhibits (ECF 43).

**INTERROGATORY NO. 10:**      For each claim of the Asserted Patents that you contend Rupp infringes, describe all facts that support the basis for why GEM alleges Rupp infringes such claim of the Asserted Patents, including which section of 35 U.S.C. § 271 GEM contends is the legal basis for such infringement, including, but not limited to, how any Accused Product meets the structural limitations of any claim of the Asserted Patents and also, with respect to any assertion of indirect infringement, all facts supporting GEM's contention as to Rupp's intent, as required under 35 U.S.C. §§ 271(b) and 271(c), including:

a. For each of the Accused Products, all factual bases for your allegation that none are "staple articles of commerce";

b. For each of the Accused Products, all factual bases for your allegation that each was "especially made or especially adapted for use in an infringement";

c. For each of the Accused Products, all factual bases for your allegation that each was a "material part of the invention" claimed in each of the Asserted Patents;

d. All factual bases for Your allegation that Rupp has "actively induce[d] infringement of a patent"; and

e. All factual bases for Your allegations as to Rupp's specific intent to contribute to or induce infringement.

**RESPONSE:** GEM Products objects to this request as compound and containing multiple subparts because it contains multiple subparts that are not logically or factually subsumed within, and necessarily related to, the primary question and should be treated as separate interrogatories.

GEM Products further objects to this interrogatory as premature because it seeks information that will, at least in part, be the subject of GEM Products' forthcoming expert reports, which GEM Products will serve at the proper time according to the Court's Scheduling Order. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only respond as to how it understands the disputed claim terms and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein, pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies the factual allegations in GEM Products' First Amended Complaint and Exhibits (ECF 43), and the Exhibits included therewith, and Amended Infringement Contentions, served on Rupp on July 18, 2025.

**INTERROGATORY NO. 11:**     Identify all opinions, evaluations, analyses, or reports, whether written or oral, that You requested, received, or are aware of, regarding any of the Accused Products and any claim of any of the Asserted Patents, including the date, author(s), addressee(s), recipient(s), and whether it relates to infringement or non-infringement, whether direct or indirect, validity or invalidity, enforceability or unenforceability, or any valuation of any Asserted Patent.

**RESPONSE:** GEM Products objects to this interrogatory as seeking irrelevant information because it is not clear how, for example, reports that were requested but not received, or reports GEM Products is "aware of" but has not reviewed, is relevant to any claim or defense at issue in this lawsuit. Moreover, this interrogatory is not limited to such reports concerning matters of infringement, but instead, seemingly seeks identification of all "opinions, evaluations, analyses, [and] reports . . . regarding any of the Accused Products" in any way whatsoever. This would presumably include, for example, every internet article, social media review, etc. regarding the

Accused Products, including substantial amounts of information already in Rupp's possession, custody, or control. For this reason, GEM Products further objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. GEM Products further objects to this request because it is broad enough to encompass information protected from disclosure by the attorney-client privilege, work product doctrine, and/or other privilege or immunity.

Subject to the General and Specific Objections contained herein, GEM Products states that it has no non-privileged information responsive to this Interrogatory.

**INTERROGATORY NO. 12:** For each of the Asserted Claims, describe the earliest effective filing date for each such claim, and all facts supporting the basis of any contention that such claim is entitled to the benefit of a filing date that is earlier than the actual filing date of such claim, including, but not limited to all passages, by column and line, of any earlier-filed patent or earlier-filed patent application to which You contend such claim is entitled to claim the benefit of the filing date.

**RESPONSE:** GEM Products objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks "all facts supporting the basis of any contention" that each Asserted Claim is entitled to its claimed priority date, and is not limited to, for example, facts GEM Products intends to rely upon to support its claims. GEM Products further objects to this request because it seeks to shift Rupp's burden onto GEM Products, as the Asserted Patents are entitled to a statutory presumption of validity and it is Rupp's burden to establish that the Asserted Patents are not entitled to their claimed priority dates, if that is a contention Rupp is advancing in this litigation. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only

respond as to how it understands the disputed claim terms and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein, pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies each of the specifications and prosecution histories of the Asserted Patents. GEM Products further states that the earliest effective filing dates for each of the Asserted Patents is March 18, 2010. This is based on the application filing date of March 18, 2010 for U.S. Patent No. 8,656,632. U.S. Patent No. 9,392,778 is a division of application No. 12/726,6955, filed on March 18, 2010, which matured into U.S. Patent No. 8,656,632. U.S. Patent No. 9,717,226 is a continuation of application No. 12/726,6955, filed on March 18, 2010, which matured into U.S. Patent No. 8,656,632. U.S. Patent No. 11,589,566 is a continuation of application No. 12/726,6955, filed on March 18, 2010, which matured into U.S. Patent No. 8,656,632. Accordingly, each of the Asserted Patents are entitled to a filing date of March 18, 2010, pursuant to 35 USC §120. The written description contained in U.S. Patent No. 8,656,632, including the specification and drawings, sufficiently informs a person having ordinary skill in the art that the inventor was in possession of the subject matter of each claim of the Asserted Patents at least as early as March 18, 2010. For example, and without limitation, FIGs. 3 and 3A of the Asserted Patents' specifications clearly support the claim term "fixed angular orientation relative to the outrigger structure."

**INTERROGATORY NO. 13:**        For each of Paragraphs 41, 45, 47, 49 in the First Amended Complaint and Paragraphs 121-128 in the Counterclaims to the First Amended Complaint, describe all facts that form the basis for your contention that the rigging diagram shown in such Paragraph causes infringement of any of the Asserted Claims, including, but not limited to, facts

sufficient to show outriggers have been used as depicted in such Paragraphs, the identity of the Person(s) that actually used outriggers in such a way, and the date(s) of such use, whether such use included a pulley on the outrigger or eyelets on the outrigger, and how diagrams which do not show any pulleys attached to an outrigger can cause infringement under any theory of infringement.

**RESPONSE:** GEM Products objects to this request as premature and overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks information that is within Rupp's sole possession, custody, or control, or that of third parties, and which will be the subject of GEM Products' upcoming depositions. GEM Products further objects to this interrogatory as premature because it seeks information that will, at least in part, be the subject of GEM Products' forthcoming expert reports, which GEM Products will serve at the proper time according to the Court's Scheduling Order. GEM Products further objects to this Interrogatory in that it is seeking information relating to the allegations of Paragraphs 121-128 in the Counterclaims to the First Amended Complaint, which are not GEM Products' allegations, but rather Rupp's. Accordingly, GEM Products has no responsive information relating to Paragraphs 121-128 in the Counterclaims to the First Amended Complaint. GEM Products further objects to this request as compound and containing multiple subparts because it contains multiple subparts that are not logically or factually subsumed within, and necessarily related to, the primary question and should be treated as separate interrogatories. GEM Products further objects to this Interrogatory in that the Court has not yet issued any claim construction. Accordingly, GEM Products can only respond as to how it understands the disputed claim terms and phrases, and that the Court's construction of any terms or phrases of the Asserted Patents may require amendment or supplementation of GEM Products' response.

Subject to the General and Specific Objections contained herein GEM Products responds as follows: each of Paragraphs 41, 45, 47, 49 in the First Amended Complaint include instructions conveyed by Rupp to end users for using an outrigger with multiple halyard lines that respectively include retention devices (e.g., outrigger release clip, fiddle block, or teaser ring (aka stainless ring)) that respective define retention points for respectively advancing lines (e.g., fishing lines, dredge lines or teaser lines) longitudinally along the outrigger when such halyard lines are moved. Moreover, Rupp provides explicit instructions to end users to remove eyebolts on outriggers and replace such eyebolts with Rupp's pulleys.

Pursuant to FRCP 33(d), GEM Products further incorporates by reference and identifies GEM Products' Amended Infringement Contentions, served on Rupp on July 18, 2025 and First Amended Complaint and Exhibits (ECF 43), which references videos and photos which shows use of such outriggers in manners depicted in the Rigging Diagrams.

**INTERROGATORY NO. 14:**     Describe Your basis of the state of art and a person with ordinary skill in the art, that existed in March 18, 2010, including, without limitation, the identification of the field of art and a description of the specific qualifications (e.g., level of technical knowledge, schooling, experience, training, and expertise) that you contend such person of ordinary skill in such art must have.

**RESPONSE:**

GEM Products states that a person having ordinary skill in the art ("POSITA") is any one of: (a) a fishing boat captain or mate that has at least 3-5 years of experience with outriggers; (b) an individual in the marine or fishing industry having 5 years of experience with outriggers; or (c) an engineer or designer with at least 3 years of designing outrigger systems.

**INTERROGATORY NO. 15:**     For each Covered Product sold by GEM, including outriggers and products sold with or attached to an outrigger, identify each other product or service that GEM sold with such Covered Product, including, but not limited to, outrigger base adapter(s), halyard line retainer(s), rigging kit(s), and release clips, and, for each Covered Product and each other product identified, identify the total number of units sold, total sales amount in US dollar value, gross and net revenue, gross and net income, and the gross and net profit margins, as computed by GEM, and the date and location of each sale of sales, the identity of the Person(s) that purchased such product.

**RESPONSE:** GEM Products objects to this interrogatory as seeking irrelevant information because it is not clear how GEM Products' own products and sales information relates to any claim or defense at issue in this lawsuit, since GEM Products is not accused of infringement and is not seeking damages in the form of lost profits. Even further, it is not clear how the identity of individuals who purchased GEM Products' products—of any form—is relevant or could possibly be reasonably calculated to lead to the discovery of admissible evidence. Moreover, the information sought has no bearing on the consideration of damages being sought in this case. For example, GEM Products is seeking, in part, damages in the form of a reasonable royalty under 35 USC 284, and the information sought has no relevancy to any of the *Georgia-Pacific* factors. GEM Products therefore also objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case for the same reasons. GEM Products further objects to this interrogatory as vague and ambiguous because it is unclear what "sale of sales" means. GEM Products interprets this phrase to be a typographical error for "sale or sales," but if this interpretation is incorrect, GEM Products is willing to meet and confer regarding the proper interpretation.

Subject to the General and Specific Objections contained herein, pursuant to FRCP 33(d), GEM Products incorporates by reference and identifies GEM0004916.

**INTERROGATORY NO. 16:**    For each Covered Product sold by GEM, including outriggers and products sold with or attached to an outrigger, describe all facts supporting GEM's compliance with the marking requirement contained in 35 U.S.C. § 287(a), including, but not limited to, describing all physical markings on any Covered Product, including any marking of the word "patent" or the abbreviation "pat." together with the number of any patent, or the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet that associates the patented article with the number of the patent, the date that such compliance occurred, and the date of first sale for such Covered Product.

**RESPONSE:** GEM Products objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it is not limited in geographic scope to products sold, offered for sale, or imported into the United States.

Pursuant to the Parties agreement, this Interrogatory has been withdrawn.

**INTERROGATORY NO. 17:**    For each "Accused Product," describe all facts supporting Your contention as to the earliest date for which patent infringement damages for sales of such product is permissible under 35 U.S.C. § 287(a).

GEM Products objects to this interrogatory as overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case because it seeks "all facts" and is not limited to those facts upon which GEM Products intends to rely to prove its claims. GEM Products further objects to this Interrogatory in that it incorrectly seeks information for patent damages for sales of product is permissible under 35 U.S.C. § 287(a), but fails to consider the time limitation for damages under 35 U.S.C. § 286. GEM Products objects in that it is not seeking patent infringement damages for

sales of product permissible under 35 U.S.C. § 287(a), as 35 U.S.C. § 286 limits damages to only 6 years before the filing of the complaint, which in this case is February 6, 2025. Accordingly, GEM Products is only seeking damages from February 6, 2019 until present, pursuant to 35 U.S.C. § 286. GEM Products further objects to this Interrogatory to the extent is assuming requirements not required by law. For example, "[t]he notice provisions of § 287 do not apply to patents directed to processes or methods." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (*citing Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 395, 56 S.Ct. 528, 80 L.Ed. 736 (1936)). Accordingly, actual notice under 35 U.S.C. § 287(a) for damages for the '778 Patent, being a patent directed to a method, is not required. Moreover, "[n]or do [the notice requirements under 35 U.S.C. § 287(a)] apply when a patentee never makes or sells a patented article. Thus, a patentee who never makes or sells a patented article may recover damages even absent notice to an alleged infringer." *Id.* (internal cites omitted). As Rupp readily admits, "[i]t is noted that Mercier *did not manufacture product*, was unknown in the industry and, frankly, was considered a patent troll." (Michael Slavin October 1, 2024 letter to Joseph Lanser). Accordingly, actual notice under 35 U.S.C. § 287(a) is not required for GEM Products to collect damages. Nonetheless, to the extent that Rupp is asking when actual notice in compliance with 35 U.S.C. § 287(a) was still achieved, GEM Products responds as follows:

Regarding the '632 Patent, actual notice in compliance with 35 U.S.C. § 287(a) was completed, in part, by way of numerous communications between Mr. Craig Mercier and Rupp, starting at least as early as 2014. For example, in May 2015, Mr. Mercier provided to Rupp a draft license agreement identifying the '632 Patent (as that was the only Asserted Patent which existed at that time), identifying certain products sold by Rupp that would cause Rupp to infringe the claims of the '632 Patent without a license. Based on the correspondence between the parties

(RUPP002287-RUPP0023672 and Michael Slavin's October 1, 2025 letter to Joseph Lanser), it is clear that Mercier conveyed to Rupp, and Rupp was clearly aware of, the existence of the '632 Patent and which of Rupp's products that formed the basis of Mercier's infringement allegations.

Regarding the '778 and '226 Patents (and also for the '632 Patent), the November 1 and 3, 2017 communications between Mr. Brian Gilchrist and Mr. Michael Slavin provide compliance with actual notice under 35 U.S.C. § 287(a) For example, in Mr. Slavin's letter of November 3, 2017, he stated, in part:

- "The Reexamination Certificate illustrates that the claims of the '632 Patent were narrowed to include 'a housing secured by at least one fastener against displacement relative to the outrigger structure.' Rupp follows the teachings of Malin, and *the housings used by Rupp are displaceable relative to the outrigger structure.*" (emphasis added)

- "Regarding Patents 9,392,779 and 9,717,225 [sic],both Patents include the limitation of a 'fixed angular orientation housing.' Rupp's housing is not a fixed angular orientation, Rupp's housings pivot on a polyaxial connection."

- "In light of the above, we are perplexed as to what aspect of the claim the Rupp device infringes."

Then, in Michael Slavin's October 1, 2024 letter to Joseph Lanser, Mr. Slavin stated "We responded to Mercier's previous counsel (Rosenberg, Klein & Lee) in 2016 and later counsel (Allen, Dyer, Doppelt & Gilchrist) in 2017. Attached is a copy of my reply dated November 3, 2017 regarding US Patent Nos. 8.656,632; 9,392,778; and 9,717,226, which also references the Reexam for the '632 patent.  Nine years from the original cease and desist letter, and seven years from the last *immediate* cease and desist letter, no claim chart or follow-up letter has ever been sent."  Mr. Slavin further stated "Post Reexam, Rupp received a cease and desist letter

and requested a representative claim chart to address the infringement claims when Rupp could not understand the basis," "Rupp's action in reliance on Mercier's conduct was to continue manufacturing product."

These statements were made in response to Mr. Gilchrist's clear infringement allegations in his November 1, 2017 letter. Accordingly, Mr. Slavin's responsive November 3, 2017 letter is clear evidence that Rupp had actual notice, as required by 35 USC § 287(a). While neither Mr. Gilchrist's nor Mr. Slavin's letters specifically reference Rupp's products (e.g., CA-0145 and CA-0146), it is obvious and clear from Mr. Slavin's November 3, 2017 responsive letter that Rupp knew which of Rupp products were alleged to cause Rupp to infringe the claims of the '632, '778 and '226 Patents, as Mr. Slavin attempted to specifically distinguish "Rupp's housing(s)" and "Rupp's device" from the claims of those Patents. Therefore, a stipulation between the Parties that Rupp had actual notice under 35 USC § 287(a) as of at least November 1, 2017 with regard to the '632, '778, and '226 Patents, is appropriate and can avoid unnecessary expenditure of time and resources. It is clear that based, in part, on these communications, it was communicated at some point to Rupp the identification of the Asserted Patents and the products that cause Rupp to infringe, in compliance with 35 USC § 287(a).

Regarding the '566 Patent (and also for the '632, '778 and '226 Patents), Joseph Lanser's September 25, 2025 letter to Scott Rupp (RUPP002371-002372) again asserts patent infringement against Rupp and identifies the products that cause Rupp to infringe, in compliance with 35 USC § 287(a).

Dated: August 18, 2025                    Respectfully submitted by:

By: */s/ Joseph R. Lanser*

**TAFT STETTINIUS & HOLLISTER LLP**

Joseph R. Lanser (lead attorney) (*pro hac*)
111 E. Wacker Drive, Suite 2600
Chicago, IL  60601
Telephone:  (312) 527-4000
Email:  jlanser@taftlaw.com

Charles Pfister (*pro hac*)
cpfister@taftlaw.com
40 North Main Street, Suite 1700
Dayton, OH 45423-1029
Telephone: (937) 641-2071

Alex M. Matthews (*pro hac*)
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Email: amatthews@taftlaw.com

William K. Broman (*pro hac*)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Telephone: (248) 727-1571
wbroman@taftlaw.com

Gregory S. Weiss
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
561-655-2250
Email: gweiss@taftlaw.com

***Attorneys for Plaintiff, GEM Products, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph R. Lanser, an attorney, certify that I caused the foregoing to be served on all

counsel of record via email on August 18, 2025.  Counsel of record for Defendant includes:

Andrew D. Lockton (Fl. Bar No. 115519)
alockton@mchaleslavin.com
Edward F. McHale (Fl. Bar No. 190300)
emchale@mchaleslavin.com
McHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, FL  33410
Telephone:    (561) 625-6575
Facsimile:     (561) 625-6572

*/s/ Joseph R. Lanser*

## VERIFICATION

Pursuant to FRCP 33(a)(5), I, Jason Sarnowski, being the Director of Innovation & Supply Chain of GEM Products, LLC, believe, based on a reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing statement is true and correct.

8-18-2025
Dated

Signature