

September 26, 2025

*Via Email*
William K. Broman
Taft Stettinius & Hollister LLP
wbroman@taftlaw.com

      Re:    GEM Products v. Rupp Marine

Counsel:

      We're in receipt of your September 24, 2025 letter addressing Rupp Marine's documents Bates Nos. RUPP003950-003989, produced to you on September 22 and 23, 2025. It is acknowledged that documents RUPP003953-003954 and RUPP003973-003974 may be responsive to GEM Products' RFP No. 39, and not previously produced; though Rupp Marine did previously produce documents Bates Nos. RUPP002403-002406, which provided fully exploded views of all parts comprising the "Accused Pulleys" identified in paragraph 33 of the First Amended Complaint. The remaining documents (RUPP003950-3952; RUPP003955-003972; and RUPP003975-03984) would not fall within the definition of "Outrigger Pulley Assembly", as they are drawings of existing parts of other products sold by Rupp, later duplicated within an Accused Pulley, e.g., RUPP003958.

      As to RFP No. 56, Rupp Marine previously produced its engineering drawing and schematics as Bates Nos. RUPP2070–RUPP002241 and Rupp002403–RUPP002406, which includes documents Bates Nos. RUPP002189–RUPP002190, RUPP002194 and RUPP002403–RUPP002406 and produced documents Bates Nos. RUPP003378–RUPP003385 addressing concepts Rupp has considered. The recent additional documents, Bates Nos. RUPP003985–RUPP003989, are 3-D step files which portray the same Accused Pulleys sold by Rupp Marine, which is redundant of the documents and physical samples already produced.

      On page one of your letter, you assert that ". . . Rupp's delay in producing these documents . . . has significantly harmed GEM Products . . .". Your letter, however, only notes that GEM Products was unable to take deposition testimony about the documents. It does not further identify or explain what this significant harm is. And GEM was fully able to question the relevant witnesses about Rupp's design of its products, the physical characteristics of the products, the dates of any modifications, etc.

      Your letter also says that GEM was precluded from analyzing and comprehending the significance of such documents and their potential use in expert reports, but the unremarkable nature of the documents, in relation to what had already been produced, leaves us with no idea what would preclude such analysis and comprehension. For example, the additional documents identify the material as aluminum or Delrin and show dimensions – matter which has no

William K. Broman
September 26, 2025
Page 2

relevance to any part of the case. Further, GEM's expert should have considered the *actual products* offered for sale and sold by Rupp, as only Rupp's *actual* products are relevant to this case. The dates provided on the documents do not contradict any known testimony. Given the relationship and overlap between the documents Rupp Marine previously produced, the physical samples Rupp produced, and the documents made the subject of your letter (in particular, the smaller set of documents seen as further responsive to RFP 39), obtaining a further understanding, as to the significance of the documents, vis-à-vis GEM's request for additional discovery would be helpful.

The remainder of your letter is not helpful, and only serves to carry on GEM's litigation tactic of unfounded accusations against Rupp Marine and its counsel.[1] It appears likely that your letter is designed more to obscure GEM Products' lack of any pre-filing investigation before bringing this action than it is to address any actual issue in this case. This includes GEM's failure to actually obtain and examine ***any*** of the accused pulleys identified in paragraph 33 of the First Amended Complaint prior to July, 2025. Fed. R. Civ. P. 11 imposes a clear obligation, as does corresponding Federal Circuit precedent, to conduct an adequate pre-filing investigation before bringing claims for patent infringement. Even the most rudimentary investigation would have had GEM Products, or its counsel, purchase the Accused Pulleys directly from Rupp Marine's website prior to instituting this action. Had that occurred, the presence of the swivel attachment on the Accused Pulley Clusters would have been immediately seen.

GEM's utter avoidance of that obligation is all the more serious in light of the testimony of Joe Glonek, of Palm Beach Towers, which makes it clear that well before the instant action was filed he had a focused discussion with GEM's CEO, Matthew Bridgewater, in which he specifically identified the presence of the articulating swivel on Rupp Marine's pulley clusters.[2] During that same conversation, Bridgewater also addressed GEM Products' ownership of the patents asserted in this action. Curiously, GEM Products amended its response to Defendant's Interrogatory No. 8 to expressly acknowledge Mr. Glonek's testimony as to this fact, following completely different, earlier testimony from Bridgewater.

While we are open to discussing GEM's genuine need for additional, focused discovery, during our meet and confer but if discovery is to be re-opened it is also necessary to discuss, during the same meet and confer, the clear fact that GEM Products did not fully respond to Rupp Marine's RFP Nos. 23 and 24. Those Requests sought specified financial information related to "each 'Covered Product' sold by GEM", and were responded to by referring to the document Bates No. GEM0004916. That document is the extensive spreadsheet specially prepared by GEM's Director of Intellectual Property, Jason Sarnowsky. Mr. Sarnowsky, as GEM Products'

---

[1] Accusations made both before and since your September 24th letter, and occurring immediately before the September 26th deadline for providing expert reports. These have required response letters, meet and confers, and responses to motions on short deadlines.

[2] We also note that Mr. Glonek confirmed that GEM Products was aware—before this action was filed—that Rupp had always sold its pulley products separately from its outriggers and had always delivered them separately to the New Jersey facility of Palm Beach Towers, further contradicting GEM Products' allegations, and its sworn discovery responses.

William K. Broman
September 26, 2025
Page 3

corporate designee, testified on September 12th that in formatting the spreadsheet, **he did not include** standalone outrigger pulleys, having multiple rollers, which are sold by GEM Products.[3]

These GEM outrigger pulleys are offered for sale on its website, referenced through product numbers IR-DK-22, IR-DK-18, IR-DK-12, IR-DK-27, and IR-HK-17.  Since the definition for "Covered Products" in Rupp Marine's 2nd Request for Documents clearly included those products, it would appear that GEM purposely withheld that information from the spreadsheet it prepared for this case, in aid of its damages theory, i.e., that products comprising *outriggers with pulleys* form the appropriate royalty base for calculating damages.  Because Rupp Marine only sells pulleys *separately* from outriggers (a fact confirmed by employees of third party Palm Beach Towers), the intentional omission of that information from GEM's spreadsheet is quite important.  Because it was omitted, our expert presently lacks important information for his report.  This was either a material omission to bolster GEM's theory of the case, or an admission that pulleys alone are not an infringing product.

We will need to have all such information right away if discovery is to be re-opened.

Sincerely,

**McHALE & SLAVIN, P.A.**

*/s/Edward F. McHale*

Edward F. McHale

EFM/ac

cc: Charles Pfister - cpfister@taftlaw.com
    Gregory S. Weiss - gweiss@taftlaw.com
                    psymons@taftlaw.com
    Alex M. Matthews - amatthews@taftlaw.com
    Joseph Lanser – jlanser@taftlaw.com
    Jaiman Hemendra Shah – jshah@taftlaw.com

---

[3] The 30(b)(6) deposition of GEM Products became possible only on September 12th, the final day of fact discovery under the Court's Scheduling Order.  While not the desire of Rupp Marine, this date was forced upon it by the actions of GEM's counsel, in changing, on two different occasions, the scheduled dates for the deposition of Rupp Marine's principals and its 30(b)(6) deposition.  GEM finally set those depositions for September 9th, 10th and 11th, while scheduling the depositions of other witnesses shortly beforehand.