**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

GEM Products, LLC,

        Plaintiff/Counter-Defendant,

        v.

Rupp Marine, Inc.

        Defendant/Counter-Plaintiff.

Case No. 2:25-cv-14047-DMM

**GEM PRODUCTS, LLC'S MOTION FOR RECONSIDERATION**
**OF ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

GEM Products, LLC ("GEM"), respectfully moves under FRCP 60 for reconsideration of the Court's *Order on Cross Motions for Summary Judgment*, dated February 5, 2026 (ECF No. 211) ("Order").

In granting summary judgment of noninfringement in Rupp's favor, the Court relied solely on unsupported conclusions and opinions set forth in the Karpanty Declaration, Rupp's Vice President, but did not address the substantial factual and expert evidence GEM cited in opposition to Rupp's Motion for Summary Judgment (ECF Nos. 164, 169) or in support of GEM's own Motion for Summary Judgment (ECF Nos. 150, 151, 175, 176). GEM moves for reconsideration not because it disagrees with the Court's ruling, but because GEM's evidence and arguments were not understood or misapprehended. The evidence, at minimum, raises genuine disputes of material fact that preclude summary judgment. Finally, the Court did not address binding Federal Circuit precedent concerning claim construction and substantial noninfringing uses. While admittedly rare, reconsideration is warranted here.

## I.    LEGAL STANDARD

Motions to reconsider seek to correct and avoid, "manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations omitted). Reconsideration is also proper when clear error has been shown or to correct manifest injustice. *See* Fed. R. Civ. P. 59, 60; *Sexton v. Carnival Corp.*, No. 20-cv-20990, 2021 WL 3006916, at *1 (S.D. Fla. July 15, 2021). "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) ***the need to correct clear error or***

1

*manifest injustice*." *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 458 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007)(emphasis added).

A court's failure to consider or appreciate argument or facts raised by a nonmovant may constitute clear error and manifest injustice warranting reconsideration. *See e.g., Wallace v. Georgia Dep't of Transp.*, No. 2006 WL 1431589, at *7 (M.D. Ga. May 23, 2006)(acknowledging clear error for failing to consider an argument on a motion for summary judgment and granting reconsideration to consider such argument). "The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted).

Courts routinely grant reconsideration when issues were missed or not understood. *See, e.g.*, *Kapila v. Grant Thornton, LLP*, No. 14-61194-CIV, 2017 WL 3638199, at *2 (S.D. Fla. Aug. 23, 2017) (granting reconsideration where court failed to address argument raised in original briefing). Reconsideration is also appropriate when material issues were inadvertently disregarded or not considered. *See Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, No. 6:18-cv-1088-Orl-31DCI, 2020 WL 3265972, at *2 (M.D. Fla. Apr. 27, 2020); *see also Wallace*, 2006 WL 1431589, at *7. In *Coast Citrus Distributors, Inc. v. M/V CSAV Hamburgo*, this Court granted reconsideration of a summary judgment order. No. 09-60428-CIV, 2010 WL 11504830, at *1 (S.D. Fla. May 31, 2010). The Court noted that while motions to reconsider are not granted simply because a litigant disagrees with the prior ruling, "a motion to reconsider is appropriate where a court has misunderstood a party or failed to consider an issue." *Id.*

"Summary judgment is appropriate *only* when the evidence before the court demonstrates that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Morejon v. DSW Shoe Warehouse, Inc.*, No. 24-CV-22282-EAL, 2025 U.S. Dist. LEXIS 273416, at *3 (S.D. Fla. Oct. 20, 2025) (*quoting* Fed. R. Civ. P. 56(c))(emphasis added). "In other words, summary judgment may only be granted when no '"reasonable jury could return a verdict for the nonmoving party.'" *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Thus, summary judgment "is improper if a reasonable jury *could find for the nonmoving party*." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020)(emphasis

added).   For purposes of summary judgment, "courts ***must*** construe the facts and draw ***all inferences*** in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [a court must] credit the nonmoving party's version." *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) (emphasis added) (quotations omitted).

## II.   ARGUMENT

The Order granting Rupp summary judgment of noninfringement contains clear error and effects manifest injustice. The Order is premised on Rupp's pulleys having *loose stems* that purportedly allow movement—but Rupp *admitted* it does not sell such a product. The Order overlooks substantial factual evidence that Rupp markets and sells pulleys having: (1) *tight stems* that allow no movement do not move; and, (2) no stems at all. In addition, Federal Circuit law requires the Court to first properly construe the claims before a noninfringement analysis. Finally, the Order relied on a single factual source—an improper declaration from Mr. Karpanty, Rupp's Vice President, providing impermissible expert opinion and unsupported factual assertions. GEM's misapprehended substantial evidence, by itself, precluded summary judgment in Rupp's favor. Each of these reasons, standing alone, is sufficient to warrant reconsideration.

### A.  Rupp's Accused Products

In concluding Rupp's pulleys do not infringe, the Order found, "[t]he way Defendant's pulleys move is significant." (Order, p. 10). The Order misapprehended substantial evidence that Rupp sells at least two *additional* versions of Accused Products that undisputably have no movement[1]: (1) pulleys *without any stem* that attach directly to outrigger poles; and, (2) pulleys with a *tight stem* that does not allow movement. *See* e.*g.,* ECF No. 164-1 ¶¶ 1-3 (including extensive materials cited therein), at ECF Page 10; ECF No. 151 ¶¶ 22-25 (including extensive materials cited therein), at ECF Page No. 6.[2] GEM's technical expert provided substantial evidence these two versions meet the limitations of the claims and cause direct infringement by end-users.

---

[1] Rupp introduced these multiple versions of the Accused Products in this case, not GEM.

[2] Rupp asserts there is a version where a ball joint is loose and free to swivel, like the one the Court examined during the January 6, 2026 hearing, but Rupp's counsel admitted the stem was loose because he played with it for months, and that is not how Rupp ships it. Ex. A (MSJ Hg. Tr.) at 43:18–19 (admitting the stem was loosened on Rupp's demonstrative, unpackaged pulley); 44:1–5 (same). Rupp has no evidence it sold a pulley with a loose stem, or that it instructs its customers to loosen the stems. SMF ¶ 24. Rupp's counsel attempted to explain this with unsupported conjecture. *Id.* 43:19–21. GEM's expert evidence showed no end user would actually loosen the stem, as it would hurt usability. ECF 151-5 ¶¶ 101, 107.

*E.g.,* ECF No. 151-5 ¶¶ 102–03. Indeed, the Order does not reference any fact or evidence cited by GEM, including factual documentary evidence and expert and third party testimony. *Id.*

First, GEM produced substantial evidence Rupp markets and sells pulleys <u>*without*</u> any stems, which are directly attached to Rupp's outriggers, including in Rupp's catalogues and social media postings . *E.g.,* ECF No. 164-1 ¶ 1, at ECF Page No. 10; ECF No. 151-8, at ECF Page Nos. 3, 6, 33–36, 39–52 of 53; ECF No. 151-6 at 12 of 25; *see also* Jan. 6 Hg. PowerPoint Presentation ("Presentation," attached as Ex. B), at Slide Nos. 5-11 (highlighting Rupp's marketing materials, and additional emails and websites recently found after close of briefing); Transcript of the January 7, 2026 Hearing ("Transcript," attached as Ex. A), at 24:18 – 25:10, 28:15 – 29:4, 44:6-12. Rupp's sole contradiction to this evidence was unsupported attorney conjecture that such stemless pulleys must have been a mistake. *Id*, 42:15-43:1.

GEM also produced substantial evidence, including expert evidence, that Rupp's stemless pulleys meet the limitations of the Asserted Claims and cause infringement. *E.g.*, ECF No. 151-5, ¶¶ 94,-99. Rupp never provided any noninfringement argument about its pulleys without stems. This unrebutted factual and expert evidence - not acknowledged in the Order - establishes a genuine dispute of material fact, including whether Rupp sells these pulleys without stems, or whether such pulleys cause infringement. *See, e.g.*, *Kapila*, 2017 WL 3638199, at *2 (granting reconsideration where the court failed to address argument and evidence raised in original briefing); *Westgate Resorts*, 2020 WL 3265972, at *2 (reconsidering FDUTPA claim after overlooking relevant conduct and a request for injunctive relief).

Second, with respect to Rupp's Accused Pulleys *that have stems*, GEM presented evidence Rupp sells the Accused Pulleys with the stem so tightly attached that no movement is allowed. *E.g.*, ECF No. 164-1 ¶¶ 2-5, at ECF Page No. 10. For example, GEM produced unrebutted expert evidence the pulleys Rupp sells with stems are tight and meet the limitations of the Asserted Claims, whether literally or under the Doctrine of Equivalents. *E.g.*, 151-5 ¶¶ 92-94, 100-107. In fact, holding Rupp's pulleys with tight stems do not infringe would impermissibly read an expressly disclosed embodiment in the patents out of the scope of the claims, as FIGs. 3 and 3A of the Asserted Patents contemplate as part of the claimed inventions pulleys with stems, just like Rupp's. ECF No. 43-1, at ECF Page Nos. 6-7 (FIG. 3 and 3A). *See Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (reading patent claims as excluding embodiments disclosed in patent specification "is rarely, if ever, correct and would require highly

persuasive evidentiary support.").

Finally, regarding Rupp's clamp pulleys, GEM again produced substantial evidence of infringement. For example, GEM's technical expert opined that, despite having a peg traveling in an arcuate channel, the clamp pulleys still directly meet the claim limitations as they remain in a "fixed angular orientation" and are not displaceable relative to the outrigger pole. *E.g.*, ECF No. 151-5, ¶ 91. GEM's expert also provided detailed infringement charts demonstrating how the clamp pulleys meet the claim limitations. *Id.*, at ECF Page Nos. 93-778, *passim*.

The fact Rupp elected not to use its technical expert in support of its own noninfringement arguments is telling. Instead, Rupp only offered inadmissible and improper "expert" testimony from Karpanty, Rupp's Vice President. Yet, Karpanty admitted he is not qualified as an expert to opine on such issues (ECF No. 164-1 ¶ 24, at ECF Page No. 12), and multiple Eleventh Circuit and Federal Circuit cases compel striking his improper declaration from the record. ECF No. 164, at ECF Page Nos. 9-13. *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020) (finding "conclusory affidavits lack probative value"); *Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1299 (S.D. Fla. 2021) ("[O]ne cannot oppose summary judgment with a self-serving, conclusory affidavit that fails to set forth specific facts to show why there is an issue for trial….").

Thus, granting Rupp summary judgment of noninfringement constituted clear error and effected a manifest injustice against GEM, warranting reconsideration. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343.

## B. The Court Did Not Conduct Any Claim Construction

An infringement analysis necessarily begins with properly construing the patents' claims. *See Mars, Inc. v. H.J. Heinz Co.,* 377 F.3d 1369, 1373 (Fed. Cir. 2004) ("Determination of patent infringement *requires* a two-step analysis: (1) *the scope of the claims must be construed;* (2) the allegedly infringing device must be compared to the construed claims." (emphasis added)); *see also Baron Servs., Inc. v. Media Weather Innovs. LLC*, 717 F.3d 907, 914 n.13 (Fed. Cir. 2013) ("A determination of patent infringement, *even on summary judgment, requires* a two-step analysis, the first of which is claim construction… Without construing relevant claim terms, however, the import of [the evidence]—and the propriety of the parties' positions on infringement—cannot be reasonably determined with an appropriate level of clarity.") (emphasis added)). Failure to construe the claims before an infringement analysis, even on summary judgment, is reversible, clear error. *See Baron Servs., Inc. v. Media Weather Innovs. LLC*, 717

F.3d 907, 914 n.13 (Fed. Cir. 2013). It is thus clear error to conclude noninfringement without *any* proper claim construction.

*Rupp* asserted twenty-six claim terms and phrases require construction, including the purported phrase pertaining to "fixed angular orientation" highlighted by the Order to find noninfringement. ECF No. 59 at 16. Yet, the Order did not provide the claim construction analysis applied for its findings. While the Order appears to assume some claim construction, that construction is unclear and undisclosed.[3] The Order also focuses on "movement" of the Accused Pulleys to find noninfringement, but neither "move" nor "movement" appear in any of the Asserted Claims. Order at 11. There must have been some construction to import such a requirement.

The Order further concludes the patentee, "disclaimed movement of the kind the Defendant pulleys allow." Order at 11. The Order seemingly applied some sort of a pseudo construction without the Federal Circuit's mandated claim construction process, and then relied on that pseudo construction to find *disclaimer of claim scope*—a finding which requires one of the highest evidentiary standards and analyses in patent law. *E.g., Voda v. Cordis Corp.*, 536 F.3d 1311, 1321 (Fed. Cir. 2008) ("In order to disavow claim scope during prosecution, a patent ***applicant must clearly and unambiguously express surrender of subject matter***.") (cleaned up) (emphasis added)). Yet, the Order does not identify where there was ever any "clearly and unambiguously express[ed] surrender of [*any*] subject matter." *Id.* The Order also ignored specific embodiments disclosed in the Asserted Patents' Specifications that are substantially identical to Rupp's Accused Pulleys with stems, and, to find noninfringement, reads the claims to not cover those expressly disclosed embodiments. *See* ECF No. 43-1, at ECF Page Nos. 6-7 (FIG. 3 and 3A) (depicting embodiments of the claimed invention with stems substantially identical to Rupp's pulleys with tight stems); *see also Vitronics*, 90 F.3d at 1583 (reading patent claims as excluding embodiments disclosed in patent specification "is rarely, if ever, correct and would require highly persuasive evidentiary support.").

### C. The Court's Reliance On The Karpanty Declaration Was Legally Improper

Despite the extensive factual and expert evidentiary record, the sole "factual" material cited in the Order was the Karpanty Declaration, overlooking Eleventh and Federal Circuit precedent that compelled striking his declaration. *See e.g.* ECF No. 164, at ECF Page Nos. 9-13. The Order

---

[3] As Rupp admits "[d]id the Court construe patent claim terms? No… It is equally clear there was no claim construction ruling…" ECF No. 213, at ECF Page No. 2.

relies on the Karpanty Declaration by stating GEM, "provides no factual opposition to Mr. Karpanty's description of Rupp Marine's products or the accompanying engineering plans, photographs and website materials." Order at 3, n. 1. This overlooks or misapprehends GEM's substantial, *direct rebuttal* record evidence to the Karpanty Declaration, including:

| Order/Karpanty Statement | GEM's Evidence Disputing Facts |
|---|---|
| "Defendant sells outrigger and pulley products separately. … [T]he company does not offer for sale or sell any outrigger with pulleys pre-installed." Order at 6 (citing Karpanty Decl. ¶¶26-28) | ECF No. 164-1 (SAF) ¶ 6; ECF No. 151, ¶ 39; ECF 151-8 at ECF Page Nos. 3, 6-7, 33-36, 39-52 (Rupp's social media posts) |
| "When attached to an outrigger, the pulley housing, sheaves, and cord-routing openings move relative to the outrigger in response to halyard-line tension." Order at 5 (citing *inter alia* Karpanty Decl. ¶ 15) | ECF No. 164-1 (SAF) ¶¶ 1-5 |
| "None of Defendant's accused pulley products have a housing that attaches directly to an outrigger with at least one fastener, and none contain a housing that forms the 'cord passage' on the outer side of the pulley wheel or on the side opposite the outrigger as claimed in the asserted patents." Order at 6 (citing Karpanty Decl. ¶¶ 20, 24-25) | ECF No. 164-1 ¶¶ 1, 5, at ECF Page No. 10; ECF No. 151 ¶¶ 19-22; ECF 151-8 at ECF Page Nos. 3, 6–7, 33–36, 39–52 |
| "Defendant market the accused Pulley Clusters as components that may be used 'in any combination for single, double or triple rigging of halyard lines'" Order at 6 (citing *inter alia* Karpanty Decl. ¶¶ 14, 17) | ECF No. 166-2, at ECF Page No. 1; ECF No. 151-14, at ECF Page Nos. 8-9, 12, 15 |
| "The accused pulleys are not limited to outrigger use and may be used in single-line configurations or on structures other than outriggers." Order at 6 (citing Karpanty Decl. ¶¶ 16–17) | ECF No. 164-1 (SAF) ¶¶ 29, 31; ECF No. 151-5 ¶¶ 60, 62, 64, 67–73, 77–78, 160–71; ECF No. 151 ¶¶ 52; ECF No. 151-18 at 42:8–11, 20:14–21:14; 44:22–45:9; 95:10-13; 52:12-20, 84:20 – 85:6, 85:16-23, 85:25-86:2, 86:4- 5, 86:7-9, 87:2-5, 87:7, 87:9-10, 87:12 |
| "Defendant provides no instructions or advertisements directing customers to assemble a system meeting the limitations of the '632, '226, or '566 patents, nor any materials instructing users how to perform the method of the '778 Patent." Order at 6 (citing Karpanty Decl. ¶¶ 32–34) | ECF No. 164-1 (SAF) ¶¶ 7-9, 39, at ECF Page Nos. 10, 13-14; ECF No. 151-11, at 140:9-16 (Karpanty testifying that Rupp's rigging instructions are intended to show end users "how to rig the outrigger") |

| Order/Karpanty Statement | GEM's Evidence Disputing Facts |
|---|---|
| "In 2015, Defendant redesigned the 'Pulley Clusters' to incorporate an adjustable poly axial ball-joint stem that allows the pulley housing to pivot relative to the structure to which it is mounted.  When attached to an outrigger, the pulley housing, sheaves, and cord-routing openings move relative to the outrigger in response to halyard-line tension." Order at 5 (citing Karpanty Decl., ¶¶ 11, 15) | ECF No. 164-1 ¶¶ 2-5, at ECF Page No. 10; *E.g.*, 151-5, ¶¶ 92-94, 100-107, 158 |

Karpanty's statements as to how the Accused Products move and related engineering drawings, to which the Court expressly relied on (Order, at 5), is both improper expert opinion and was contradicted by GEM's evidence that, even when Rupp ships the pulleys with a stem, the stem is so tightly attached there is no displacement or movement relative to the outrigger pole, thus still falling squarely within the scope of the claims. *See e.g.,* ECF No. 164-1 ¶¶ 2-5, at ECF Page No. 10; *E.g.*, 151-5, ¶¶ 92-94, 100-107, 158. GEM also produced evidence Rupp does not instruct end-users to loosen the stem, nor why one might want to ever loosen it. *See, e.g.* ECF No. 164-1 ¶ 3, at ECF Page No. 10. There is also no record evidence that end users ever actually loosen the stem, nor ever even use a Rupp Accused Pulley with a loosened stem (if installed in the first place). *Id.*

By accepting Mr. Karpanty's assertions while overlooking GEM's contradictory evidence, the Order constitutes clear error resulting in a manifest injustice. Order at 6 (citing Karpanty Decl. ¶¶ 20, 24-25). "Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices. This is because credibility determinations and the weighing of evidence are jury functions, not those of a judge." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (internal citations and quotations omitted). This converted a fact witness with a direct interest in this case into an expert witness refuting GEM's technical expert evidence, despite Rupp never disclosing Karpanty as an expert. ECF No. 164, at ECF Page Nos. 10-13 (citing cases). The Federal Circuit made clear opinion testimony regarding infringement is *solely* the province of experts and, "***it is an abuse of discretion*** to permit a witness to testify as an expert ***on the issues of noninfringement*** or validity ***unless that witness is qualified as an expert in the pertinent art***." *HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 688 (Fed. Cir. 2020) (cleaned up) (emphasis added).

In *HVPO2*, the Federal Circuit vacated a jury verdict where a lay witness testified regarding

invalidity. *Id.* at 689. There, the district court improperly permitted a fact witness who, though experienced in the pertinent field, was not disclosed as an expert and did not provide an expert report, to testify as to the ultimate issue of obviousness. *Id.* On appeal, the appellee, who offered the lay fact testimony, proffered much the same arguments the Order relied on here - namely, the lay witness was not proffered as an expert and was thus not required to submit a report, and as a lay witness, he could opine regarding his perception and experience. *Id.* The Federal Circuit rejected this argument - "We do not agree, because Mr. Piebes' opinion testimony was directed to the central legal and technical question at trial." *Id.* It further found "Mr. Piebes[' testimony] is thus in the clear purview of experts and lay witness testimony on such issues does not comply with the Federal Rules of Civil Procedure. Mr. Piebes' testimony, which is directed to the conclusion of obviousness and its underlying technical questions, is the province of experts, not lay witnesses." *Id.* The Federal Circuit further rejected the argument that permitting such testimony was merely harmless error as "***it prejudiced HVO by not affording it the appropriate procedures for testing such testimony***." *Id.* at 689–90 (emphasis added). In following 11th Circuit law, from which the case originated, the Federal Circuit reversed and remanded. *Id.* at 690–91.

The procedural posture of this case is remarkably similar to *HVPO2*. Here, Mr. Karpanty— a lay witness with a vested interest in the outcome of this case—provided "expert testimony" on the ultimate issue of infringement, and underlying technical questions relating thereto, including how Rupp's products purportedly "move", how they are used by end-users, noninfringing uses, and how Rupp's instructions affect end users. Order at 5–6. GEM was deprived of any opportunity to test Karpanty's unqualified expert testimony through proper avenues (e.g., *Daubert* motions, depositions, or expert discovery safeguards and procedures).[4]

GEM was severely prejudiced by the untimely Karpanty Declaration. GEM was not afforded a chance to assess Mr. Karpanty on the topics contained therein, through deposition or

---

[4] GEM moved *in limine* to exclude this improper testimony from Mr. Karpanty. (ECF No. 194, ECF p. 12). The Court did not consider that Motion before issuing the Order. Because the substance of GEM's motions *in limine* could alter the Court's Order, failing to consider and rule on that *in limine* motion prior to the Order is further manifest injustice warranting reconsideration. *See, e.g., Sunrise of Coral Gables Propco, LLC v. Current Builders, Inc.*, No. 1:22-cv-21456-MORENO/GOODMAN, 2023 WL 6638050, at *1 (S.D. Fla. Oct. 12, 2023) ("The Undersigned needed to rule on the instant motion *in limine* **before** ruling on Plaintiff's summary judgment motion (and before ruling on Defendant's competing summary judgment motion" (emphasis in original)).

otherwise, since Rupp never identified him as having such knowledge during discovery, and Rupp's Rule 26 Initial Disclosures never listed him has having knowledge of many of the topics the Karpanty Declaration addressed. Rupp Rule 26 Disclosures (attached as Ex. C) at 2; *see Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1037 n.11 (11th Cir. 1987) ("[T]he proceedings in the district court took a bizarre turn when the court accepted the affidavits . . . in support of the defendants' motion for summary judgment, yet refused to permit the plaintiffs to depose those same individuals. This is not a proper practice.").

The Order's reliance on the Karpanty Declaration was a clear error that rendered a manifest injustice. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343. At minimum, examining the GEM-proffered evidence and drawing all inferences in GEM's favor – as legally required - leaves only one conclusion: GEM raised genuine disputes of material fact to defeat summary judgment in Rupp's favor, as a matter of law. The Court should reconsider its holding on these bases, alone or in combination with those above.

## D. Rupp's Accused Products Are Not Staple Articles Of Commerce With Substantial Noninfringing Uses

The Order is at least partially premised on a finding that Rupp's Accused Products are staple articles of commerce capable of substantial noninfringing uses. *See* Order at 9–10. But there is no *evidence* of any noninfringing use, let alone *substantial* noninfringing uses.

### 1. *Sony V. Universal* Shows That Hypothetical "Substantial Noninfringing Uses" Are Insufficient As A Matter Of Law

The Order relied exclusively on the copyright infringement case *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), when it accepted Rupp's unsupported argument and conjecture the Accused Products have substantial noninfringing uses. (Order, p. 9). That would ignore Federal Circuit law that hypothetical uses are *not* noninfringing uses, let alone substantial noninfringing uses; and Rupp lacked any evidence that its purported noninfringing use was *real*, let alone *substantial*. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (affirming that, even with evidence presented of actual noninfringing use from customers, use was not "substantial" and stating "[w]hether a use is 'substantial,' rather than just 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental,' cannot be evaluated in a vacuum").

A noninfringing use is "substantial" under 35 USC 271(c) only "when [the uses] are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). An asserted noninfringing use must

be more than hypothetical; it must be the *actual* way in which consumers use the product. *See Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320, 1336 (Fed. Cir. 2021) (explaining as it relates to noninfringing uses "our [contributory infringement] precedent **focuses on the real way in which the accused product is made, used, and sold**")(emphasis added); *see also Fujistu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330–31 (Fed. Cir. 2010) (holding that a product lacked substantial noninfringing uses *even where* a user "can turn off the infringing features").

Indeed, *Sony* and Federal Circuit law are consistent on this point: a noninfringing use must be "real"—**not hypothetical**. In *Sony*, the district court made express "findings [that] reveal[ed] that the average member of the public uses a VTR principally to record a program he cannot view as it is being televised and then to watch it once later in time," a practice the Court referred to as "time-shifting." *Sony*, 464 U.S. at 421. Sony also "introduced considerable evidence describing television programs that could be copied without objection from any copyright holder," which it proved by, "introduce[ing] considerable testimony at trial . . . from representatives of [television networks]." *Id.* at 423, 444. But none of Sony's purported noninfringing uses were hypothetical – Sony provided substantial, factual evidence that such uses were **actually** performed by end-users.

The Federal Circuit's precedent in *i4i Ltd. Partnership v. Microsoft Corp.* is similar. 598 F.3d 831 (Fed. Cir. 2010). In *i4i*, the asserted patent related to an improved method for editing documents containing computer code markup languages like XML, and the patentee brought claims for, among other things, contributory patent infringement. *Id.* at 840, 850–51. Like Sony, Microsoft - the accused infringer- adduced evidence of *actual* noninfringing uses on the part of users (though, as discussed below, the Federal Circuit still held that such uses were not "substantial"). *Id.* at 851. Indeed, the Federal Circuit characterized Microsoft's evidence as "ample testimony" relating to specific instances of noninfringing uses by its end users. *Id.* That is to say, Microsoft's arguments were not based on hypothetical attorney argument and conjecture regarding purported possibilities, as Rupp has merely done here.

Directly negating Rupp's noninfringing conjecture in this case, *Bio-Rad Laboratories, Inc. v. International Trade Commission* examined the International Trade Commission's determination that Bio-Rad proved the elements of, among other things, contributory patent infringement. 998 F.3d at 1335. Instead of presenting evidence of actual, real noninfringing uses of its products, the infringer merely presented evidence of hypothetical "design-around" systems which it argued were substantial noninfringing uses. *Id.* at 1335. Both the Federal Circuit and ITC expressly rejected

this argument, finding the noninfringing uses were "hypothetical system[s] not yet available" to its customers, explaining "10X's argument is not consistent with our precedent, ***which focuses on the real way in which the accused product is made, used, and sold***." *Id.* at 1336 (emphasis added).

Substantial noninfringing uses **cannot** be based on hypothetical uses. Here, Rupp provided no evidence of real-world users **actually** engaging in a noninfringing use – it only provided unsupported conjecture how its Accused Products *could possibly* be used, or they do not have a *required* use. Nevertheless, the Order apparently takes Rupp's hypotheticals for granted, finding, among other things, "[a] pulley is a quintessential staple of commerce—a simple machine that has seen use throughout history," and "[t]he pulleys are standard and ordinary, not 'uniquely suited' as a component of Plaintiff's rigging system." Order at 10; *contra* ECF No. 164-1 ¶¶ 29-30 (citing a plenitude of evidence showing that "[t]he Accused Products are especially made or adapted for use in infringement and they have no substantial noninfringing uses"), at ECF Page No. 13. But, the question is not whether general pulleys have substantial noninfringing uses. Rather, the question is whether Rupp's Accused Pulleys at issue have any substantial noninfringing uses. On this point, GEM cited substantial evidence with both expert and third-party testimony there are no substantial noninfringing uses of Rupp's products. *See e.g.* ECF No. 151-5 ¶¶ 160–63. Yet the Order does not address any of GEM's evidence, let alone cite to any contradictory evidence of users *actually* using Rupp's pulleys in a noninfringing manner.

Even taking Rupp's purported hypothetical "noninfringing uses" at face value (e.g., Rupp's argument users use the Accused Products with a single halyard line), Rupp's evidence is insufficient to establish that any such use is "*substantial*." In *Microsoft*, the Federal Circuit affirmed Microsoft's liability for contributory infringement, even though Microsoft presented evidence of *actual* noninfringing use, because the Federal Circuit found such use was not "substantial," as required by 35 USC §271(c). *Microsoft*, 598 F.3d at 851. The Federal Circuit explained "[w]hether a use is 'substantial,' rather than just 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental,' cannot be evaluated in a vacuum. In assessing whether an asserted noninfringing use was 'substantial,' the jury was allowed to consider not only the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market." *Id.* (citations omitted). The Federal Circuit concluded, "the jury heard ample testimony that the noninfringing binary file format was not a practical or worthwhile use for the XML community, for which the custom XML editor was designed and marketed." *Id.*

Here, Rupp provided the Court with one hypothetical example of an alleged noninfringing use: use with a single halyard line[5]. But like in *Microsoft*, GEM adduced "ample testimony" and other evidence that use with a single halyard line, or use of Rupp's custom-made pulleys in any context other than attached to Rupp's outriggers, is, "not a practical or worthwhile use for the [fishing] community, for which [the Accused Products were] designed and marketed." *Id.*

But even this is wrongfully giving Rupp the benefit of the doubt, because there is **no evidence** of consumers *actually using* Rupp's pulleys in any substantial noninfringing manner. Instead, the Order merely takes Rupp's hypotheticals for granted, finding, "[a] pulley is a quintessential staple of commerce—a simple machine that has seen use throughout history," and, "[t]he pulleys are standard and ordinary, not 'uniquely suited' as a component of Plaintiff's rigging system."[6] Order at 10. All this was despite GEM producing substantial evidence regarding how consumers actually use Rupp's pulleys, all of which demonstrated they are used *exclusively* to infringe GEM's patents in the real world. *See e.g.,* ECG 151-5 ¶¶ 164 ("using only a single-halyard line with the Accused Products is not a substantial noninfringing use, as this would not be using the Accused Products as designed and intended by Rupp, namely managing multiple halyard lines . . . it would be highly unusual and impractical to use the Accused Products with a single halyard line"); 132 ("If only a single halyard line is to be managed, Rupp Marine provides a single pulley; using a single halyard line with the two pulley or three Pulley Clusters or Pulley Upgrades would not use all of the provided pulleys, so Rupp cannot legitimately contend the double and triple pulleys are not specifically intended and designed for multiple halyard lines."), 78 (examining various third-party testimony from individuals testifying they use multiple halyard lines per outrigger in practice); ECF No. 151-18 at 42:8–11 ("Q. [Y]ou typically use three rigger lines per outrigger when you're fishing? A: Yes. We're trying to do the most, so we use three.").

Granting Rupp summary judgment on the basis of substantial noninfringing use, in the face of substantial evidence that no user ever actually uses it in a noninfringing manner, constitutes

---

[5] Rupp's "single halyard line" use argument is premised on Rupp's single marketing photo. *See* ECF No. 153 at 6; ECF No. 154-6. This photo does not show actual use of the system, it provides no context as to whether the system was *in progress* of being rigged, and, the photo lacks clarity to confirm the types and number of pulleys attached to the outrigger pole. But still, a marketing photo does not evidence *a substantial noninfringing use*.

[6] While the Court assumes the simplicity of the inventions claimed in the Asserted Patents being nothing more than involving simple, generic pulleys, the US Patent Office confirmed the inventions are patentable – with four separate US Patents, one of which was reexamined.

clear error and is manifestly unjust to GEM. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343. At minimum, in light of GEM's substantial evidence, there exists genuine issues of material fact precluding summary judgment.

### 2.     Rupp's Pulleys Are Purpose-Built For Infringement.

The Order also rests on the fallacious notion Rupp's "pulleys are standard and ordinary, not 'uniquely suited' as a component of Plaintiff's rigging system."[7] Order at 10. This is a clear example where, "the Court has patently misunderstood a party," warranting reconsideration. *See Z.K. Marine*, 808 F. Supp. at 1563. Despite Rupp's unsupported conjecture at the summary judgment hearing, GEM produced ample evidence that Rupp's pulleys are custom made to Rupp's specifications, designed specifically by Rupp, for use only with Rupp's outriggers, and specifically for managing halyard lines during fishing. *See e.g.,* ECF No. 151-17 (Rupp 30(b)(6)) at 146:15–22 ("Do you see the line that says Rupp pulley clusters are designed to replace any outrigger eye bolt? A: Yes."). GEM further produced ample evidence that Rupp sells its pulleys in three configurations— (1) with a tight stem; (2) with no stem at all; and (3) a clamp on version.[8]

None of these configurations, without modification, permit the pulleys to be displaced or not be at a fixed angular orientation relative to the outrigger poles, as required by the Asserted Claims—a fact not addressed in the Order. Order at 5. Indeed, the Order does not acknowledge the substantial evidence demonstrating Rupp sells and markets the Accused Pulleys *without stems altogether*, let alone that those sold with stems attached are tight and allow no movement. *E.g.,* ECF No. 164-1 ¶ 1, at ECF Page No. 10; ECF No. 151-8, at ECF Page Nos. 3, 6, 33–36, 39–52 of 53; *see also* Transcript, at 24:18 – 25:10, 28:15 – 29:4, 44:6-12; Presentation, at Slide nos. 5-11.

Despite Rupp's arguments, Rupp's pulleys are not off-the-shelf components, let alone "generic". Rupp specifically designed the pulleys, has them manufactured to its custom specifications, and markets them exclusively for use with Rupp's outriggers, and Rupp knows that such use would necessarily cause infringement. *See e.g.,* ECF No. 164-1 ¶¶ 7-8, 29, at ECF Page Nos. 10, 13. In that regard, Rupp manufactures and sells the pulleys in multiple configurations

---

[7] This ignores the fact that whether Rupp's Accused Products are "'uniquely suited' as a component of Plaintiff's rigging system" is wholly irrelevant to the issue as to whether Rupp infringes the claims of the Asserted Patents.

[8] GEM also presented substantial evidence Rupp sells pulleys and outriggers fully assembled, which the Court did not acknowledge or address. *See* ECF 151 ¶ 39; ECF No. 164-1 ¶ 6.

(i.e., with different numbers of sheaves) which are intended to be arranged in a descending order (i.e., three, two, and one sheaf, respectively) for the express purpose of rigging multiple halyard lines. ECF No. 151-5 ¶¶ 60-65, 81, at ECF Page Nos. 21-24, 34.

Rupp only marketed its Accused Products for use with "double of triple rigging of halyard lines," i.e., for use in a necessarily infringing configuration. ECF No. 166-2, at ECF Page No. 1; ECF No. 151-14, at ECF Page Nos. 8-9, 12, 15. Only *after* GEM instituted this action did Rupp change its webpage to insinuate "single, double or triple rigging" to hide its infringement. *Compare* ECF No. 151-7 (Rupp Online Product Listings) at, ECF Page Nos. 23–25 (emphasis added), *with* ECF No. 166-2, at ECF Page No. 1 & ECF No. 151-14, at ECF Page Nos. 8-9, 12, 15. GEM also produced evidence the Accused Products were "designed and intended" to manage, and are used by end-users to manage, a single halyard line *per sheaf* (i.e., two halyard lines in a two-sheave pulley, three in a three-sheave pulley), including expert evidence as well as third-parties that use Rupp's products. ECF No. 151-5 ¶ 81; ECF No. 151 ¶¶ 53–57.Thus, granting summary judgment to Rupp in the face of the genuine disputes of material fact GEM has raised here constitutes clear error and effects manifest injustice. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343. The Court must reconsider its holding on all the above bases.

## III.   INDUCED INFRINGEMENT

The Order also contains clear error in its induced infringement analysis. The Court's grant of summary judgment of no inducement infringement is premised on the purported fact that Rupp "provides no instructions, manuals, marketing materials, or communications directing customers to assemble" an infringing system, and further that, "Defendant has no interaction with end users at all." Order at 12. But like above, this analysis is premised on clear errors of law.

First, the Order again relies on the Karpanty Declaration as to what instructions Rupp provides, and how those instructions are interpreted by end-users. (Order at 12). Karpanty's Declaration is improper, including how Rupp's instructions affect end users. Yet, GEM produced substantial evidence—which the Order did not consider—of how Rupp's instructions are interpreted by, and affect, end users to both assemble infringing systems and perform the patented methods. *See e.g.,* ECF No. 151 ¶ 44. GEM produced testimony from third party users establishing Rupp's rigging instructions and diagrams are consistent with the way outriggers are necessarily used by end users, i.e., with multiple halyard lines. ECF 151 ¶¶ 42, 53–56. This evidence establishes a genuine dispute of material fact regarding Rupp's intent to induce infringement.

Second, GEM produced substantial evidence Rupp *does* interact directly with third-party infringers with its instructions and manuals.[9] Specifically, Rupp at least provides its instructions directly to its end users on the Internet (e.g., through its website) and through its social media presence. ECF No. 164-1 ¶ 7; ECF 151-5 ¶¶ 122–36. GEM produced testimony from Mr. Karpanty admitting Rupp's rigging instructions are intended to show end users "how to rig the outrigger." ECF No. 151-11 at 140:9–16; ECF No. 164-1 ¶ 7. But still, this issue is irrelevant as the Federal Circuit has taken it further by "affirm[ing] induced infringement verdicts based on circumstantial evidence (e.g., advertisements, ***user manuals***) directed to a class of direct infringers (e.g., customers, end users) ***without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material***." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1333 (Fed. Cir. 2016).

Moreover, the Federal Circuit noted "providing instructions to use a product in an infringing manner is evidence of the required mental state for induced infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 408 (Fed. Cir. 2018). Thus, granting summary judgment to Rupp constitutes clear error and effects manifest injustice. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343. The Court must reconsider.

## IV.    CONCLUSION

As set forth above, granting summary judgment to Rupp in the face of both established case law and of the genuine disputes of material fact GEM raised constitutes clear error and effects manifest injustice. *Instituto de Prevision Militar*, 458 F. Supp. 2d at 1343. Accordingly, GEM requests the Court to reconsider its holding in the Order, and reverse summary judgement in Rupp's favor.

---

[9] As GEM pointed out in its Opposition to Rupp's Motion for Summary Judgment, there is nothing in the law that requires Rupp directly interact with end users for Rupp to be liable for induced infringement. *See e.g.* ECF No. 164, ECF pp. 12-13. And Rupp never produced any authority to the contrary.

**Dated: March 4, 2026**

Respectfully submitted,

**GEM PRODUCTS, LLC**

*/s/* GREGORY S. WEISS
Gregory S. Weiss, Esq.
Florida Bar No. 16340
Email: gweiss@taftlaw.com
Secondary: psymons@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Dr., Suite 900
West Palm Beach, FL 33401
Tel. (561) 665-2250

Joseph R. Lanser, *Pro Hac Vice*
Email jlanser@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
Tel. (312) 527-4000

William K. Broman, *Pro Hac Vice*
Email: wbroman@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
(248) 727-1571

Charles Pfister, *Pro Hac Vice*
Email: cpfister@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
40 N. Main St., Suite 1700
Dayton, OH 45423
Tel. (937) 641-2071

Jaimin H. Shah, Esq.
Admitted *Pro Hac Vice*
jshah@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E Wacker Dr, Ste 2600
Chicago, IL 60601
Tel. (312) 836-4171

Alex M. Matthews, *Pro Hac Vice*
Email: amatthews@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
(317) 713-3500

Thomas Bejin, *Pro Hac Vice*
Email: tbegin@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
(248) 727-1572

*Attorneys for Plaintiff/Counter-Defendant, GEM Products, LLC*

17

## CERTIFICATE OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(2), I hereby certify that on March 4, 2026 counsel for GEM Products, LLC conferred with counsel for Rupp Marine, Inc in a good faith effort to resolve the issues raised in the present Motion, including the relief sought therein, and the parties have not been able to reach an agreement.

      *s/* GREGORY S. WEISS
      GREGORY S. WEISS, ESQ.
      Florida Bar No. 163430

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF. or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

*s/* GREGORY S. WEISS
GREGORY S. WEISS, ESQ.
Florida Bar No. 163430

**SERVICE LIST**

**Andrew Lockton, Esq.**
alockton@mchaleslavin.com
**Edward F. McHale, Esq.**
emchale@mchaleslavin.com
MCHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, FL 33410
Tel. (561) 625-6575
*Attorneys for Rupp Marine, Inc.*