# Exhibit A

```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
                       WEST PALM BEACH DIVISION

                     CASE NO. 25-CV-14047-MIDDLEBROOKS


   GEM PRODUCTS, LLC,                  .
                                       .
   Plaintiff,                          .
                                       .
         vs.                           .
                                       .
   RUPP MARINE, INC.                   .   West Palm Beach, FL
                                       .   January 7, 2026
                                       .
   Defendant.                          .

          MOTION for SUMMARY JUDGMENT PROCEEDINGS
        BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS
                UNITED STATES DISTRICT JUDGE

   APPEARANCES:


   FOR THE PLAINTIFF:          GREGORY S. WEISS, ESQ.
                               THOMAS E. BEJIN, ESQ.
                               JOSEPH R. LANSER, ESQ.
                               WILLIAM K. BROMAN, ESQ.
                               Taft Stettinius & Hollister LLP
                               525 Okeechobee Boulevard
                               Suite 900
                               West Palm Beach, FL 33401
                               561-655-2250


   FOR THE DEFENDANT:          ANDREW D. LOCKTON, ESQ.
                               EDWARD F. McHALE, ESQ.
                               McHale & Slavin
                               2855 PGA Boulevard
                               Palm Beach Gardens, FL 33410
                               954-467-8989


   Official Court Reporter:    Pauline A. Stipes
                               West Palm Beach/Ft. Pierce, FL
                               HON. DONALD M. MIDDLEBROOKS
                               561-803-3434
```

Pauline A. Stipes, Official Federal Reporter

```
 1    run-of-the-mill pulley.  This is specifically made, and there
 2    is only one thing that this thing has ever been designed and
 3    made for, attachment to Rupp's outriggers, nothing else.
 4             If I may, your Honor, if I could show you the pulley
 5    assembly in its actual bag itself that they actually sell --
 6             THE COURT:  If you attach one of these pulleys to
 7    their outrigger you think that infringes your patent?
 8             MR. LANSER:  Causes direct infringement, correct.  The
 9    fishermen are actually directly infringing because Rupp is
10    contributorally infringing.  They are selling the material
11    component that causes that direct infringement.  That is what
12    contributory infringement is all about.
13             It is not just a pulley by itself, it is how this
14    pulley is attached specifically to the outrigger.  This is not
15    some pulley that you could get at any hardware store.  It is
16    specifically made for Rupp outriggers and Rupp outriggers
17    alone.
18             If I could go to the next page, your Honor.  This is
19    actually an email from Rupp's customer service from May 2024,
20    and I quote, "We no longer provide the swivel assemblies" --
21    the stem that your Honor is playing with right now -- "we no
22    longer provide the swivel assemblies on the pulley clusters
23    unless they are requested."
24             So, no, they do not sell this unless it is requested.
25             The next page, a followup email from the same
```

1  representative, "The price list is correct for pulleys without
2  the swivel assemblies.  You must request the swivel assembly."
3          Now, what the evidence has shown in this case, your
4  Honor, is there is only a very few number of invoices where end
5  users or customers actually purchase the pulley clusters with
6  the add-on swivel assembly.  Because of that this stem, this
7  swivel assembly, no, it doesn't exist in the marketplace.  They
8  know it doesn't exist.  End users don't use it because they
9  don't purchase it, and because of that, the way it is directly
10 attached to the outrigger itself causes direct infringement.
11         I do want to reiterate, the stem portion right now
12 that you are playing with, that has been doctored.  That is not
13 how they sell that product.  If I could show you, your Honor,
14 this is one of the products in the actual bag right now.
15         If I may approach the bench?
16         THE COURT:  Sure.
17         MR. LANSER:  As you can see, that bag has been sealed,
18 never been opened.  That swivel assembly is tight, it doesn't
19 move.  Because of that the claims require that these housings
20 are non-displaceable relative to the outrigger.
21         The stem, because it is so tight, there is no movement
22 at all, meets the limitations of the claims.
23         As the vast majority of evidence shows that these
24 stems don't even exist, because of that it meets the
25 limitations of the claims.

1           What this case is really about, again, is the direct
2  infringement is not done by Rupp.  They sell the outriggers,
3  they sell them with these pulleys on them, and we have a
4  plethora of evidence showing, well, we sell pulleys, we sell
5  outriggers.  What people do with these pulleys, they can do
6  whatever they want.  That is not true.  There is a plethora of
7  evidence that they sell the outriggers with these pulleys
8  assembled and attached by Rupp.  There is no two ways about it.
9  There is no evidence whatsoever.
10          Yes, we do have the burden of establishing and proving
11 no substantial non-infringing uses.  We have met that burden.
12 Other than attorney argument and hypotheticals, they have shown
13 no evidence to show that this is actually used in a
14 substantially non-infringing way.
15          Now, the other thing that counsel quoted, your Honor,
16 is that they believe that they don't infringe, that you can't
17 have contributory infringement.  The problem with that argument
18 is they haven't established or shown that they believe that
19 they infringe.  In fact, the entirety of all arguments they
20 have ever made is, well, our pulley includes a stem at the end,
21 and that stem causes infringement.
22          Our expert has rebutted that.  Our expert says, no,
23 that still directly infringes.  Even putting that to the side,
24 the evidence has shown that they actually sell it without this
25 stem, and that is really key.  We just learned of that.  It is

1    after the close of fact discovery when these documents were
2    finally produced where we find out they are selling it without
3    the stem.  The swivel assembly, which it is actually called, is
4    an add on.  It is not included the vast majority of times.
5           They know it.  In fact, we have evidence in this
6    presentation, Rupp's own catalog is advertised without the
7    stem.  Rupp's own social media marketing materials never
8    includes the stem.  Rupp's own instructions and everything
9    else, no stem.  So this whole notion that, well, we don't
10   infringe because of the stem is a smoke screen, your Honor.  It
11   doesn't exist.
12          THE COURT:  So, getting back to my other question, is
13   the outrigger at all a component that you think has been
14   specially designed to infringe your patent?
15          MR. LANSER:  The outrigger by itself without the
16   pulleys, no, that would not infringe.  Outriggers with these
17   pulleys, which they do sell, they do market, they do instruct
18   customers how to use, that outrigger with these pulleys would
19   cause direct infringement.
20          THE COURT:  So any pulley attached to an outrigger you
21   think infringes your patent?
22          MR. LANSER:  It depends upon how that pulley is
23   attached.  How this pulley is attached, yes.
24          THE COURT:  Why?  It is just screwed on, isn't it?
25          MR. LANSER:  It is just screwed on, but what the prior

1    are causing direct infringement.  The ones that they point to
2    are not using, as the Federal Circuit requires for substantial
3    non-infringing use, the pulleys for what they are intended and
4    designed.  The fact that you could use a single halyard line,
5    again, doesn't avoid infringement.
6            I will definitely get you the cite, your Honor, for
7    the instruction citations.
8            THE COURT:  All right.  Thank you.
9            Do you want to offer a reply?
10           MR. LOCKTON:  Yes, your Honor, if I may.  I am a
11   little taken aback because a lot of the argument is about
12   information that has no connection to the record, no evidence
13   has been presented, and it is even contradicted by all of the
14   evidence that has been created in the case.
15           In fact, the one example my friend points to is a
16   document that specifically contradicts pretty much most of what
17   he just said, an email saying -- and this was an error
18   because -- at the time, but in May -- May 17, 2024, they are
19   pointing to an email, "we no longer provide swivel assemblies
20   on pulley clusters unless they are requested."  No longer, that
21   means that they were provided.  That specifically contradicts
22   what he said.
23           What he doesn't tell you is that that customer got the
24   swivels.  They were specifically sent because this email was a
25   result of them realizing that they weren't there, and it was an

```
 1    error in our customer service department.
 2              I am going outside of the record because we are
 3    outside the record right now, but the separate product SKU has
 4    always existed.  When people want to buy a replacement, they
 5    buy a replacement.  We don't give them away for free.  If the
 6    swivel breaks, they need to be able to buy one in order to
 7    replace it.  You are holding an example in the sealed
 8    packaging, it has the stem on it.
 9              THE COURT:  It has a stem, it doesn't have the swivel.
10              MR. LOCKTON:  It does, your Honor.
11              THE COURT:  It doesn't have this part on the end that
12    moves around.  Oh, that is what you call the swivel.
13              MR. LOCKTON:  I do, and that is what is in there.
14    That stem is packaged tightly for shipping purposes.  The
15    product you are holding is exactly the same as the product that
16    I brought as a demonstrative.  It has the same components found
17    in Exhibits B and C.
18              THE COURT:  It is just screwed down more tightly?
19              MR. LOCKTON:  Correct.  Their expert, who didn't need
20    instructions, recognized that the user would have to manually
21    loosen the nut.  It is designed to be adjustable because people
22    want to have different degrees of movement of those products.
23    In order to be adjustable, it has to be able to thread in and
24    out.  That is just the basic mechanical property of making it
25    adjustable, and by being adjustable it moves.
```

```
 1              THE COURT:  You are saying that this item that he
 2   handed me in a package is the same as the one you gave me.
 3              MR. LOCKTON:  That is correct.
 4              THE COURT:  It is just screwed down more tightly.
 5              MR. LOCKTON:  Correct, your Honor.
 6              THE COURT:  Do you always sell them with this, or not?
 7              MR. LOCKTON:  We do.  There was the one aberration in
 8   May 2024, when the swivel, which has always been sold as a
 9   separate replacement part, when it was given a new product
10   number there was a confusion, and people in our customer
11   service department thought that they were being sold
12   separately.
13              Now, our largest customer, Palm Beach Towers, both the
14   head of the company who is down here in Riviera Beach, as well
15   as the supervisor in New Jersey, have both testified, they were
16   deposed by the Plaintiff, every single one has arrived in the
17   relevant time period with that piece.
18              THE COURT:  If you attach it like it is in the package
19   tightly, tightly wound down, and you then attach that to a
20   halyard does that infringe their patent?
21              MR. LOCKTON:  No, it doesn't.
22              THE COURT:  Why?
23              MR. LOCKTON:  I would have to inspect the specific one
24   you are looking at to see how much it actually moves, but the
25   whole point --
```

```
 1                         * * *
 2         I certify that the foregoing is a correct transcript
 3   from the record of proceedings in the above matter.
 4
 5         Date:  January 10, 2026
 6                  /s/ Pauline A. Stipes, Official Federal Reporter
 7                         Signature of Court Reporter
```