**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 2:25-cv-14047-DMM**

GEM Products, LLC,

      Plaintiff/Counterclaim-Defendant,

v.

Rupp Marine, Inc.,

      Defendant/Counterclaimant.

_____/

**RUPP MARINE, INC.'S MOTION FOR PREVAILING PARTY
ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ iii

I.      Local Rule 7.3 Formalities ..........................................................................................1

II.     Introduction ..................................................................................................................1

III.    History of This Action ..................................................................................................2

IV.     Arguments ....................................................................................................................5

A.      The Court Should Award Rupp Its Reasonable Attorneys' Fees and Litigation Expenses Under 35 U.S.C. § 285 ..................................................................................................5

        1.      The Court Should Declare This Case Exceptional Pursuant to 35 U.S.C. § 285 .....5

                a.      Rupp is the Prevailing Party ..........................................................................6

                b.      GEM's Litigation Position Was Objectively Weak and Lacked Any Substantive Strength ......................................................................................7

                c.      GEM's Litigation Conduct and Failure to Conduct the Required Pre-Filing Investigation Demonstrate Exceptionality ....................................................8

        2.      The Court Should Exercise Its Discretion By Awarding Rupp Its Reasonable Attorneys' Fees and Expenses ..................................................................................12

B.      Rupp Should Also Be Awarded Its Attorneys' Fees and Non-Taxable Litigation Costs Under 28 U.S.C. § 1927 ................................................................................................13

        1.      The Assertion of Seventy (70) Patent Claims ..........................................................14

        2.      Discovery and Discovery Disputes About Rupp's *Non-Infringing* Outriggers .....15

        3.      Advocating For Royalties of Almost $1 Million Based *Almost Exclusively on* Sales of *Non-Infringing Outriggers* ...................................................................................15

        4.      Asserting Induced Infringement Based on Non-Existent "Instructions" ...............16

        5.      Asserting *Direct* Infringement ................................................................................16

C.      Rupp's Fees and Costs Are Also Warranted Under the Court's Inherent Authority .........17

D.      Rupp's Requested Fees and Expenses Are Reasonable ....................................................18

        1.      Rupp's Counsel's Rates Are Reasonable ..................................................................19

        2.      Rupp's Counsel Incurred a Reasonable Number of Hours ......................................19

        3.      Fees on Fees Should Be Awarded ............................................................................20

Conclusion ..........................................................................................................................20

## TABLE OF AUTHORITIES

Cases:

*Affordable Aerial Photography, Inc. v. Beach Town Real Estate, LLC*,
      Case No. 24-cv-80423-JEM, 2026 U.S. Dist. LEXIS 115748 (S.D. Fla. Feb. 9, 2026) ...19

*Amazon.com, Inc. v. PersonalWeb Techs. LLC*, 85 F.4th 1148 (Fed. Cir. 2023) ......................6

*Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999).............................. 18-19

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2006) ...........................13

*Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066 (Fed. Cir. 2002).................................9

*B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675 (Fed. Cir. 2019) ........................................7

*Blum v. Stenson*, 465 U.S. 886 (1994) ...................................................................................18

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555 (Fed. Cir. 1992) ..............12

*Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366 (Fed. Cir. 2008).......................9

*Conley v. Vacanti*,
      Case No. 23-cv-60384-AHS, 2026 U.S. Dist. LEXIS 11723 (S.D. Fla. Jan. 22, 2026)....19

*CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016)................................................5, 7

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990) ....................................6

*Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343 (Fed. Cir. 2000) ........................................9

*EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360 (Fed. Cir. 2025)..........................................9

*Extremity Med., LLC v. Nextremity Sols., Inc.*,
      No. 22-239-GBW, 2024 U.S. Dist. LEXIS 181454 (D. Del. Oct. 3, 2024) ........................9

*In re Evergreen Sec., Ltd.*, 570 F.3d 1257 (11th Cir. 2009) ....................................................17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)............................18

*J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047 (Fed. Cir. 1987)..........................................12

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013) .............................6, 12

*Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479 (Fed. Cir. 2016) ....................9

*Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081 (Fed. Cir. 2024) .................................................5

*Mallory v. Harkness*, 923 F. Supp. 1546 (S.D. Fla. 1996) ......................................................18

*Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010).......................................................20

*Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1999) ...............................19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)........................ 5-6

Cases—continued:

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990 (Fed. Cir. 200) ..............7

*Parallax Grp. Int'l, LLC v. Incstores LLC*,
 No. 16-929, 2023 U.S. Dist. LEXIS 234161 (C.D. Cal. Dec. 6, 2023) ...............................6

*Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018) ......................................................5

*Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015)................................17

*SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ................................................6

*Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340 (Fed. Cir. 2001) ........................................13

*SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073 (Fed. Cir. 2014) ................................... 6-7

*Stragent, LLC v. Intel Corp.*,
 No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080 (E.D. Tex. Aug. 6, 2014).......................6

*Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513 (Fed. Cir. 2014) ........................20

*ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019)......................................9

*Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306 (11th Cir. 2002)......................................17

*Trump v. Clinton*, 161 F.4th 671 (11th Cir. 2025).............................................................. 17-18

*WPEM, Inc. v. SOTI Inc.*,
 No. 2:18-cv-00156, 2020 U.S. Dist. LEXIS 17449 (E.D. Tex. Feb. 4, 2020)................. 8-9

Statutes:

28 U.S.C. § 1920.......................................................................................................................1

28 U.S.C. § 1927........................................................................................................ 1, 13, 15-17

Patent Act, 35 U.S.C. § 101, *et seq.*
 35 U.S.C. § 285.......................................................................... 1, 5-6, 10, 12-13, 20

Rules:

Federal Rules of Civil Procedure
 11.............................................................................................................................9
 12(c) ......................................................................................................................10
 54(d) ........................................................................................................................1
 56(a) ...........................................................................................................................

Southern District of Florida Local Rules
 7.3.......................................................................................................................1, 20
 7.3(c) .......................................................................................................................1

Pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(d), 28 U.S.C. § 1927 and the Court's inherent authority, Rupp Marine, Inc. ("Rupp") respectfully moves for the Court to grant it the reasonable attorneys' fees and expenses it was forced to incur to defend against the claims brought by, and the conduct of, GEM Products, LLC ("GEM") and its counsel. In support, Rupp submits the attached Declaration of Andrew D. Lockton ("Decl."), with included Exhibits 1–23.

## I.      LOCAL RULE 7.3 FORMALITIES

Local Rule 7.3(a) requires (1) the judgment giving rise to the Motion, DE 222; (2) the statute, rule, or other grounds entitling the moving party to fees, 35 U.S.C. § 285, Fed. R. Civ. P. 54(d), 28 U.S.C. § 1927, and the Court's inherent authority; (3) explain the grounds entitling the moving party to the award, *infra*, §IV; (4) the amount sought, **$883,516.40** in attorneys' fees, through the filing of this Motion (to be supplemented accordingly) and **$114,856.45** in recoverable expenses, *see infra*, §IV; *see also* Decl., ¶¶ 14–32 and Exs. 2–4, 19, 23; (5) disclose the terms of any applicable fee agreement, Decl., ¶¶ 5–7; (6) the identity, experience, and qualifications for each timekeeper for whom fees are sought, provide the number of hours reasonably expended by each such timekeeper, a description of the tasks done during those hours, and the hourly rate(s) claimed for each such timekeeper, Decl., ¶¶ 2–4, 14–21, 24–32 and Exs. 2–4, 23; and (7) describe and document, with invoices, all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920, Decl., ¶¶ 14–30 and Exs. 2–4, 19, 23.

## II.     INTRODUCTION

This action should never have been filed. GEM had no evidence to allege, much less prove, that Rupp infringed—directly or indirectly—any claim of the asserted patents. GEM filed this action *without* investigating its claims—it did not even purchase any "Accused Product" until months after the lawsuit was filed and discovery was long underway. As reflected in GEM's pleadings, infringement contentions, and summary judgment arguments, GEM constantly changed its theories and arguments, including by contradicting its previous positions; the only reasonable inference is that GEM and its counsel were only looking to prolong frivolous litigation. That is inappropriate. A fundamental requirement of all patent cases is that plaintiffs **must** adequately in-

1

vestigate *before* alleging infringement. Had GEM done so, it's argument and theories would have been *consistent*; they were not because no pre-filing investigation occurred.

Rupp repeatedly conveyed that this case was frivolous and baseless; GEM's arguments and theories were unsupported and contradicted by *public* facts, records, and websites. Rupp's products are staple articles of commerce, capable of non-infringing uses and advertised for non-infringing uses, and Rupp had no "instructions" to induce infringement. *See* DE 211. GEM *conceded* that Rupp's outriggers are non-infringing, *see* DE 211 at 10 and n.2, that Rupp's pulley clusters could be used independently of outriggers, *see, e.g.*, DE 201; DE 226 at 34:8–25, and could not identify *any* evidentiary basis for the induced infringement claims, DE 226 at 40:17–41:22; DE 210. Yet GEM persisted with its unsupported, and unsupportable, claims and arguments.

This case is the definition of "exceptional" and, moreover, sanctions are warranted. GEM bought patents for $90,000 and frivolously litigated a case worth *less than $50,000* in maximum damages, while vexatiously multiplying the proceedings and claiming damages over $1 million. Rupp was forced to incur over $1 million in fees and costs to defend itself; it should be reimbursed.

## III.   HISTORY OF THIS ACTION

In May 2023, GEM purchased the asserted patents from Craig Mercier for $90,000. DE 196-3, ¶ 5. Mercier dealt with Rupp between 2014 and 2017 regarding those patents, but he understood that Rupp's pulleys were not the same as his invention. In 2017, after reexamination of the '632 patent, Mercier was informed about the polyaxial ball joint/stem on Rupp's pulley clusters; he never responded, indicating his recognition that Rupp's pulley products do not infringe.

GEM's attack began on September 25, 2024, asserting that Rupp was *directly* infringing the Mercier patents. Ex. 5 to Decl. Despite months of correspondence, GEM could not articulate a basis for asserting infringment. Exs. 5–15 to Decl. Meanwhile, Rupp provided the 2017 Mercier correspondence, addressing Mercier's silence as his implicit acknowledgement of no infringement. Ex. 6 to Decl. Despite this, GEM persisted. *See* Exs. 5–18 to Decl.; *see also* DE 1. When GEM deposed Mercier, he confirmed that Rupp's pulley clusters "didn't quite fit the bill" because of that polyaxial ball joint/stem; "[Rupp's pulley clusters] rocked side to side" due to the polyaxial

ball joint/stem and were not the same as his invention. DE 127-9 at 47:7–23.

GEM could easily have understood this distinction if it had reviewed Rupp's products and compared them to the patents and prosecution history. Moreover, GEM *was told* that this feature was a defense to infringement. Prior to filing suit, GEM's owner (Matthew Bridgewater) was told by Joseph Glonek, the New Jersey supervisor for Palm Beach Towers—Rupp's largest customer—that Rupp's pulley clusters articulated/moved around, explaining it as a modification that occurred years prior to avoid (in Glonek's words) "a patent issue." DE 127-6 at 20:12–21:25. Notably, GEM did not disclose this conversation until *after* Mr. Glonek's testimony. *Compare* DE 127-7 at 12–13 (interrogatory 8 response) *with* DE 154-11 at 14–16 (amended response).

Despite this, GEM asserted direct and contributory infringement of seventy (70) patent claims across all four (4) Mercier patents (hereafter, the "Asserted Patents"). GEM knew Rupp's products did not include all elements required by *any* claim, yet asserted direct infringement any-way. GEM knew that Rupp's pulley products could be used in non-infringing ways, yet asserted contributory infringement anyway. GEM argued that Rupp was selling discrete components that it alleged *could be used to create* an infringing system. *See* DE 24 at ECF pp.8–11 and n.3. The complaint, and that argument, proved Rupp's non-infringement: Rupp does not make any system or perform any method as claimed, and its products are staple articles of commerce with non-infringing uses. The complaint could not articulate *any claim* for direct or contributory infringe-ment. DE 35 at 6–7; *see also* DE 17 at ECF pp.11–16; DE 24 at ECF pp.4–12.

During the motion hearing, GEM could not articulate how it could maintain its direct in-fringement claims. *See* DE 40 at 19:19–24:17. In briefing, GEM argued that Rupp sells the various pieces that can be used for outrigger fishing. *See* DE 24 at ECF p.9 and n.3. During the hearing, GEM pivoted and argued that certain products could be shipped in the same box. DE 40 at 23:14–24:17. But GEM did not investigate that argument before making it. *Cf.* DE 46-10. GEM also conceded that Rupp's outriggers were **not** the basis of indirect infringement, DE 40 at 28:4–9, it was *only* based on Rupp's pulley sales, *id.* at 24:18–28:2.

After the complaint was dismissed, GEM entirely changed its theories and arguments.

*Cf.* DE 43. Though GEM dropped direct infringement, it alleged contributory infringement based on Rupp's pulley products and *also* based on fabricated "products" it called "Accused Outriggers with Pulleys," contradicting its concessions. *See* DE 43 ¶ 33. No such "products" existed, DE 211 at 10 and nn.1–2, and GEM knew that, DE 88 at 7:4–6 ("So we do not allege that there is a specific accused product where Rupp right now is selling the outrigger with the pulley system directly attached."); *accord* DE 43 ¶¶ 62–63. GEM also alleged induced infringement, frivolously asserting that Rupp provided "instructions" for rigging, and using, outriggers *with pulleys*. *See, e.g.*, DE 43 ¶¶ 41–42. As with the "Accused Outriggers with Pulleys," these purported "instructions" were another fabrication by GEM and its counsel. No such "instructions" were cited, and none exist. Even at summary judgment, GEM could not cite any such "instruction." *See* DE 210.

Despite its concessions, GEM focused this case almost exclusively on Rupp's *outriggers*— admittedly non-infringing goods that GEM conceded were **not** the basis of its claims. GEM focused discovery on the fabricated "Outriggers with Pulleys", using that to obtain Rupp's sales for the non-infringing *outriggers*. *See, e.g.*, DE 50; DE 68; DE 88 (transcript) at 22:23–24:16, 36:6–38:2. GEM created myriad disputes about Rupp's *outriggers*, including by arguing that Rupp *might be* selling "custom" products not listed in its catalog or on its website. *See* DE 88 at 9:18–10:13. GEM's counsel pressed the frivolous position about "Outriggers with Pulleys", significantly multiplying what *should have been* straightforward and simple discovery.

GEM's counsel then used that discovery into Rupp's non-infringing *outriggers* to assert a damage theory in excess of $1 million—almost exclusively based on royalties for *outriggers*. *See* DE 196-2 (Holzen Report) ¶¶ 19–20, 40–42. After Rupp identified that roughly $300,000 of that figure was based on Rupp's stand-alone outrigger sales, DE 196-3 ¶¶ 40–41, GEM's expert had to revise his report, while maintaining GEM's argument for royalties on non-infringing outriggers if a customer *also bought* pulleys at the same time, *see* DE 196-4 ¶¶ 10–20. GEM sought damages based on a 10% royalty on Rupp's *revenue* of both outriggers and pulleys, totaling roughly $800,000. DE 196-4 ¶ 20. Yet Rupp's revenue from pulley sales was only $833,184; its *gross profit* on those pulley sales was only $482,215. DE 196-2 ¶ 40. And with an operating margin of

4

only 6.8% on its pulleys, even disgorging Rupp's *entire profit on pulleys*, damages would have been only $56,656.51. DE 196-3 ¶ 52. The only realistic damage (*reasonable* royalty) for the Asserted Patents would have been (much) less than $50,000, to allow for some profit to Rupp.

At summary judgment, GEM showed the frivolousness of its case; it had no evidence to support its positions. DE 211 at 2 n.3, 5–7. GEM conceded that Rupp's outriggers do not infringe. *Id.* at 10 and n.2. GEM could not support the existence of the fabricated "Accused Outriggers with Pulleys". *Id.* at 10. GEM could not dispute that Rupp's pulleys are staple articles of commerce, and it had no evidence of inducement. *Id.* at 10–13. GEM "incurred" roughly $3.5 million (or more when factoring in GEM's experts) in a case worth less than $50,000, while forcing Rupp to incur over $1 million in legal fees and costs defending baseless claims. *See* DE 205 at 19.

## IV.   ARGUMENTS

**A.   The Court Should Award Rupp Its Reasonable Attorneys' Fees and Litigation Expenses Under 35 U.S.C. § 285.**

### 1.   The Court Should Declare This Case Exceptional Pursuant to 35 U.S.C. § 285.

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."35 U.S.C. § 285. There are two basic requirements for an award of attorneys' fees: (1) the party seeking fees is the "prevailing party" and (2) the case is "exceptional." A party must prove entitlement to fees by a preponderance of the evidence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-58 (2014). To be the "prevailing party," there must be the "necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court could entertain [the defendant's] fee claim under 35 U.S.C. § 285." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018) (alteration in original); *see also CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016); *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024) ("For purposes of awarding attorney fees under § 285, there can be only one winner.") (internal quotation marks omitted).

An exceptional case "is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of

the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Courts consider the "totality of the circumstances" when determining whether a case is exceptional, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 & n.6; *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). No single element is dispositive, considerations can include "bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, [and] litigation misconduct." *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080, at *11 (E.D. Tex. Aug. 6, 2014).

Section 285 discourages certain exceptional conduct by imposing the cost of bad litigation decisions on the decision maker. *Parallax Grp. Int'l, LLC v. Incstores LLC*, No. 16-929, 2023 U.S. Dist. LEXIS 234161, at *27 (C.D. Cal. Dec. 6, 2023). Significantly, a case may be declared exceptional when a party files and continues to prosecute the case it knows is without merit. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitute grounds for declaring a case exceptional under 35 U.S.C. § 285."); *Amazon.com, Inc. v. PersonalWeb Techs. LLC*, 85 F.4th 1148, 1161 (Fed. Cir. 2023) (affirming exceptionality for unreasonable litigation conduct in light of requirements that "the attorney must continually reevaluate the positions advanced" and "must continually assess the soundness of pending infringement claims"). Moreover, reasonable attorney's fees may be granted in exceptional cases "to prevent an alleged infringer from suffering a gross injustice." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). "[Section] 285 is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust . . . to require it to bear its own costs." *Ibid.*

### a. Rupp is the Prevailing Party.

Rupp is the prevailing party in this action. DE 222. "Prevailing party" status in patent cases is a legal question governed by Federal Circuit law. *See, e.g.*, *SSL Servs., LLC v. Citrix Sys., Inc.*,

6

769 F.3d 1073, 1086 (Fed. Cir. 2014); *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 992 (Fed. Cir. 200). When a court dismisses a plaintiff's claims on the merits, or even for non-merits-based reasons, the defendant is the "prevailing party." *CRST*, 578 U.S. at 432-34; *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 678-79 (Fed. Cir. 2019). Here, the Court granted summary judgment of non-infringement (DE 211) and then entered a final judgment in favor of Rupp and against GEM (DE 222). Accordingly, Rupp is indisputably the prevailing party.

> **b.    GEM's Litigation Position Was Objectively Weak and Lacked Any Substantive Strength.**

This case is exceptional because GEM's litigation position was objectively weak and lacking any substantive strength. GEM *never* had evidence supporting its infringement allegations or claims, a point emphasized by GEM's inability to dispute the critical facts at summary judgment. *See* DE 211 at 2 n.1, 5–7 (addressing undisputed facts); *see also* DE 210 (no evidence of induced infringement). Initially, GEM asserted *direct* and contributory infringement claims. DE 1; *see also* Exs. 5–18 to Decl. (pre-suit correspondence). GEM argued that direct infringement was based on the *availability* of discrete products for sale. DE 40 at 19:19–24:17. But GEM never investigated the "facts" underlying its arguments. *See* DE 46-10 (post-hearing letter).

GEM initially conceded that contributory infringement was based *only on* Rupp's pulleys, DE 40 at 24:18–28:2, and conceded that the *indirect infringement* (a broader category) was solely based on Rupp selling pulleys. *Id.* at 27:19–28:3. GEM conceded that its infringement claims were **not** based on Rupp's outrigger sales. *Id.* at 28:4–9. As memorialized in the dismissal order, the complaint failed to identify what products were alleged to infringe and what theories were being advanced, DE 35 at 4, 6–7, and GEM's arguments and assertions during the hearing were not contained in the complaint. *Id.* at 7.

GEM changed its theories in its amended complaint, and its "facts." *Cf.* DE 43. GEM finally dropped the direct infringement claims, *see* DE 46-10, despite maintaining that position over the previous eight (8) months, *see* Exs 5–18 to Decl.; *see also* DE 40 at 19:19–24:17. Going beyond Rupp's pulley products, GEM alleged contributory infringement based on a class of "accused

products" fabricated by GEM and its counsel, referred to as "Accused Outriggers with Pulleys," contradicting GEM's concession. *See* DE 43 ¶ 33. GEM knew that no such products existed. DE 88 at 7:4–6 ("So we do not allege that there is a specific accused product where Rupp right now is selling the outrigger with the pulley system directly attached."); *see also* DE 211 at 10 and nn.1–2. The amended complaint *alleges* that these are separate products and sold separately. DE 43 ¶¶ 62–63. Moreover, pulleys are simple machines dating back thousands of years, with significant use beyond outriggers. *See* DE 211 at 10. Rupp's pulleys—the only products genuinely at issue—are the quintessential staple article of commerce; their sales cannot support a claim for contributory infringement. DE 211 at 10–11. GEM knew this, or it should have. Mercier, the inventor, knew that Rupp's pulleys were not the same as his invention. *See* DE 127-9 at 47:7–23 (Rupp's pulleys d[on]'t quite fit the bill," they "d[o] something different").

For induced infringement, GEM alleged that Rupp provided "instructions" for rigging, and using, outriggers *with pulleys*—citing documents *without* pulleys. *See, e.g.*, DE 43 ¶¶ 41–42. As with the "Accused Outriggers with Pulleys," the alleged "instructions" were yet another fabrication by GEM and its counsel. No such "instructions" were cited, no such instructions exist, and GEM could not cite any such "instruction" at summary judgment. *See* DE 210.

This case was frivolous from the first filing; there was *never* merit—or even *plausible* merit—to GEM's claims. Yet GEM pressed meritless claims and arguments, forcing Rupp to defend up to the eve of trial. The summary judgment record reflects that GEM never had an evidentiary basis to file or maintain this action; it brought objectively baseless claims, lacking any substantive strength. This case should be found exceptional on those grounds alone.

### c. GEM's Litigation Conduct and Failure to Conduct the Required Pre-Filing Investigation Demonstrate Exceptionality.

The case is also exceptional based on GEM's litigation conduct, including its failure to conduct an adequate pre-filing investigation. "In considering 'the unreasonable manner in which the case was litigated,' . . . courts [] look to the plaintiff's 'pre-filing investigation,' among other factors." *WPEM, Inc. v. SOTI Inc.*, No. 2:18-cv-00156, 2020 U.S. Dist. LEXIS 17449, at *15 (E.D.

Tex. Feb. 4, 2020), *aff'd*, 837 Fed. Appx. 773 (Fed. Cir. 2020) (internal citations omitted); *accord Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("When the accused infringer prevails in the underlying action, factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior."); *see also Extremity Med., LLC v. Nextremity Sols., Inc.*, No. 22-239-GBW, 2024 U.S. Dist. LEXIS 181454, at *7 (D. Del. Oct. 3, 2024) (quoting *WPEM*). Moreover, an adequate pre-filing investigation is a requirement before making allegations of patent infringement, because "[p]atent infringement is a question of fact." *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) (citing *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1348-49 (Fed. Cir. 2000)). An attorney's Rule 11 obligations require that all allegations and factual content have evidentiary support, which requires a comparison of the accused device to each asserted claim, applying a reasonable construction. *Id.* 1073–74.

The Federal Circuit "'ha[s] stressed that one consideration that can and often should be important to an exceptional-case determination is whether the party seeking fees provided early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior.'" *EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1367 (Fed. Cir. 2025) (quoting *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019)) (cleaned up in *EscapeX*). It has also "found that 'the parties' communications' may be a basis to 'affirm the district court's finding of exceptionality' when they show that 'the lawsuit appears to have been baseless.'" *Ibid.* (quoting *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016)); *see also TermoLife*, 922 F.3d at 1358 ("[T]he presence of such notice, followed by continuation of litigation, can be a factor in justifying an award of attorney's fees.").

Rupp put GEM on notice of the baselessness of the claims early, and often. Rupp repeatedly identified that there was no basis for GEM's infringement allegations and no evidence for its claims, addressing this was merely harassment of a competitor and highlighting that GEM's claims

were frivolous and baseless. *See, e.g.*, Exs. 6, 8, 11, 13, 15-16,[1] 18[2] to Decl.; DE 17 at ECF pp.7, 11–16. Throughout the pre-suit correspondence, GEM could not articulate any basis for its infringement assertions. *See, e.g.*, Exs. 5, 7, 9-10, 12, 14 to Decl. Rupp's pleading addressed this case as frivolous and merely harassment. DE 12 at 1 ("Plaintiff' filing and maintaining this action is simply another event in GEM Products' ongoing harassment of a competitor . . . ."); *id.* at 7 (affirmative defense addressing the frivolous nature of the dispute and GEM's bad faith motive). It was addressed in Rupp's first Rule 12(c) motion. *See, e.g.*, DE 17 at ECF pp.7–8. And Rupp continued addressing it throughout litigation. *See, e.g.*, DE 46-10. GEM pressed this case without investigating Rupp's products; it did not obtain Rupp's products to analyze infringement until well into discovery and, critically, GEM's theories were based on third parties' *modifications* to Rupp's products, rather than the products sold by Rupp. *See* DE 201.

Moreover, GEM *maintained* this action by constantly changing its legal theories, arguments, and even its *evidence*—indicating the motivation was only to prolong litigation, rather than a genuine assertion of patent rights. The only logical conclusion drawn from GEM's conduct is that it was trying to leverage the high cost of a patent lawsuit as the basis to force/extort a settlement; it was never about patent rights, and GEM's litigation focus was on multiplying the costs of litigation in pursuit of that extortionate settlement. Initially complaining about direct infringement, GEM would not (could not) justify or explain how direct infringement was possible. *See, e.g.*, Exs. 5–18 to Decl.; DE 1; DE 40 at 19:19–24:17. Then GEM pivoted to *contributory* infringement, *see, e.g.*, Exs. 12, 16 to Decl.; DE 1, and then added *induced* infringement, DE 43.

GEM frivolously argued direct infringement based on *shipping* discrete products, *see* DE 40 at 19:19–24:17, abandoning that argument when Rupp showed it to be made in bad faith, *see*

---

[1] "However, as GEM [] should realize, pursuing this action is frivolous, vexatious, and exceptional. Serving and maintaining this action exposes both GEM [] and its counsel to potential fee awards under 35 U.S.C. § 285 and sanctions for pursuing this action."

[2] "While Rupp [] has no interest in unnecessary litigation, GEM's conduct appears to make litigation necessary. GEM's repeated unsubstantiated threats, while refusing to meet our requests for objective evidence supporting its threats; its meeting with Rupp at Rupp's office to attempt an extortionate 'settlement;' and now its filing of this frivolous action, requires Rupp to proceed."

DE 46-10. Despite conceding that Rupp's outriggers were not at issue and only the pulleys were the basis for infringement, DE 40 at 24:18–28:9, GEM then spent its time during discovery focused (almost exclusively) on Rupp's outriggers. GEM focused discovery on the non-existent "outriggers with pulleys" and, incredibly, on Rupp's sales of its non-infringing *outriggers*. *See, e.g.*, DE 50; DE 68; DE 88 (hearing transcript) at 22:23–24:16, 36:6–38:2. GEM created disputes about these non-existent "products" and suggested Rupp *might be* selling "custom" products not listed in its catalog or on its website. *See* DE 88 at 9:18–10:13. GEM pressed that frivolous and baseless theory, significantly multiplying what *should have been* simple and straightforward discovery.

GEM used its frivolous arguments to obtain sales figures for Rupp's non-infringing outriggers, to assert damages in excess of $1 million—almost exclusively based on a 10% royalty for Rupp's outrigger sales. *See* DE 196-2 (Holzen Report) ¶¶ 19–20, 40–42. GEM's expert had to revise his report after being called out for including sales outside of *GEM's definition* of "accused products." *See* DE 196-3 ¶¶ 40–41. Nevertheless, GEM continued to claim entitlement to royalties for non-infringing outriggers if a customer *also bought* pulleys at the same time, equating to roughly $800,000 in royalties. *See* DE 196-4 ¶¶ 10–20. But Rupp's *revenue* from pulley sales was only $833,184—its *gross profit* on those sales was only $482,215. DE 196-2 ¶ 40. Given Rupp's operating margin on pulleys of 6.8%, even disgorging Rupp's *entire profit on pulleys*, damages would have been only $56,656.51, *see* DE 196-3 ¶ 52, **far less** that the cost of litigation and less than half (1/2) of the bill Rupp incurred for its own expert, *see* Ex. 19 to Decl. The realistic (reasonable) damage calculation would have been (much) less than $50,000; it is *un*reasonable for the royalty to exceed the profit. GEM had Rupp's sales figures early in this case, *see* DE 88 at 36:17–18, but prolonged this action while seeking excessive royalties on *non-infringing outriggers*.

GEM's litigation misconduct is highlighted in its statement in the joint pre-trial stipulation (DE 205). GEM "incurred" roughly $3.5 million (or more when factoring in experts) in a case worth less than $50,000—even including Rupp's non-infringing outrigger sales (under GEM's impermissible theory) the asserted $800,000 in royalties was only roughly one-fourth (1/4) of what GEM "incurred" to litigate. *Compare* DE 205 at 19 *with* DE 196-4 ¶ 20. The massive discrepancy

11

between GEM's estimated allowable fee recovery ($3.5 million) and Rupp's estimate ($1.025 million) reflects that GEM and its counsel significantly multiplied this litigation with additional, unnecessary work. *See* DE 205 at 19.[3]

GEM's conduct throughout litigation, its shifting theories, its repeated misrepresentations as to the basis of its claims so as to prolong unnecessary litigation, its damage theory based on products it *concedes* are non-infringing, and its "insane" fee bill four (4) times greater than its alleged damages, shows that GEM litigated this case unreasonably, improperly forcing Rupp to incur roughly $1 million in fees to defend against claims that are worth, at best, $50,000. GEM's litigation conduct, including its pre-filing investigation failure, warrants an exceptionality finding.

2. **The Court Should Exercise Its Discretion By Awarding Rupp Its Reasonable Attorneys' Fees and Expenses.**

This Court should exercise its discretion and award the Rupp its attorneys' fees and costs under § 285. After finding a case "exceptional," a court exercises its discretion to determine whether to award fees. *Kilopass*, 738 F.3d at 1317. Courts do so where "the interest of justice warrants fee-shifting," *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992), "where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel," *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original). An award of attorneys' fees is appropriate in this case because Rupp had to engage in extensive litigation based on patents that were clearly not infringed—a point raised even before GEM filed the instant action and reiterated throughout. Rupp's noninfringement was apparent and obvious from the outset of this dispute. GEM's direct infringement claims were, at best, frivolous. *See* DE 46-10. The contributory infringement claims based on pulleys—a quintessential staple article of commerce—were equally frivolous. GEM's fabrication of "Outriggers with Pulleys" so that it could pursue royalties on *admittedly* non-infringing outriggers, and its induced infringment claims based on fabricated "instructions" were equally frivolous and (potentially) sanctionable.

---

[3] Suggesting GEM's counsel's representation was contingent and GEM did not *actually* "incur" these fees. No sane businessperson would incur $3.5 million in legal fees to recover $50,000, or even $800,000. By contrast, Rupp was forced to *actually* incur over $1 million to defend itself.

At each stage where GEM could have and should have (re)assessed its litigation position and dismissed its claims, GEM "doubled down" and argued to prolong this frivolous action—often by contradicting positions it had previously conceded. GEM litigated wholly meritless claims and damage theories, seeking royalties for outriggers that it *admits* are non-infringing. It staffed seven (7) attorneys of record, "incurring" roughly $3.5 million in fees in the hopes of winning $800,000—despite the maximum possible *reasonable* royalty being less than $50,000. GEM's misconduct forced Rupp to incur over $1 million in legal fees and costs.

The amount of attorneys' fees awarded depends on the extent to which the case is exceptional. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001). Here, Rupp was forced to incur over $1 million in legal fees and costs based on GEM's improper assertion of frivolous infringement claims and the improper (vexatious) manner in which it litigated. Ultimately, Rupp achieved total victory—confirming *exactly* what Rupp had been arguing since before this action was filed. Rupp deserves full and adequate compensation in this litigation.

GEM should never have filed this action. After Rupp's answer, counterclaims, and Rule 12(c) motion, and the dismissal of the complaint, GEM should never have maintained the case. Having Rupp's pulleys sales figures (*see* DE 88 at 26:7–9), GEM should have seen that there was only $482,215 in *gross profits* and realized this case was not worth anything (less than $50,000); it should have voluntarily dismissed. GEM did none of those things. Recklessly or willfully blind, GEM pressed on, litigating frivolous claims without evidence. This case is as exceptional as they come, and Rupp should be awarded its reasonable fees and costs under 35 U.S.C. § 285.

**B.      Rupp Should Also Be Awarded Its Attorneys' Fees and Non-Taxable Litigation Costs Under 28 U.S.C. § 1927.**

GEM's counsel should be sanctioned and required to reimburse Rupp's attorney's fees and costs under 28 U.S.C. § 1927. Sanctions are warranted under § 1927 where an attorney "knowingly or recklessly pursue[s] a frivolous claim," or where "the attorney's conduct is so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241-42 (11th Cir. 2006). This is a textbook example of multiplying proceedings "unreasonably and vexa-

tiously," through conduct so egregious that it is tantamount to bad faith. Counsel threatened, then filed, claims with no basis in law or fact and multiplied discovery with assertions of *fictional* "outriggers with pulleys" "products," knowing that no such products exist, then using that discovery to assert royalties damages from non-infringing *outriggers*, accounting for roughly 90% of the total royalties sought. *See supra*, §§ IV(A)(1)(b)-(c). GEM's roughly $1 million royalty arguments were based on sales of **outriggers**, i.e., products **conceded as non-infringing**. *See* DE 196-4 ¶¶ 10–20; *see also supra* § IV(A)(1)(c). Sanctions are appropriate for the multiplications caused.

Due to page limits, this Motion focuses on five (5) specific issues. *First*, asserting seventy (70) patent claims across all four (4) Asserted Patents. *Second*, multiplying discovery and discovery disputes based on Rupp's outriggers, and the fabricated "outriggers with pulleys" that counsel knew did not exist. *Third*, advocating for royalties based on the sales of *admittedly* non-infringing outriggers. *Fourth*, asserting induced infringement based on non-existent "instructions." *Fifth*, asserting direct infringement in pre-suit correspondence and in the original complaint.

### 1.      The Assertion of Seventy (70) Patent Claims.

Rupp was forced to defend against three (3) infringement theories for *seventy (70) patent claims* across four (4) patents. *See, e.g.*, DE 154-9 (preliminary infringement contentions); DE 169-5 (amended contentions). But at summary judgment, GEM asserted only a single infringement theory on one (1) claim from one (1) patent (the '632 patent, claim 1). DE 150. If the case went to trial, GEM intended to assert contributory and induced infringement for only *four (4) patent claims*, *see* DE 205 at 11 ("For trial, GEM is only asserting claim 1 of the '632 patent, claim 1 of the '778 patent, and claims 1 and 6 of the '226 patent."). While it can be reasonable to initially assert *some* additional patent claims, the decision to assert seventy (70) claims, and an additional patent, was vexatious and unreasonable by GEM's counsel; it also reflects a lack of investigation.

Rupp had to address an additional sixty-six (66) claims for purposes of non-infringement and invalidity contentions. *See, e.g.*, DE 46-11; DE 54-1; DE 169-5. Rupp had to brief and argue unnecessary claim terms for construction. *See, e.g.*, DE 48, DE 55, DE 58, DE 59, DE 73. Rupp had to have its expert address unnecessary claims for the non-infringement report, DE 148-2, and

14

the invalidity report, DE 148-1. The decision to assert seventy (70) patent claims falls to GEM's counsel. It was counsel that vexatiously multiplied these proceedings by asserting (nearly) every single claim in each of the four (4) patents. If counsel had *actually* investigated the "accused products" and compared them to the claims, most of those claims—and the entire '566 patent—would not have been asserted. *See* DE 205 at 11. Litigation on unnecessary claims, an unnecessary patent, and an unnecessary theory (direct infringement) is clearly a vexatious multiplication of these proceedings. Counsel should be held jointly and severally liable for all of the fees and costs incurred in connection with these unnecessary claims, theory, and patent.

2.       **Discovery and Discovery Disputes About Rupp's *Non-Infringing* Outriggers.**

Despite conceding that outriggers do not infringe, *see* DE 40 at 28:4–9; *see also* DE 211 at 10 and n.2, GEM's counsel focused discovery on fabricated "outriggers with pulleys," seeking discovery into Rupp's sales of non-infringing outriggers. *See, e.g.*, DE 50; DE 68; DE 88 (hearing transcript) at 22:23–24:16, 36:6–38:2. To justify that fishing expedition, GEM's counsel created disputes and suggested that Rupp *might be* selling "custom" products not listed in its catalog or on its website. *See* DE 88 at 9:18–10:13. Counsel argued this despite having no evidence whatsoever to support that theory and despite being foreclosed from recovering royalties on non-infringing products. Nevertheless, GEM's counsel manufactured and pressed that frivolous and baseless theory, significantly increasing discovery and litigation. It was knowingly or recklessly frivolous to seek discovery into, and create disputes about, "outriggers with pulleys"—"products" fabricated by GEM's counsel in bad faith. Sanctions under § 1927 are warranted.

3.       **Advocating For Royalties of Almost $1 Million Based *Almost Exclusively on Sales of Non-Infringing Outriggers*.**

GEM's counsel used the discovery into Rupp's non-infringing outriggers to frivolously inflate the claim to royalties in excess of $1 million, almost exclusively based on sales of outriggers that *admittedly* did not infringe. *See* DE 196-2 (Holzen Report) ¶¶ 19–20, 40–42. It was knowingly or recklessly frivolous for GEM's counsel to advocate that GEM was entitled to $1 million in royalties *based on outriggers*, even after the expert revised them down to $800,000. GEM's coun-

sel argued that GEM was entitled to essentially Rupp's entire gross revenue on pulleys—and nearly *double* Rupp's gross *profits* on those products. *See* DE 196-2 ¶ 40. This frivolous position, taken because the case value was virtually nothing, caused Rupp to incur significant legal and expert fees of roughly $1 million. *See* Ex. 19 to Decl. Sanctions under § 1927 are warranted.

### 4.      Asserting Induced Infringement Based on Non-Existent "Instructions".

Rupp identified early that GEM was "attempting to work around its own lack of evidence for [an] *induced infringement* theory by improperly asserting both *direct* and *contributory* infringement." DE 24 at ECF p.9 n.3. In response, counsel added induced infringement into its preliminary infringement contentions, *see* DE 29, despite failing to plead it, *see* DE 1. Counsel added induced infringement for the first time in the amended complaint. *See* DE 43. To do so, counsel improperly included frivolous allegations that Rupp provided "instructions" for rigging, and using, outriggers *with pulleys*—while citing documents that **did not show pulleys**. *See, e.g.*, DE 43 ¶¶ 41–42; *see also* DE 210. As with the fabricated "Outriggers with Pulleys," these alleged "instructions" were a fabrication by GEM's counsel. No such "instructions" exist and GEM could never cite any such "instruction." *See* DE 210. But Rupp was required to defend against those frivolous induced infringement claims in its contentions and during fact and expert discovery. There was never any *factual basis* for counsel to allege or argue induced infringement. *See* DE 226 at 40:17–42:7; *see also* DE 210. Because of GEM's counsel's vexatious conduct, Rupp was forced to incur legal fees and costs defending against claims of induced infringement that were knowingly or recklessly frivolous and certainly made in bad faith. Sanctions under § 1927 are warranted.

### 5.      Asserting *Direct* Infringement.

Similarly, it was frivolous and sanctionable to initially assert *direct* infringement. *See, e.g.*, DE 1; Exs. 5–18 to Decl. (pre-suit correspondence). GEM's counsel argued that direct infringement was based on the *availability* of discrete products for sale, DE 40 at 19:19–24:17, arguing about "bundles" of products without investigating those "facts," *see* DE 46-10. It was only in the amended complaint that GEM *finally* dropped the frivolous claims for direct infringement; but by that point, counsel forced Rupp to incur eight (8) months of legal fees in addressing and responding

to counsel's frivolous and vexatious claims of direct infringement. *Compare* Exs 5–18 to Decl. *and* DE 40 at 19:19–24:17 *with* DE 43. Because of GEM's counsel's vexatious conduct, Rupp was forced to incur significant legal fees defending against direct infringement claims and arguments that were frivolous and made in bad faith. Sanctions under § 1927 are warranted.

**C.      Rupp's Fees and Costs Are Also Warranted Under the Court's Inherent Authority.**

Rupp should also be awarded its fees and non-taxable costs under the Court's inherent authority. "Federal courts have the inherent authority to fashion an appropriate sanction for conduct which abuses the judicial process," arising from the control necessarily vested to manage its affairs "to achieve the orderly and expeditious disposition of cases." *Trump v. Clinton*, 161 F.4th 671, 688 (11th Cir. 2025) (internal quotation marks omitted). Unlocking that power requires a court to find a party or its attorney acted in subjective bad faith. *Id.* at 688–89; *accord Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015). "'A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Ibid.* (quoting *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002)). "An egregious failure to pursue 'reasonable inquiry into the underlying facts' of a claim can also support a finding of bad faith." *Ibid.* (quoting *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009)).

This action was filed and maintained in subjective bad faith, and the Court should award Rupp its fees and costs. Rupp's non-infringement was obvious; it was also repeatedly presented to GEM throughout litigation. GEM never had facts to support its claims and allegations. *See* DE 211. It started the action alleging *direct* infringement, without identifying *any* allegedly infringing product. *See* DE 35 at 7. GEM conceded this action was *only* about pulleys and **not** about Rupp's outriggers, *see* DE 40 at 24:18–28:9, then proceeded to litigate this entire action *based on* Rupp's non-infringing *outriggers*, *see, e.g.*, DE 50; DE 68; DE 88 (hearing transcript) at 22:23–24:16, 36:6–38:2, only to concede—again—at summary judgment that Rupp's outriggers are non-infringing, DE 211 at 10 and n.2. GEM frivolously asserted that Rupp sold "outriggers with pulleys" to vexatiously multiply proceedings, *see* DE 43 ¶ 33, despite admitting that these were separate prod-

17

ucts and sold *separately*, *see* DE 43 ¶¶ 62–63; *see also* DE 88 at 7:4–6 ("So we do not allege that there is a specific accused product where Rupp right now is selling the outrigger with the pulley system directly attached."). GEM also brought induced infringement claims based on alleged "instructions" that never existed—Rupp's "instructions" are *public* and **do not** instruct how to use or rig outriggers *with pulleys*. *See* DE 43 ¶¶ 41–51; *see also* DE 210.

GEM engaged in a pattern of multiplying the proceedings, including through excessive discovery into non-infringing *outriggers*, and asserting three (3) infringement theories for *seventy (70) patent claims*. *Supra*, §IV(A)(1)(c). This conduct, coupled with GEM's egregious failure to investigate and a *complete* lack of evidence (at all stages), leads to only one conclusion: GEM filed and maintained these claims in subjective bad faith. *See Trump*, 161 F.4th at 689. GEM improperly prolonged litigation based on *fabricated* "products" and "instructions." *Supra*, §IV(A)(1)(c). All of GEM's claims were clearly disproved by Rupp's *public* website. Sanctions are warranted under the Court's inherent authority to reimburse Rupp for the fees and costs it was forced to incur.

## D.    Rupp's Requested Fees and Expenses Are Reasonable.

Courts use the lodestar method to calculate attorney fee awards, such that a reasonable fee is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *Am. C.L. Union of Georgia v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). In computing the lodestar amount, courts consider: "(1) the time and labor required, (2) the novelty and difficulty of the question involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and the length of the professional relationship with the client, and (12) awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 and n.5 (S.D. Fla. 1996) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing factors to consider in determining a reasonable attorney's fee)).

18

### 1. Rupp's Counsel's Rates are Reasonable.

The "reasonable hourly rate" is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The court may consider hourly rates awarded to other attorneys of similar experience in the community as well as its own knowledge of the rates charged by local practitioners. *See Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees").

Rupp's counsel's rates are reasonable—and undisputed. *See, e.g.*, *Affordable Aerial Photography, Inc. v. Beach Town Real Estate, LLC*, Case No. 24-cv-80423-JEM, 2026 U.S. Dist. LEXIS 115748, at *14–16 (S.D. Fla. Feb. 9, 2026), *adopted*, 2026 U.S. Dist. LEXIS 115945 (Mar. 26, 2026) (Mr. Lockton's and Mr. McHale's rates found reasonable); *Conley v. Vacanti*, Case No. 23-cv-60384-AHS, 2026 U.S. Dist. LEXIS 11723, at *25 (S.D. Fla. Jan. 22, 2026), *adopted*, 2026 U.S. Dist. LEXIS 74599 (Apr. 6, 2026) (Mr. Lockton's rate found reasonable). Mr. McHale's $550.00/hour rate is below average for an attorney of his experience in IP litigation. Decl., ¶¶ 7–13 and Ex. 1. Mr. Lockton's rate began at $450.00/hour and increased to $500.00/hour on January 1, 2026, coinciding with his elevation to partner; both of Mr. Lockton's rates are below average for an attorney with the same (or fewer) years of IP experience. *Ibid.* Mr. Slavin's rate (the lowest) is clearly reasonable. *Ibid.* GEM does not dispute that these rates are reasonable.

### 2. Rupp's Counsel Incurred a Reasonable Number of Hours.

The number of hours incurred by Rupp's counsel are also reasonable and undisputed. A significant amount of work was required to be performed in this action. GEM asserted infringement of seventy (70) patent claims from four (4) patents and based on three (3) separate theories of infringement. *See, e.g.*, DE 1 (alleging direct and contributory infringement); DE 154-9 (preliminary contentions for direct, contributory, and induced infringement); DE 43 (alleging contributory and induced infringement); DE 169-5 (amended infringement contentions). GEM deposed ten (10) fact witnesses, including five (5) third party witnesses (Cortes, Viking Yachts, McDowell,

19

Glonek, Milo) as well as deposing Rupp's patent attorney (Slavin). GEM does not dispute that the number of hours incurred is reasonable; it only disputes entitlement to recover fees. *See* Ex. 22. Further, Rupp's hours were only about one-third (1/3) of the hours GEM believed would be reasonable. *See* DE 205 at 19 (estimating $3.5 million as "the maximum amount allowable to GEM [] for attorneys' fees and litigation expenses as a prevailing party.").

### 3.    Fees on Fees Should Be Awarded.

Rupp should also be awarded its fees in connection with moving for fees and costs ("fees on fees"), which are included in fee awards based on to fee-shifting statutes. *See, e.g.*, *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010) (collecting cases where fees-on-fees were awarded under different fee-shifting statutes); *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 518 (Fed. Cir. 2014) (fees on fees for §285 is addressed under regional circuit law). In *Norelus*, the Eleventh Circuit explained that statutes providing for the prevailing party fees and costs includes the additional "fees on fees" in seeking that award. 628 F.3d at 1301. Section 285 of the Patent Act is a statute that provides for a prevailing party fee award.

Rupp was required to incur additional hours preparing a draft fee motion and supporting declaration, its bill of costs with itemization of each cost and supporting documentation, and its a supporting memorandum of law. *See* L.R. 7.3. Rupp incurred an additional 59.85 hours in connection with the requirements of the local rules, equating to an additional $30,262.50 in fees-on-fees. Decl. ¶¶ 24–30. Those additional fees are recoverable and will continue throughout the completion of briefing on its fee Motion, including through any hearings held by the Court. Rupp therefore requests leave and intends to submit a supplemental declaration with billing records at the conclusion of the Court's ruling on entitlement to document those additional fees sought.

### CONCLUSION

For the reasons above, the Court should grant the Motion and award Rupp its reasonable attorneys' fees and expenses of $988,362.85, as well as the additional fees Rupp will continue incurring, to be documented through a supplemental declaration at the appropriate time.

Respectfully submitted,

McHale & Slavin, P.A.

**Andrew D. Lockton**

Andrew D. Lockton, Esq. (Fla. Bar No. 115519)
Edward F. McHale, Esq. (Fla. Bar No. 190300)
2855 PGA Boulevard
Plam Beach Gardens, Florida 33410
(561) 625-6575
alockton@mchaleslavin.com
emchale@mchaleslavin.com
litigation@mchaleslavin.com

*Counsel for Rupp Marine, Inc.*

21

**CERTIFICATE OF LOCAL RULE 7.3(b) PRE-FILING CONFERENCE**

Pursuant to Local Rule 7.3(b), a draft of the forgoing Motion with incorporated declaration from Defendant's counsel verifying documents attached thereto and relied upon, and setting forth certain required elements of the Motion, was served on counsel for the Plaintiff on June 5, 2026.

On June 23, 2026, counsel for the Plaintiff served Plaintiff's Rule 7.3(b) written response to Defendant's Motion. Those written objections are provided as an exhibit to the Motion for the Court's review.

On June 24, 2026, counsel for the parties conferred in a good faith effort to resolve the matters set forth in the Motion. Counsel for the parties were unable to resolve issues of entitlement to fees that were addressed in Plaintiff's written response. The parties reached agreement that Rupp is the prevailing party based on the Court's Final Judgment (DE 222), that the billing rates of Rupp's counsel are reasonable, and that the number of hours incurred for the given tasks performed was reasonable. The parties were unable to reach an agreement on Rupp's entitlement to a fee award, including GEM's arguments that if fees are awarded, certain categories of incurred fees should be excluded from such award, as addressed in GEM's written position, Ex. 22 to Decl.

**Andrew D. Lockton**
Andrew D. Lockton

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that in accordance with Local Rule 7.3, a Draft of the foregoing Motion for Prevailing Party Attorneys' Fees and Costs was served on counsel for the Plaintiff via email on June 5, 2026. Counsel includes:

Gregory S. Weiss
TAFT STETTINIUS & HOLLISTER LLP
525 Okeechobee Dr., Suite 900
West Palm Beach, FL 33401
Email: gweiss@taftlaw.com
Secondary: psymons@taftlaw.com

Joseph R. Lanser (*pro hac vice*)
Jaimin H. Shah (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601
Email: jlanser@taftlaw.com
Email: jshah@taftlaw.com

Thomas E. Bejin (*pro hac vice*)
William K. Broman (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
Email: tbejin@taftlaw.com
Email: wbroman@taftlaw.com

Charles Pfister (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
40 N. Main St., Suite 1700
Dayton, OH 45423
Email: cpfister@taftlaw.com

Alexander Matthews (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Email: amatthews@taftlaw.com

**Andrew D. Lockton**
Andrew D. Lockton

I HEREBY FURTHER CERTIFY that the foregoing Motion for Prevailing Party Attorneys' Fees and Costs was filed electronically with the Court through CM/ECF on July 6, 2026, and thereby served on counsel for the Plaintiff on the same day.

**Andrew D. Lockton**
Andrew D. Lockton

23